IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAJEED SEIFI AND TRACEY DEAKIN,

          Plaintiffs,

v.

MERCEDES-BENZ USA, LLC,

          Defendant.

NO. C12-5493 TEH

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE CLASS ALLEGATIONS

This matter is before the Court on a Motion to Dismiss and a Motion to Strike Class Allegations filed by Defendant Mercedes-Benz, USA, LLC ("MBUSA"). Having carefully considered the parties' papers and their oral arguments at the May 20, 2013, motion hearing, the Court GRANTS IN PART and DENIES IN PART MBUSA's Motion to Dismiss and DENIES MBUSA's Motion to Strike Class Allegations.

**BACKGROUND**

In this suit brought under the Class Action Fairness Act, 28 U.S.C. § 1332(d), Plaintiffs Majeed Seifi and Tracy Deakin ("Plaintiffs") assert claims on behalf of themselves and a proposed class of "owners and lessees within California of Mercedes vehicles equipped with either the M272 or the M273 engines" bearing certain serial numbers. Compl. ¶¶ 34 (Docket No. 1). Plaintiffs allege that these engines contain gears made of sintered steel alloy that wear out prematurely, causing their engines to misfire, which poses a safety concern and necessitates major repairs.

The facts, taken from the complaint, attached documents, and documents submitted by MBUSA in connection with its request for judicial notice and its challenge to this Court's jurisdiction, are as follows:[1]

Seifi is the owner of a 2006 Mercedes ML-350 SUV equipped with a M272 engine. Seifi is the third owner of the vehicle, which he bought on March 17, 2012, with 63,838 miles on it. The first owner of Seifi's SUV purchased it on March 27, 2006. When Seifi's SUV had approximately 70,000 miles on it, the check engine light went on. Seifi promptly brought the vehicle to a dealership, which informed him that the vehicle had a defective balance shaft gear and the balance shaft needed replacing at a cost of approximately $6,000. The dealership told Seifi that the defective balance shaft gear could cause the engine to misfire and the vehicle to stall without warning. Seifi complained that he had not been told about the defect when he purchased the SUV, and that he did not believe that a car with such low milage and manufactured so recently should require such a major repair. The dealership responded that Seifi's vehicle was no longer covered by warranty and advised him to contact MBUSA, which he did to no avail. Concerned about the safety of his vehicle, Seifi paid to have the repair done.

A similar defect in the M272 engine of Deakin's ML-350 SUV required a repair costing almost $7000. Deakin purchased his vehicle new from a dealership on December 26, 2005. In or around April 2012, when his SUV had about 100,000 miles on it, Deakin's check engine light came on and the engine began to misfire without warning. The dealership told Deakin that the problem was a defective balance shaft gear, and to replace the gear, the mechanic would have to partially disassemble the engine. Deakin complained that such a

---

[1] MBUSA's unopposed Request for Judicial Notice in Support of its Motion to Dismiss Plaintiffs' Complaint is GRANTED under Rule 201(b)(2) of the Federal Rules of Evidence. The excerpts of the warranty (Ex. C) are incorporated by reference into the complaint. The DMV documents (Exs. A & B) are judicially noticeable because they are matters of public record and Plaintiffs do not dispute their authenticity. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruling on other grounds recognized by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Furthermore, the Court may consider these documents in ruling on MBUSA's factual challenge to Plaintiffs' standing. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

2

recent model of engine should not malfunction and demanded compensation or redress. In response, the dealership and MBUSA informed him that his vehicle was out of warranty. While repairing Deakin's SUV, the mechanic discovered metal pieces from the balance shaft gear throughout the engine.

Plaintiffs allege that MBUSA knew about the defects in the balance shaft gears in Mercedes M272 engines and the idle gears in M273 engines and concealed the information from Deakin, Seifi, and the members of the putative class. According to Plaintiffs, the defects are present in engines manufactured beginning in 2004. Plaintiffs allege that MBUSA's parent company knew that manufacturing gears with sintered steel could result in premature failure, secretly tracked the prevalence of the problems caused by the gear defects, and based on the data gleaned from these tracking efforts, switched from sintered steel alloy to conventional steel construction of the gears in September 2006. They also allege that Mercedes's diagnostic manuals alerted technicians to balance shaft gear problems in vehicles equipped with M272 engines prior to mid-2007, when Mercedes issued its first of a series of Technical Service Bulletins to its technicians informing them about the defective gears and instructing them on how to make appropriate repairs.

Plaintiffs further allege that MBUSA made misrepresentations about the reliability of Mercedes vehicles with M272 and M273 engines. Specifically, Plaintiffs point to: 1) an undated MSN Autos review reporting that "Mercedes has had quality issues in the past few years, but feels confident that the new design of the solid-feeling M-class should be free of problems"; and 2) a November 20, 2006, CNN money report stating that a Mercedes representative said that the low reliability ratings given to 2006 Mercedes vehicles by Consumer Reports were "totally out of sync with what we're seeing in the mainstream research as well as our own customer satisfaction and warranty data." Compl. ¶ 30-33.

Plaintiffs' complaint sets out claims for breach of express warranty under California law, breach of implied warranty under the Song-Beverly Consumer Warranty Act, section 1790 *et seq.* of the California Civil Code (the "Song-Beverly Act"), and violations of the California Consumers Legal Remedies Act ("CLRA"), section 1750 *et seq*. of the California

Civil Code, and California's Unfair Competition Law ("UCL"), section 17200 *et seq*. of the California Business and Professions Code. MBUSA now moves the Court to 1) dismiss each of Plaintiffs' claims; and 2) strike their class allegations.

## MOTION TO DISMISS

### I. Legal Standard

MBUSA moves to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1), for lack of standing, and 12(b)(6), for failure to state a claim. Generally, a complaint must contain "a short and plain statement" showing "the grounds for the court's jurisdiction" and "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Claims based on allegations of fraud are subject to a heightened pleading standard: they must be pled "with particularity." Fed. R. Civ. P. 9(b).

A complaint may be dismissed under Rule 12(b)(1) if the plaintiffs do not carry their burden to allege facts which, if proved, would confer standing on them. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). A party moving to dismiss a claim under Rule 12(b)(1) for lack of standing may make a factual challenge by presenting affidavits and other admissible evidence in support of the motion. *Savage*, 343 F.3d at 1040 n.2. The party opposing the motion may then present its own affidavits and evidence in support of its claim to standing. *Id*.

Dismissal is appropriate under Rule 12(b)(6) when a complaint fails "to state a claim upon which relief can be granted." A claim will survive a motion to dismiss if the complaint's "non-conclusory factual content, and reasonable inferences from that content" plausibly suggest that the plaintiff is entitled to the requested relief. *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) (internal quotation marks omitted).

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, "to be entitled to the

4

presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Additionally, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

Unless amendment would be futile, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2).

## II. Warranty-based Claims

MBUSA moves to dismiss Plaintiffs' claims based on its express warranty and on the Song-Beverly Act's implied warranty of merchantability, arguing that Plaintiffs lack standing and have failed to state a claim because MBUSA was not legally obligated to repair their vehicles free of charge. Because MBUSA's challenge to Plaintiffs' standing is based on the legal merits of their warranty claims, the Court will address both grounds for dismissal together.

### A. Express Warranty

Plaintiffs claim that MBUSA breached its express warranty by "failing to correct, at no charge to class members, the subject defect." Compl. at ¶ 48. It is undisputed that the vehicles at issue in this case were covered by MBUSA's factory warranty for 2006 Trucks, which provides, in relevant part:

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz truck that any authorized Mercedes-Benz Truck Center will make any repairs or replacements necessary, to correct defect in material or workmanship arising during the warranty period.
> . . .
>
> WARRANTY PERIOD: This warranty is for 48 months or 50,000 miles, whichever occurs first.
> . . .

5

> WARRANTY STARTS: The warranty period starts on the date the truck is delivered to the first retail purchaser. . . .

Ex. E to Yoshino Dec. (Document No. 13).

It is undisputed that both Seifi's and Deakin's SUVs were over 48 months old and had been driven over 50,000 miles when the gear defect caused the engine problems that necessitated the repairs for which they seek compensation. Plaintiffs argue that MBUSA's warranty does not require the discovery of a defect during the warranty period, so long as the defect is present during the warranty period. As a general rule, express warranties do not cover claims based on repairs made outside of the warranty period. *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2007). Were such claims permitted, "[f]ailure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." *Id.* However, an express warranty is "basically contractual in nature." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995). Therefore, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).

The terms of MBUSA's express warranty do not permit claims based on defects discovered after the warranty period. MBUSA's warranty covers "any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period," which is "48 months or 50,000 miles, whichever occurs first . . . [of] the date the truck is delivered to the first retail purchaser." Ex. E to Yoshino Dec. When isolated, the phrase "arising during the warranty period" admits some ambiguity. Read in context, however, its meaning becomes clear: the warranty covers only those "repairs or replacements necessary" as a result of something going wrong with the covered vehicle due to a defect within the specified time/milage limit. Ex. E to Yoshino Dec. Since Plaintiffs do

6

not allege that the defective gears failed during the warranty period, they have not stated a claim for breach of MBUSA's express warranty.[2]

Plaintiffs argue, in the alternative, that the time/milage limit in MBUSA's warranty is unconscionable when invoked to deny a claim based on the latent defect in the engine gears, which Plaintiffs claim was known to MBUSA at the time their vehicles were sold and delivered. "Unconscionability is a question of law for the court." *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006). Under California law, "unconscionability has both a procedural and substantive element." *Id.* A contract or contractual clause is invalid as unconscionable only if both elements are present, "although the degree to which each must exist may vary." *Id.*

Plaintiffs contend that MBUSA's express warranty was procedurally unconscionable because MBUSA prevented them from engaging in real negotiation by concealing a known defect, which in turn deprived them of the opportunity to obtain the desired goods free from the allegedly unconscionable terms. A contract that reflects "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice" is procedurally unconscionable. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) (internal quotation marks and citation omitted). Based on Plaintiffs' allegation that MBUSA's parent company was aware of defects in the M272 and M273 engine gears and was tracking them prior to the September 2006 switch from sintered steel to conventional steel construction, it is reasonable to infer that MBUSA was aware of the defect in late 2005 and early 2006, when it issued the warranties on the vehicles owned by Seifi and Deakin. If MBUSA in fact failed to disclose a known defect that was likely to result in Plaintiffs' vehicles' engines misfiling and stalling unexpectedly, posing a safety concern and

---

[2] MBUSA also argues that Plaintiffs have not stated a claim because they have not alleged that they provided written notice to MBUSA of the defect in the gears. However, under California law, "where a customer pleads injuries arising from a product purchased from a dealer, the notice requirement as to the manufacturer is waived." *Mui Ho v. Toyota Motor Corp.*, __F. Supp. 2d__, 2013 WL 1087846, at *5 (N.D. Cal. 2013) (citing *Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 61 (1963)). To the extent that the terms of MBUSA's warranty are inconsistent with this rule, they are unenforceable.

7

necessitating a major repair, this failure deprived Plaintiffs of the information they needed to make a meaningful choice between the vehicles they purchased and others available on the market. Plaintiffs have therefore pled facts sufficient to demonstrate procedural unconscionability.

To state a claim, however, Plaintiffs must also allege facts showing that the warranty was substantively unconscionable, which they have not done. "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Aron*, 143 Cal. App. 4th at 808. Even accepting as true Plaintiffs' allegation that Mercedes knew about the defective gears, Plaintiffs have not alleged facts showing that MBUSA's warranty is overly harsh or one-sided. Plaintiffs do not allege that MBUSA made any changes to its standard warranty as a result of knowing about the defective gears, nor do they allege any facts suggesting that MBUSA took its alleged knowledge of the defective gears into account in determining the warranty's time and milage limitations. The terms of the warranty – covering repairs needed within 48 months or 50,000 miles of retail purchase – do not on their face shock the conscience. Plaintiffs therefore have failed to sufficiently plead substantive unconscionability.

Because MBUSA's warranty, by its terms, does not cover repairs required outside of the warranty period, and because Plaintiffs have not alleged facts showing that MBUSA's standard 48-month/50,000 mile warranty is unconscionable, Plaintiffs' express warranty claim is DISMISSED without prejudice.

**B. Implied Warranty**

In addition to the claim based on MBUSA's express warranty, the complaint sets out a separate claim under the Song-Beverly Consumer Warranty Act, which provides, among other things, that new consumer goods sold to retail buyers are covered by the manufacturer's implied warranty that the goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civil Code §§ 1791.1(a)(2); 1792.1. If the duration of the manufacturer's express warranty exceeds one year, the duration of the Song-Beverly Act's

8

1 implied warranty is capped at "one year following the sale of consumer goods to a retail
2 buyer." Cal. Civil Code § 1791.1(c).[3]

MBUSA argues that Plaintiffs' implied warranty claim is untimely. The statute of limitations on actions for breach of implied warranty under the Song-Beverly Act is set out in section 2725 of the California Commercial Code. *Jensen v. BMW of North America*, *Inc*., 35 Cal. App. 4th 112, 133 (1995); *Krieger v. Nick Alexander Imports*, Inc., 234 Cal. App. 3d 205, 213-15 (1991). Section 2725 provides that such actions "must be commenced within four years after the cause of action has accrued." Cal. Com. Code § 2725(1). Subdivision 2 of section 2725 provides that:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The Song-Beverly Act's implied warranty of merchantability does not "explicitly extend to future performance" of consumer goods. *Cardinal Health 301*, *Inc*. *v. Tyco Electronics Corp*., 169 Cal. App. 4th 116, 134 (2008). "[T]he warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery." *See Mexia*, 174 Cal. App. 4th at 1305.

In this case, the cause of action on Plaintiffs' implied warranty claims accrued, and the four-year statute of limitations began to run, when the breach occurred, which was when tender of delivery was made. Plaintiffs allege that MBUSA breached the implied warranty of fitness "as of the[] date of sale" of Seifi's and Deakin's SUVs – March 27, 2006 and

---

[3] Some courts have held that a breach of the Song-Beverly Act's implied warranty may be established based on a latent defect of which the consumer first becomes aware after the one-year implied warranty period, provided that the defect is present during the warranty period. *See*, *e.g.*, *Mexia v. Rinker Boat Co.*, *Inc*., 174 Cal. App. 4th 1297, 1304 (2009). Others have disagreed. *See*, *e.g.*, *Merchente v. Sony Corp. of America*, *Inc.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. July 8, 2011); *Hovespian v. Apple*, *Inc*., 2009 WL 2591445, at *8 (N.D. Cal. Aug. 21, 2009). The Court need not weigh in on this debate because in the present case, Plaintiffs' Song-Beverly Act claim is barred by the statute of limitations regardless of whether the defect was discovered during the one-year implied warranty period.

9

December 26, 2005, respectively.  Compl. at ¶ 58.  This lawsuit, filed on October 24, 2012, was commenced more than six years later, over two years after the expiration of the four-year statute of limitations on Plaintiffs' implied warranty claims.  It is therefore untimely.[4]

Accordingly, Plaintiffs have failed to state a claim under the Song-Beverly Act, and MBUSA's motion to dismiss is GRANTED as to this claim.  Because Plaintiffs can no longer file suit within the statute of limitations, amendment would be futile, and Plaintiffs' request for leave to amend is therefore DENIED.

**III. CLRA**

Plaintiffs' CLRA claim is based on their contention that MBUSA had a duty to inform them of the likelihood that the defective gears would fail outside of the warranty period, and that it failed to do so.  This claim "sounds in fraud," and therefore must be pled "with particularity."  Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  To state a claim under the CLRA, a consumer must show "that a defendant's conduct was deceptive" and that the deception caused the alleged harm.  *McAdams v. Monier*, *Inc*., 182 Cal. App. 4th 174, 183 (2010) (internal quotation marks and citation omitted); *see also* Cal. Civ. Code § 1780.  To show deception based on a fraudulent omission – in this case, MBUSA's failure to inform plaintiffs about the defective gears – a Plaintiff must demonstrate that the concealed information is "contrary to a representation actually made by the defendant," or that it

---

[4] At the hearing, Plaintiffs argued for the first time that the statute of limitations on their Song-Beverly Act implied warranty claim was tolled during the pendency of *Suddreth v. Mercedes-Benz, LLC*, No. 10-CV-5130, in the U.S. District Court for the District of New Jersey.  In cases brought under the CAFA, federal district courts apply state-law tolling rules, *Albano v. Shea Homes Ltd. Partnership*, 634 F.3d 524, 530 (2011), and California courts recognize equitable tolling in the class action context.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1119-20 (1988).  But even assuming that the statute of limitations was tolled for the entire period between the filing of the complaint in *Suddreth* on October 5, 2010, and the July 31, 2012, denial of the plaintiffs' motion for leave to file a second amended complaint, this suit was commenced after the statute of limitations expired on Seifi's and Deakin's implied warranty claims.

10

1 pertains to a "fact the defendant was obligated to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834-35 (2006); *see also Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36-37 (1975). Plaintiffs assert both theories of liability.

First, Plaintiffs argue that MBUSA was obligated to disclose the information about the defective gears under the CLRA because the information was contrary to MBUSA's representations to the media about the reliability of its 2006 M-class vehicles. But as MBUSA points out, the facts alleged in Plaintiffs' complaint do not show that MBUSA made any statements about the reliability of 2006 Mercedes M-class vehicles before the relevant transactions took place: the MSN Autos review is undated, and Seifi's and Deakin's vehicles already had been sold and delivered by the time the CNN Money report was published. Since Plaintiffs do not allege any misrepresentations that took place prior to the sale of their vehicles, they have not shown that, at the time of the relevant transactions, the concealed information about the defective gears was "contrary to a representation actually made by the defendant." *Daugherty*, 144 Cal. App. 4th at 835. Plaintiffs therefore have failed to state a CLRA claim based on MBUSA's representations to the media about the reliability of its 2006 M-class vehicles.

Second, Plaintiffs argue that the defective gears constitute a "safety defect" that MBUSA had a duty to disclose. A manufacturer has a duty to disclose a defect that poses an unreasonable safety risk. *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010). Courts have concluded that plaintiffs have stated CLRA claims based on a speedometer defect that could cause vehicles to travel at "unsafe speeds," defective windshields that could become dislodged in roll-over accidents, and sunroof seal defects that could lead to electrical problems. *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1096 n.* (N.D. Cal. 2007) (speedometers); *Ehrlich*, 801 F. Supp. 2d at 918 (windshield); *Cholokyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1236-38 (C.D. Cal. 2011) (sunroof). In this case, Plaintiffs allege that:

> The consequences of the defect at issue pose real and significant safety concerns because they render the subject vehicles non-drivable without prior warning while the vehicles are on roadways, and oftentimes surrounded by heavy traffic. As was the case with

11

> Deakin's vehicle, the defect causes the car to misfire, rendering it non-drivable without any prior warning or indication.

Compl. ¶ 50. MBUSA argues that this alleged risk does not amount to a safety defect. Pointing to a National Highway Traffic Safety Administration finding that stalling issues do not present an "unreasonable risk to motor vehicle safety," MBUSA contends that because "[a] car can still be controlled/steered after it stalls" a defect that results in risk of stalling does not constitute a "safety defect." Mot. at 15. MBUSA further points out that Plaintiffs do not allege facts showing that Seifi or Deakin personally experienced stalling in a situation in which a safety risk was present. *Id*. at 15-16. MBUSA's arguments may, at a later point in this litigation, provide a basis for a factual finding that Plaintiffs have not carried their ultimate burden to demonstrate an unreasonable safety risk. However, the allegation, undisputed for purposes of the present motion, that the gear defect could cause a vehicle to stall, rendering it undrivable without prior warning, plausibly constitutes an unreasonable safety risk that MBUSA had a duty to disclose.

MBUSA also argues that Seifi and Deakin have not established standing to bring suit under the CLRA because their vehicles were not purchased directly from MBUSA. However, "a cause of action under the CLRA may be established independent of any contractual relationship between the parties." *McAdams*, 182 Cal. App. 4th at 186; *see also* Cal. Civil Code § 1780(a). For this reason, plaintiffs who purchased used cars, or who purchased cars from dealerships rather than directly from the manufacturer have standing to bring CLRA claims against manufacturers, even though they never entered into transactions directly with the manufacturers. *See Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005). The fact that Seifi and Deakin never entered into transactions with MBUSA has no impact on their standing to bring claims under the CLRA.

Finally, MBUSA argues that Plaintiffs have failed to comply with California Civil Code section 1780(d), which requires that, concurrently with the filing of the complaint in an action brought under the CLRA, the plaintiff must file an affidavit showing that the action has been brought "in the county in which the person against whom it is brought resides, has his or her principal place of business, or is doing business, or in the county where the

12

transaction or any substantial portion thereof occurred." If the plaintiff fails to file the required affidavit, a court must dismiss the CLRA claim without prejudice. Cal. Civil Code § 1780(d). A court need not dismiss a CLRA claim based on the fact that the venue affidavit was not filed concurrently with the complaint if an affidavit has been filed that satisfies the purpose of the rule – ensuring that the action has been commenced in a proper venue. *In re. Apple In-App Purchase Litig.*, 855 F. Supp 2d 1030, 1037 (N.D. Cal. 2012). Plaintiffs have complied with Cal. Civil Code § 1780(d) by filing an affidavit demonstrating that venue is proper in the Northern District of California, *see* Seifi Dec. ¶¶ 2-9 (Document No. 19), and MBUSA does not contest that venue is proper in this Court. *See* Mot. to Transfer Venue (Document No. 12).

Accordingly, Plaintiffs have stated a claim under the CLRA.

## IV.  UCL

The UCL allows civil actions for injunctions to be brought by any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition," Cal. Bus. & Prof. Code § 17204, against "[a]ny person who engages, has engaged, or proposes to engage in unfair competition," *id.* at § 17203. The UCL characterizes "any unlawful, unfair or fraudulent business act or practice" as "unfair competition." *Id.* at § 17200. Plaintiffs' UCL claim is premised on their warranty claims and their CLRA claims. Because Plaintiffs have stated a claim under the CLRA, MBUSA's motion to dismiss their UCL claim is DENIED.

## MOTION TO STRIKE CLASS ALLEGATIONS

MBUSA moves to strike Plaintiffs' class allegations, arguing that Plaintiffs cannot satisfy the typicality requirements of Rule 23 of the Federal Rules of Civil Procedure and, relatedly, that the definition of the proposed class is overbroad. Plaintiffs oppose the motion, arguing that it is premature prior to the commencement of discovery.

13

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." While class allegations may be stricken at the pleading stage, *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975), motions to strike class allegations are generally disfavored because "a motion for class certification is a more appropriate vehicle," *Thorpe v. Abbott Laboratories, Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). Because "the shape and form of a class action evolves only through the process of discovery," courts rarely dismiss class allegations before discovery has commenced. *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

The Court has some doubts about the adequacy of Deakin and Seifi to represent a class that includes owners and lessees of vehicles with a different engine type and a different allegedly defective part, the typicality of their claims, and the extent to which their claims are common to the class. However, MBUSA has yet to answer Plaintiffs' complaint, discovery has not commenced, and Plaintiffs have not yet moved for class certification. And even the pleadings may not yet be in their final form, as the Court has granted Plaintiffs leave to amend their complaint. This is not a case in which "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff[s'] claim." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). Rather, it is one in which it is "necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* Full briefing of the issues that MBUSA raises, based on at least some discovery, will be required before the Court can determine whether the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met as a matter of law. The Court therefore DENIES MBUSA's motion to strike class allegations.

**CONCLUSION**

For the reasons stated above, MBUSA's motion to dismiss is GRANTED WITHOUT PREJUDICE as to Plaintiffs' express warranty claim and GRANTED WITH PREJUDICE as to Plaintiffs' Song-Beverly Act claim. The motion to dismiss is otherwise DENIED.

MBUSA's motion to strike class allegations is also DENIED.

Any amended complaint shall be filed on or before June 21, 2013.

**IT IS SO ORDERED.**

Dated: 05/23/2013

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT