IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAJEED SEIFI AND TRACEY DEAKIN,<br><br>Plaintiffs,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | NO. C12-5493 TEH<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING MOTION TO STRIKE |

This matter came before the Court on September 30, 2013, on Defendant Mercedes-Benz, USA, LLC ("MBUSA")'s motions to dismiss and strike certain allegations in the First Amended Complaint ("FAC"). Having carefully considered the parties' papers and their oral arguments at the hearing, the Court GRANTS IN PART and DENIES IN PART MBUSA's motion to dismiss. The Court DENIES MBUSA's motion to strike.

**BACKGROUND**

In this suit brought under the Class Action Fairness Act, 28 U.S.C § 1332(d), Plaintiffs Majeed Seifi and Tracy Deakin ("Plaintiffs") assert claims on behalf of themselves and a proposed class of "owners and lessees within California of Mercedes vehicles equipped with either the M272 or the M273 engines" bearing certain serial numbers. FAC ¶¶ 34 (Docket No. 46). Plaintiffs allege that these engines contain gears made of sintered steel alloy that wear out prematurely, causing their engines to misfire, which poses a safety concern and necessitates major repairs.

The facts, taken from the FAC, are as follows: Seifi is the owner of a 2006 Mercedes ML350 SUV equipped with a M272 engine. When Seifi's SUV had approximately 70,000 miles on it, the check engine light went on. Seifi promptly brought the vehicle to a

dealership, which informed him that the vehicle had a defective balance shaft gear that required replacement at a cost of approximately $6,000. Seifi complained that he had not been told about the defect when he purchased the SUV, and that he did not believe that a car with such low mileage and manufactured so recently should require such a major repair. The dealership responded that Seifi's vehicle was no longer covered by warranty and advised him to contact MBUSA, which he did to no avail. Concerned about the safety of his vehicle, Seifi paid to have the repair done.

A similar defect in the M272 engine of Deakin's ML350 SUV required a repair costing almost $7,000. Deakin purchased his vehicle new from a dealership in December 2005. In or around April 2012, Deakin's check engine light came on and the engine began to misfire without warning. The dealership told Deakin that the problem was a defective balance shaft gear, and to replace the gear, the mechanic would have to partially disassemble the engine. Deakin complained that such a recent model of engine should not malfunction and demanded compensation or redress. In response, the dealership and MBUSA informed him that his vehicle was out of warranty. While repairing Deakin's SUV, the mechanic discovered metal pieces from the balance shaft gear throughout the engine.

Plaintiffs allege that MBUSA knew about the defects in the balance shaft gears in Mercedes M272 engines and the idle gears in M273 engines and concealed the information from Deakin, Seifi, and the members of the putative class. According to Plaintiffs, the defects are present in engines manufactured beginning in 2004. Plaintiffs allege that MBUSA's parent company knew that manufacturing gears with sintered steel could result in premature failure, secretly tracked the prevalence of the problems caused by the gear defects, and based on the data gleaned from these tracking efforts, switched from sintered steel alloy to conventional steel construction of the gears in September 2006. They also allege that Mercedes's diagnostic manuals alerted technicians to balance shaft gear problems in vehicles equipped with M272 engines prior to mid-2007, when Mercedes issued its first of a series of Technical Service Bulletins to its technicians informing them about the defective gears and instructing them on how to make appropriate repairs.

2

Plaintiffs further allege that MBUSA made misrepresentations about the reliability of Mercedes vehicles with M272 and M273 engines. Specifically, Plaintiffs point to: 1) an undated MSN Autos review reporting that "Mercedes has had quality issues in the past few years, but feels confident that the new design of the solid-feeling M-class should be free of problems"; and 2) a November 20, 2006, CNN money report stating that a Mercedes representative said that the low reliability ratings given to 2006 Mercedes vehicles by Consumer Reports were "totally out of sync with what we're seeing in the mainstream research as well as our own customer satisfaction and warranty data." FAC ¶ 30-33.

Plaintiffs' original complaint ("Complaint") (Docket No. 1) set out claims for breach of express warranty under California law, breach of implied warranty under the Song-Beverly Consumer Warranty Act, section 1790 *et seq.* of the California Civil Code (the "Song-Beverly Act"), violations of the California Consumers Legal Remedies Act ("CLRA"), section 1750 *et seq*. of the California Civil Code, and California's Unfair Competition Law ("UCL"), section 17200 *et seq*. of the California Business and Professions Code. MBUSA moved to dismiss the Complaint, and on May 23, 2013, the Court dismissed without prejudice Plaintiffs' claim for breach of express warranty, dismissed with prejudice the breach of implied warranty claim, denied the motion to dismiss in all other respects, and denied the motion to strike class allegations because the Court held that the parties needed to conduct limited discovery and the class allegations would be better evaluated under a later Rule 23 class certification motion. May 23, 2013 Order Granting in Part and Denying in Part Mot. to Dismiss ("May Order") (Docket No. 42).

On July 5, 2013, Plaintiffs filed the FAC, amending allegations relating to the express warranty claim. FAC ¶¶ 53-65. Plaintiffs also amended the FAC to include a claim for CLRA money damages. FAC ¶¶ 77-79. MBUSA now moves to dismiss the express warranty claim and the CLRA money damages claim under Rule 12(b)(6), as well as to strike Paragraphs 77-79 from the FAC under Rule 12(f). Mot. to Dismiss (Docket No. 49).

3

**LEGAL STANDARD**

MBUSA moves to dismiss Plaintiffs' express warranty claim and CLRA claim for money damages under Federal Rule of Civil Procedure 12(b)(6),[1] for failure to state a claim upon which relief can be granted. Generally, a complaint must contain "a short and plain statement" showing "the grounds for the court's jurisdiction" and "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). On a motion to dismiss, a court evaluates a complaint for: "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotation marks omitted). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies in the complaint. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir. 1998).

---

[1] All references to "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

4

**DISCUSSION**

### I. Express Warranty Claim and Substantive Unconscionability

Plaintiffs claim that MBUSA breached its express warranty by "failing to correct, at no charge to class members, the subject defect." FAC ¶ 48. The Court previously held that because Plaintiff did not allege that the defective gears failed during the warranty period, they did not state a claim for breach of the express warranty.[2] May Order at 6-7. Plaintiffs previously argued that, in the alternative, the time/mileage limit in the MBUSA warranty is unconscionable when invoked to deny a claim based on the alleged latent defect in the engine gears, which Plaintiffs claim was known to MBUSA at the time their vehicles were sold and delivered. While the Court held that Plaintiffs had pleaded facts sufficient to demonstrate procedural unconscionability, they had failed to plead that MBUSA's express warranty claims were substantively unconscionable. The Court observed:

> Even accepting as true Plaintiffs' allegation that Mercedes knew about the defective gears, Plaintiffs have not alleged facts showing that MBUSA's warranty is overly harsh or one-sided. Plaintiffs do not allege that MBUSA made any changes to its standard warranty as a result of knowing about the defective gears, nor do they allege any facts suggesting that MBUSA took its alleged knowledge of the defective gears into account in determining the warranty's time and mileage limitations. The terms of the warranty – covering repairs needed within 48 months or 50,000 miles of retail purchase – do not on their face shock the conscience. Plaintiffs therefore have failed to sufficiently plead substantive unconscionability. . . . MBUSA's warranty, by its terms, does not cover repairs required outside of the warranty period, and . . . Plaintiffs have not alleged facts showing that MBUSA's standard 48-month/50,000 mile warranty is unconscionable.

May Order at 8. On this basis, the Court dismissed Plaintiffs' express warranty claim without prejudice.

In the FAC, Plaintiffs allege that other car manufacturers, when confronted with safety-related defects that arise after the expiration of their warranty's durational limits,

---

[2] The terms of MBUSA's express warranty do not permit claims based on defects discovered after the warranty period because MBUSA's warranty covers "any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period," which is "48 months or 50,000 miles, whichever occurs first . . . [of] the date the truck is delivered to the first retail purchaser." FAC, Ex. 8  It is undisputed that the vehicles at issue in this case were covered by MBUSA's factory warranty for 2006 Trucks. May Order at 6.

5

1  extend the warranty to cover repairs for that defect, and that "MBUSA's anomalous decision
2  to follow an approach contrary to this industry custom . . . is overly harsh and one-sided" and
3  thus substantively unconscionable. Opp'n at 11-12 (Docket No. 56) (citing FAC ¶¶ 54-65).
4  MBUSA argues, in contrast, that consumer expectations are unenforceable in the face of a
5  warranty's express limits, and that Plaintiffs again have failed to plead facts supporting
6  substantive unconscionability.

7  Unconscionability, with both its procedural and substantive elements, is a question of
8  law for the court. *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796, 808 (2006).
9  Because the Court earlier held that Plaintiffs had pleaded facts sufficient to demonstrate
10 procedural unconscionability, May Order at 7-8, the only issue here is whether Plaintiffs
11 have succeeded, on amendment, in pleading facts sufficient to demonstrate substantive
12 unconscionabilty. The substantive element of unconscionability focuses on the "actual
13 terms" of the agreement and evaluates whether those terms create "overly harsh" or "one-
14 sided" results as to "shock the conscience." *Id*. (internal citation and quotation marks
15 omitted). Courts "consider whether contractual provisions 'reallocate[ ] risks in an
16 objectively unreasonable or unexpected manner.'" *Lanigan v. City of Los Angeles*, 199 Cal.
17 App. 4th 1020, 1036 (2011) (citing *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1539
18 (2003)).

19 Plaintiffs' industry custom allegation fails to state a legally cognizable substantive
20 unconscionability claim. Plaintiffs cite no case that stands for the proposition that unilateral
21 customer expectations, even if informed by industry custom, can render the express terms of
22 the durational warranty limits here substantively unconscionable. The two cases cited by
23 Plaintiffs are factually distinguishable and evaluate when a party's expectations may help a
24 court to determine the non-express terms of a contract, as opposed to override the express
25 terms of the contract, which is what Plaintiffs seek. Plaintiffs cite *United States v. Taibi*, No.
26 10-CV-2250 JLS CAB, 2012 WL 553143, at *4 (S.D. Cal. Feb. 21, 2012), a case involving
27 recovery of a defaulted student loan, for the proposition that "contract terms may be
28 determined by custom or reasonable expectation of the parties under California law." But

6

this statement is dicta, and originates from *King v. Stanley*, 32 Cal. 2d 584, 589 (1948), which was disapproved of by *Patel v. Liebermensch*, 45 Cal. 4th 344, 350 n. 2 (2008) on the grounds that, contrary to *King*, "the manner of payment, like the time of payment, is a matter that may be determined by reference to custom and reason when the contract is *silent* on the question." (Emphasis added). Similarly, express terms were not at issue in *Gunther-Wahl Products, Inc. v. Mattel, Inc.*, 104 Cal. App. 4th 27, 29 (2002), also cited by Plaintiffs, as that case dealt with an implied-in-fact contract. Because these cases involve resorting to custom or facts extraneous to the contract *only when* the terms of the contract are silent or implied, neither case supports Plaintiffs' contention that the Court may look to the anecdotal practices of other car manufacturers and purported unilateral consumer expectations derived therefrom to override the *express* terms of the durational limits in MBUSA's warranty.

  During oral argument, Plaintiffs argued that substantive unconscionability analysis is different when the alleged defect is a safety defect as opposed to a non-safety defect, and that it would be unconscionable for a manufacturer to wash its hands of a safety-related defect and escape responsibility through the durational limits of an express warranty. Plaintiffs cite no authority that holds that durational limits must be extended for safety defects, or that knowledge alone of an alleged safety defect renders a durational limit in an express warranty substantively unconscionable. Rather, the allegations that other car manufacturers voluntarily extended their warranties when confronted with safety defects that arise after the expiration of a warranty's durational limits, which the Court accepts as true on a motion to dismiss, is not legally sufficient to support a claim that the "actual terms" of MBUSA's durational warranty limits produce "overly harsh" or "one-sided" results as to "shock the conscience." *Aron*, 143 Cal. App. 4th at 808. A theory that would allow unilateral consumer expectations based on the practices of other car manufacturers to unwind the express terms of the durational limits here would render substantive unconscionability analysis unworkable. *Cf. Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2007) (holding that generally express warranties do not cover claims based on repairs made outside of the warranty period because if such claims were permitted, the "[f]ailure of a product to last

7

forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself"). The Court therefore finds that the alleged industry custom here whereby car manufacturers voluntarily extend durational warranties in light of a safety defect is not legally sufficient for Plaintiffs to state a claim that the MBUSA durational warranty is substantively unconscionable.

In previously holding that Plaintiffs failed to allege facts showing that MBUSA's standard durational warranty of 48 months or 50,000 miles, whichever occurred first, is substantively unconscionable, the Court described the type of allegations that might indicate that the MBUSA warranty was overly harsh or one-sided, such as allegations that MBUSA changed its standard warranty as a result of knowing about the defective gears, or that MBUSA took its alleged knowledge of the defective gears into account in setting the warranty's time and mileage limitation. May Order at 8. In the FAC, Plaintiffs' only new allegations related to the practices of other car manufacturers and one instance in which Mercedes' parent company allegedly extended the warranty related to an airbag wiring defect. FAC ¶¶ 54-65. As discussed above, these factual allegations related to the voluntary practices of other car manufacturers do not show that the durational limit in the warranty here produces overly harsh or one-sided results. This conclusion is in accord with other courts that have examined similar durational limits. *See, e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993 (N.D. Cal. 2010) *aff'd*, 462 F. App'x 660 (9th Cir. 2011) (granting summary judgment to Ford on finding that standard three-year, 36,000 mile warranty was not unconscionable under California law); *cf. Suddreth v. Mercedes-Benz, LLC*, No. 10-CV-05130 DMC-JAD, 2011 WL 5240965, at \*4 (D. N.J. Oct. 31, 2011) (holding that plaintiffs failed to adequately plead that Mercedes' limited warranty of 48 months or 50,000 miles, whichever occurred first, was unconscionable as to the same defect alleged in this case without further substantive unconscionability allegations beyond mere supposed knowledge of the defect). The Court finds the reasoning of the *Suddreth* court persuasive. Put simply, Plaintiffs have failed to show that the durational limit here "'reallocate[d] risks in an

8

objectively unreasonable or unexpected manner.'" *Lanigan*, 199 Cal. App. 4th at 1036. "Plaintiffs use of their vehicles for four years cannot be classified as nominal use." *Suddreth*, 2011 WL 5240965, at *4. Plaintiffs were provided an opportunity to amend their Complaint to meet the standard required for substantive unconscionability and failed to do so; the Court questions whether further amendment would be futile. *Steckman,* 143 F.3d at 1296. Nonetheless, and the Court GRANTS MBUSA's motion to dismiss Plaintiffs' express warranty claim without prejudice.

## II. Money Damages Under the CLRA

Plaintiffs contend that MBUSA had a duty to inform them of the likelihood that the defective gears would fail outside of the warranty period under the CLRA, and that it failed to do so. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).[3] The Court previously held that Plaintiffs have stated a claim under the CLRA. May Order at 13. At issue in this motion is whether Plaintiffs' CLRA claim for money damages fails under Rule 12(b)(6) and whether the allegations relating to this claim (Paragraphs 77-79) should be stricken from the FAC pursuant to Rule 12(f).

As a threshold matter, the Court DENIES MBUSA's motion to strike the CLRA money damages allegations from the FAC. Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In this Circuit, "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) (remanding to district court with instructions not to dismiss plaintiff's claim for lost profits and consequential damages arising from breach of contract under a Rule 12(f) motion). The

---

[3] All references to "Code" hereinafter refer to the California Civil Code.

1  Court finds that MBUSA's motion to strike the CLRA money damages allegations as
2  precluded by law is squarely foreclosed by *Whittlestone*.
3       MBUSA also moved for an order dismissing Plaintiffs' CLRA claim for money
4  damages pursuant to Rule 12(b)(6). In order to make out a claim for money damages under
5  the CLRA, a plaintiff must comply with the statute's rigorous notice and timing
6  requirements. Under the CLRA, thirty days or more prior to the commencement of "an
7  action for damages," the consumer shall notify the defendant of the particular alleged
8  violations of Code section 1770, and demand that the defendant "correct, repair, replace, or
9  otherwise rectify" those violations. Cal. Civ. Code § 1782(a). However, an action for
10 "injunctive relief" brought under section 1770 may be commenced without compliance with
11 the notice requirements. Cal. Civ. Code § 1782(d). If a complaint seeks only injunctive
12 relief, not less than thirty days after it has been filed and, after compliance with the thirty day
13 notice requirement under section 1770(a), the consumer may amend the complaint without
14 leave of the court to include a request for damages. *Id.*
15      MBUSA argues that Plaintiffs' CLRA money damages claim should be dismissed
16 with prejudice for failure to comply with a variety of the requirements imposed by section
17 1782, including: (1) filing the Complaint, which purportedly sought CLRA money damages
18 prior to sending a notice letter and allowing MBUSA to cure; (2) amending the FAC without
19 leave from the Court; (3) sending a demand letter that purports to give notice under the
20 CLRA for products Plaintiffs had not purchased or owned themselves; and (4) sending a
21 demand letter that was invalid because the demands exceeded what is permissible under
22 section 1782(a)(2). Each argument is addressed seriatim.
23       **1.    Timing**
24      MBUSA argues that Plaintiffs' Complaint, filed on October 24, 2012, asked for
25 CLRA damages and therefore violated Code section 1782(a) which requires a plaintiff to
26 provide notice of their intention to seek damages under the CLRA prior to filing a complaint.
27 Specifically, MBUSA asks the Court to find that Plaintiffs improperly sought CLRA
28 damages prior to giving notice because Paragraph 70 of the CLRA claim section of the

10

1  Complaint incorporated by reference other allegations related to damages and prayers for
2  money damages made elsewhere in the Complaint.  S*ee* Compl. ¶ 36(f) (class action prayer
3  for relief including damages), ¶ 55 (damages for breach of express warranty), ¶ 67 (damages
4  for violation of Cal. Bus. & Prof. Code § 17200), ¶ 70 (CLRA's incorporation by reference
5  of "each of the preceding allegations as though fully set forth herein") & Prayer ¶ (d)
6  (damages according to proof).  MBUSA's suggested interpretation, however, is unwarranted
7  as these various paragraphs, read in context, plead damages for other claims, not CLRA
8  claims.  In fact, Plaintiffs explicitly pleaded in Paragraph 72 that they sought equitable and
9  injunctive relief, and noted in Paragraph 73 that they were concurrently notifying MBUSA
10 by separate demand letter of the particular CLRA violations and demands for corrective
11 action.  Critically, Plaintiffs warned that if MBUSA failed to heed the demand letter,
12 "Plaintiffs shall amend this Complaint as of right (or otherwise seek to amend the Complaint)
13 to include compensatory and money damages to which Plaintiffs and the class are entitled."
14 Compl.
15 ¶ 73.  Read in context, Plaintiffs' Complaint did not improperly seek money damages prior to
16 serving their CLRA demand letter.  *Cf. Sanbrook v. Office Depot, Inc.*, No. C-07-05938
17 RMW, 2008 WL 1994884, at *3 (N.D. Cal. May 5, 2008) (finding that while prayers for
18 relief in CLRA complaint failed to differentiate between the asserted theories of liability,
19 plaintiff's complaint nonetheless did not impermissibly seek damages for the alleged CLRA
20 violations prior to placing defendant on notice).  Plaintiffs' CLRA money damages
21 allegations were added to the FAC more than thirty days after the demand letter placing
22 MBUSA on notice was served.  *See* FAC, Ex. 16 (indicating demand letter served on May
23 23, 2013); FAC ¶ 77 (filed July 5, 2013 and amending a new allegation for "money
24 damages" in addition to previously sought equitable and injunctive relief pursuant to the
25 CLRA).  Therefore, Plaintiffs did not violate the notice requirements of Code section
26 1782(a).
27 //
28 //

11

### 2.     Leave to Amend CLRA Money Damages Claim

MBUSA argues that Plaintiffs did not have leave to amend the FAC to include the CLRA money damages claim under Code section 1782(d). The CLRA provides that if the consumer complies with the notice provisions discussed above, "the consumer may amend his or her complaint without leave of court to include a request for damages." Cal. Civ. Code § 1782(d). MBUSA is correct that amendment of the CLRA money damages claim without leave of court was technically improper because the May Order was silent as to whether Plaintiffs could add CLRA money damages in the FAC, and Plaintiffs were not permitted leave to amend pursuant to Rule 15. However, MBUSA was already on notice that Plaintiffs intended to add CLRA money damages by amendment in the Complaint if their demand notice was not accommodated. Compl. ¶ 73. Moreover, the Court would likely have granted leave to amend a CLRA money damages claim as Rule 15(a)(2) instructs the Court to "freely give leave when justice so requires" and Code section 1782(d) envisions amending the complaint in state court in a manner similar to what Plaintiffs attempted here. *Cf. Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2006 WL 3782902, at *6 (N.D. Cal. Dec. 21, 2006) (dismissing with leave to amend CLRA claim "[g]iven that the legislature specifically contemplated that an action seeking injunctions can be amended to include a damages claim after the thirty days have run"); *see also Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *17 (N.D. Cal. Oct. 2, 2013) (holding plaintiff was not required to seek leave to amend under Rule 15 in order to add his claim for CLRA money damages). In the interests of judicial economy, the Court therefore construes Plaintiffs' opposition as a belated request for leave to amend, which is granted *nunc pro tunc*.

### 3.     CLRA Notice Only for Products Owned by Parties

MBUSA argues that Plaintiffs cannot provide notice as to vehicles containing the M273 engine because Plaintiffs each only own a 2006 ML350 containing the M272 engine. Plaintiffs argue that they can provide notice for vehicles containing the M273 engine because the putative class for which they anticipate class certification will later be granted will include owners or lessees of vehicles containing both the M272 and M273 engine. The Court

previously denied MBUSA's motion to strike class allegations because, while the "Court ha[d] some doubts about the adequacy of [Plaintiffs' ability] to represent a class that includes owners and lessees of vehicles with a different engine type and different allegedly defective part," the Court held the motion to strike the class allegation must await "full briefing . . . based on at least some discovery." May Order at 14.

The CLRA defines the consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household purposes." Cal. Civ. Code § 1761(d). Read literally, Plaintiffs were consumers who acquired only ML350 vehicles containing the M272 engine; neither Plaintiff acquired a vehicle containing the M273 engine. Thus, the CLRA does not permit Plaintiffs to put MBUSA on notice of CLRA violations regarding products they have not purchased. *See, e.g.*, *Wehlage v. EmpRes Healthcare, Inc.*, No. 10-5839 CW 2012 WL 380364, at *7 (N.D. Cal. Feb. 6, 2012) (holding that consumer of services obtained from one entity lacked standing to sue other related entities, and thus could not place the other entities on notice of CLRA claims against them); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009) ("the CLRA does not provide that notice may be provided on behalf of the aggrieved consumer by third parties").

Plaintiffs cite no legal authority supporting the claim that they may maintain a CLRA money damages claim by serving a demand letter that places MBUSA on notice for a product that the Plaintiffs do not own merely because the Plaintiffs hope that, pending class certification, the putative class will contain owners of that product. The Court recognizes a tension inherent in this issue. On the one hand, Plaintiffs seek to establish a putative class of owners of vehicles containing M272 engines (vehicles which the Plaintiffs themselves own) and owners of vehicles containing M273 engines (a class of which the Plaintiffs presumably seek to represent if successful at class certification). To preserve their ability to allege CLRA money damages on behalf of the putative class, Plaintiffs needed to make a demand letter noticing vehicles containing both the M272 and M273. On the other hand, consumers may only place a party on notice for products that they themselves have purchased or leased

13

1  because a "literal application" of the CLRA notice provisions is the only way to accomplish
2  the CLRA's purpose of facilitating pre-complaint settlements of consumer actions wherever
3  possible and to establish a limited period during which such settlement may be accomplished.
4  *Outboard Marine Corp. v. Superior Court,* 52 Cal. App. 3d 30, 41 (1975). Plaintiffs'
5  argument here is too speculative and does not outweigh the weight of authorities that dictate
6  that Plaintiffs are required to own or lease a vehicle containing the M273 engine to have
7  standing to notice a CLRA violation for that product. Had one of the Plaintiffs owned a
8  vehicle with the M273 engine, the result might be different. The Court therefore GRANTS
9  without prejudice MBUSA's motion to dismiss Plaintiffs' CLRA money damages claim as to
10 vehicles containing the M273 engine.

### 4. Miscellaneous Purported Defects in the Notice

MBUSA also argues that the CLRA money damages claim should be dismissed in its entirety due to alleged defects in Plaintiffs' section 1782 demand letter placing MBUSA on notice. The notice requirements of section 1782(a) provide that the notice letter:

> (1) notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the **particular alleged violations of Section 1770**; and
> (2) Demand that the person **correct, repair, replace, or otherwise rectify** the goods or services alleged to be in violation of Section 1770.

Cal. Civ. Code § 1782(a)(1)-(2) (emphasis added).

First, MBUSA contends that Plaintiffs' demands exceed their rights to request that MBUSA "correct, repair, or replace or otherwise rectify goods" allegedly in violation of Code section 1770. For example, when Plaintiffs demanded that MBUSA "offer to fully repair . . . without regard to whether a particular class member's vehicle is within the durational limits of MBUSA's express warranty," Plaintiffs' May 23, 2013 Demand Letter, FAC, Ex. 16 (Docket No. 46-16), they requested relief to which the Court previously held they were not entitled. May Order at 6:7-9, 6:25-7:2 (holding that repairs made outside of the warranty period are not covered by MBUSA's durational warranty). But MBUSA cites no authority that suggests an otherwise appropriate CLRA notice demand letter is voided

merely because a plaintiff overreaches in one request for relief, or put differently, that the presence of a notice containing several pie-in-the-sky requests, along with several reasonable ones, is a legally cognizable basis to dismiss Plaintiffs' entire CLRA money damages claim absent some other fatal problem.

Second, MBUSA contends that Plaintiffs failed to identify with particularity the alleged violations of the CLRA on which their demands rely. Plaintiffs, in the demand letter, specifically referenced the filed Complaint and noted that it alleged that "MBUSA violated, *inter alia,* the California Consumer Legal Remedies Act, including the following statutory provisions: Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), 1770(a)(9), and 1770(a)(14), in connection with the distribution of Mercedes vehicles equipped with the M272 and M273 engines that bore defective balance shaft gears or idle gears-a defect that MBUSA failed to disclose." [4] FAC, Ex. 16. These cited statutory references, when read in conjunction with the Complaint filed in this action, to which Plaintiffs explicitly refer in their demand letter, *see* FAC, Ex. 16, provide MBUSA and its counsel "sufficient notice of the alleged defects to permit appropriate corrections or replacements." *Outboard Marine Corp.,* 52 Cal. App. 3d at 40–41; *Colucci v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2012 WL 6737800, at *9 (N.D. Cal. Dec. 28, 2012) (defendant's argument that notice letter lacked sufficient detail was unavailing because notice need only give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements). Thus, concerns regarding

---

[4] These cited provisions of Code section 1770(a) provide ample notice as to the alleged defect and legal theory supporting the claim:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.
> . . .
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
> . . .
> (9) Advertising goods or services with intent not to sell them as advertised.
> . . .
> (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9) & (a)(14).

15

1 particularity of the notice pursuant to section 1782(a) are not fatal to Plaintiffs' CLRA money
2 damages claim.

3       Third, Plaintiffs' notice letter demanded MBUSA pay "Plaintiffs as well as the
4 members of the Class for the loss of value and loss of use of their vehicles as a result of the
5 defective balance shaft and idle gears." FAC, Ex. 16. MBUSA argues that loss of use or
6 value is not contemplated by the plain language of the CLRA, and therefore exceeds the
7 proper relief sought in a demand letter, which is limited to a demand that a defendant
8 "correct, repair, replace, or otherwise rectify the goods . . . alleged to be in violation of
9 Section 1770." Cal. Civ. Code § 1782(a)(2). MBUSA cites no authority that prohibits a
10 party from demanding relief including but not limited to the correction, repair, or
11 replacement of the goods alleged to be in violation of the CLRA. Indeed, the phrase
12 "otherwise rectify" could be read to include the broader relief requested by Plaintiffs. *Cf.*
13 *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 642 (2009) (interpreting the "requirement of
14 section 1780 that a consumer 'suffer [ ] any damage' to include the infringement of any legal
15 right as defined by section 1770.") Even if MBUSA's narrow reading is correct, at most
16 Plaintiffs asked for relief broader than permitted by statute, but which also included relief
17 permissible by statute. Perceived deficiency related to overbreadth in Plaintiffs demand
18 letter here is not alone a legally cognizable reason to dismiss Plaintiffs' entire CLRA money
19 damages claim.

20       MBUSA's arguments about purported deficiencies in the notice letter are essentially
21 that Plaintiffs demanded too much in their notice and now should be precluded from alleging
22 CLRA money damages completely. MBUSA, however, fails to cite any authority that
23 suggests dismissal of the CLRA money damage claim without leave to amend is appropriate
24 because of the purported notice letter inadequacies identified above. Because MBUSA failed
25 to show that issues related to Plaintiff's CLRA notice letter preclude the otherwise legally
26 cognizable CLRA money damages claim, MBUSA's motion to dismiss the CLRA money
27 damages claim is otherwise DENIED.
28 //

16

**CONCLUSION**

For the reasons stated above, MBUSA's motion to dismiss is GRANTED without prejudice as to Plaintiffs' express warranty claim and Plaintiffs' CLRA money damages claim for vehicles containing the M273 engine. MBUSA's motion to dismiss the CLRA money damages claim is otherwise DENIED. MBUSA's motion to strike is DENIED.

Plaintiffs' amended complaint, if any, shall be filed no later than **November 8, 2013**. If Plaintiffs fail to file a timely amended complaint, the Court shall dismiss the express warranty claim and CLRA money damages claim as to vehicles containing the M237 engine with prejudice.

**IT IS SO ORDERED.**

Dated:   10/09/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT