Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
4225 Executive Square, Suite 600
La Jolla, California 92037
Telephone:  (858) 242-5642
Facsimile:   (858) 430-3719
e-mail: rak@katriellaw.com

*Counsel for Plaintiffs*

*[additional Plaintiffs' Counsel listed on
signature block]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAJEED SEIFI AND TRACEY DEAKIN, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | **CASE NO. 3:12-cv-5493-TEH**<br><br>**JOINT SUBMISSION REGARDING PLAINTIFFS' MOTION TO COMPEL**<br><br>**Discovery Matter Assigned To:**<br><br>**Hon. Jacqueline Scott Corley**<br><br>**Location: Courtroom F, 15th Floor**<br><br>**Hearing Date: N/A**<br><br>**REDACTED PUBLIC VERSION** |

No. 3:12-cv-5493-TEH
*Seifi et. al .v. Mercedes-Benz USA, LLC*

Pursuant to Judge Corley's Standing Order, the parties file this Joint Submission relating to a discovery dispute.  The dispute centers around Defendant Mercedes-Benz USA, LLC's ("MBUSA") objections and position in response to Plaintiffs' document requests and interrogatories that MBUSA will not produce documents of Daimler AG, the German parent company and manufacturer of Mercedes-Benz vehicles at issue in this action.  *See* Ex. 1 to Decl. of Roy A. Katriel [MBUSA's Resp. and Objections to Plaintiffs' Doc. Req.], at Objection No. 5, and Resp. 4-5; 9-25; Ex. 2 to Katriel Decl. [MBUSA's Interrog. Resp.], at Objection No. 5, and Resp. 4-11; 13-14.   For each of these requests and interrogatories, MBUSA refuses to produce Daimler documents or responses.  The parties conferred but have not solved the dispute.  *Id.*, at ¶2.

I. **PLAINTIFFS MAINTAIN THAT MBUSA IS REQUIRED TO PRODUCE DAIMLER DOCUMENTS BECAUSE IT HAS CONTROL OVER THEM.**

This is a putative class action against MBUSA brought on behalf of California owners and lessees of certain Mercedes-Benz vehicles who allege that the cars were equipped with defective balance shaft or idle gears.  *See* First Amended Complaint ("FAC") [Dkt. No. 46].  When these parts fail (usually shortly after the expiration of the warranty period), the owner is left with a $5,000 or more bill, as the engine must be disassembled to replace the faulty part.  *Id.* at ¶¶ 5, 6. The Court upheld most of the FAC.  *See* Dkt. No. 63. Plaintiffs then sought discovery about the parts at issue.  MBUSA, however, has refused to produce this discovery, arguing that documents and knowledge reside with its German parent company, Daimler AG, the vehicle manufacturer.

MBUSA cannot hide behind this corporate formality to avoid producing this discovery that is at the heart of this case.  Under Rule 34, MBUSA has "control" over these Daimler documents, such that it must produce them.  This issue has already been resolved recently by the United States District Court for the Western District of Louisiana, where a related class action (brought on behalf of Louisiana Mercedes vehicle owners), styled as *Dugas v Mercedes-Benz USA, LLC* is currently pending.  MBUSA took the same position in *Dugas* as it does here, but the federal Magistrate Judge in that case found that:

> **MBUSA has control over the requisite Daimler documents, the undersigned finds that MBUSA has the necessary control over documents possessed by Daimler so that MBUSA must produce the documents requested in the corporate deposition notice if the documents are found either in MBUSA's**

1

1    **possession or in the possession of Daimler**.

2    Ex. 3 to Katriel Decl. [*Dugas* Order entered Aug. 5, 2014], at 12 (emphasis added).  Despite this

3    ruling, MBUSA is adhering to its position.  It has challenged the *Dugas'* Magistrate Judge's

4    Order, and still refuses production.  Aside from *Dugas*, other courts within the Ninth Circuit have

5    addressed the same duty of production, and held in favor of production by the U.S. subsidiary.

6        In *AFL Telecom. LLC v. SurpluseQ.com Inc.*, 2012 WL 2590557 (D. Ariz. Jul. 5, 2012),

7    the plaintiff sought production of documents that defendant, the American subsidiary distributor of

8    a Japanese manufacturer, claimed were in possession only of the Japanese manufacturer. *Id*. at *1-

9    *2.  Citing the Ninth Circuit's *In re Citric Acid Litigation* decision as the governing precedent, the

10   court ordered production by the American subsidiary:

11       Finally, AFL contends that the source codes are not in its possession or control,
         but rather are held exclusively by Fujikura. In support of this argument, AFL cites
12       *In Re Citric Acid Litigation,* 191 F.3d 1090 (9th Cir.1999). AFL argues that the
         Ninth Circuit in this and prior decisions adopted a 'legal control' test, holding that
13       documents are within the 'control' of a corporate entity within the meaning of
         Rules 34(a) and 45(a) only if the corporation has the legal right to acquire and
14       produce the documents. AFL argues that it does not have such a legal right—that
         Fujikura is the only entity that has the right to control and produce the source
15       codes.

16       Although it is true that *Citric Acid* adopted the legal control test, it specifically
         stated that its decision was consistent with decisions in other circuits, **including**
17       *Gerling International Insurance Co. v. Commissioner,* 839 F.2d 131, 140–41 (3rd
         Cir.1988). *See* 191 F.3d at 1108. *Gerling* adopted the legal control test, but
18       provided a more expansive definition than AFL suggests. Specifically, *Gerling*
         extended the test to a situation 'where the subsidiary was an agent of the parent in
19       the transaction giving rise to the suit and in litigating the suit on the parent's
         behalf.' 839 F.2d at 140. ***Gerling cited as an example a case where 'the***
20       ***subsidiary was the exclusive seller of its parent's products in the United States.'***
         ***Id.*** *Gerling* further explained that '[w]here the relationship is thus such that the
21       agent-subsidiary can secure documents of the principal-agent to meet its own
         business needs and documents helpful for use in the litigation, the courts will not
22       permit the agent-subsidiary to deny control for purposes of discovery by an
         opposing party.' *Id.*
23
         Because the Ninth Circuit cited *Gerling* favorably in its adoption of the legal
24       control test, the Court concludes that the rationale of *Gerling* should apply in this
25       case. Defendants cite evidence, without contradiction from AFL, that AFL is a
         wholly-owned subsidiary of Fujikura, the exclusive authorized distributor of
26       Fujikura fusion splicers in the United States, and the exclusive licensee of
         Fujikura's intellectual property rights related to fusion splicers. . . .
27
         The Court concludes that the legal control test set forth in *Gerling,* and cited
28

1    favorably in *Citric Acid,* applies to these facts. The Court accordingly concludes
2    that AFL is obligated to produce the source codes sought in Defendants' discovery

*AFL Tel.*, 2012 WL 2590557, at *2 (citing *In re Citric Acid Litig.*, 191 F.3d 1090 (9■ Cir. 1999).

3        Likewise, in *Choice Intersil Microsystems, Inc. v. Agere Sys., Inc.*, 224 F.R.D. 471, 472-73
4
5    (N.D. Cal. 2004), this Court required Infineon NA, U.S. subsidiary distributor and defendant in the

action, to produce documents of its German parent manufacturer.   This Court described as
6
7    "inconceivable" the notion that as the sole U.S. distributor and subsidiary it would not have access

or control over documents from the parent manufacturer about the products at issue.  *Id.* at 473.
8
9        California federal courts have repeatedly held that U.S. distributor subsidiaries of foreign

10   car manufacturers act as the general managers and agents of the foreign parent manufacturer.  *See*

11   *Falco v. Nissan North Am., Inc.*, 987 F. Supp.2d 1071, 1076-78 (C.D. Cal. 2013) (Nissan North

America held agent and general manager of Nissan-Japan); *Khachatryan v. Toyota Motor Sales,*
12   *USA*, 578 F. Supp.2d 1224, 1227 (C.D. Cal. 2008) (Toyota USA held agent of Toyota Japan);

13   *Gray v. Mazda Motor of America*, 560 F. Supp.2d 928, 931 (C.D. Cal. 2008) (Mazda USA held
14
15   general manager and agent of Mazda Motors Japan).  It is inconceivable that as the U.S. distributor

charged with, for example, responding to regulatory safety inquiries about Mercedes vehicles from
16
17   the National Highway Transportation and Safety Administration, MBUSA would have no access

to documents about the very cars it distributes for Daimler AG in the United States.
18
19       Even the cursory MBUSA documents produced to date confirm that ██████████

20   ███████████████████████████████████████████████
21   ███████████████████████████████████████████
22   ██████████████████████████████████████████████
23   ████████████████████████████████████████████████████
24   ██████████████████████████████████████████████
25   █████████████████████████████████████████████████
26   ████████████████████████████████████████████████████
27   ████████████████████████████████████████████
28   █████████████████████████████████████████████████
      ██████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████

MBUSA deponents also confirm MBUSA's access to Daimler documents and know-how. Theodore Vaughan, an MBUSA engineer, confirmed that he talks with Daimler about lawsuits involving allegedly defective parts in Mercedes vehicles, (*see* Ex. 7 to Katriel Decl., at 29-14-30:4), and could and has obtained from Daimler documents relevant to a lawsuit against MBUSA:

> Q.   Okay.  Are you aware of Daimler ever giving documents regarding specifications of Mercedes-Benz vehicles to MB USA Legal?
>
> A.   What documents?
>
> Q.   Specification documents, again a broad  definition. . . .
>
> A.    I'm aware.
>
> Q.   You are aware?  When did that happen?
>
> A.   In one of the cases I'm involved in.
>
> Q.   Okay.  What are the parameters or the specifics, rather, of that case?
>
> A.   It's related to a strut.
>
> Q.   Is there litigation surrounding that issue or that strut?
>
> A.   Yes.

*Id*. at 33:20-34:22.  He also testified that MBUSA has access to Daimler part databases:

> Q.   And who is the developer of the program?
>
> A.   Daimler.
>
> Q.   So it is specific to Daimler vehicles?
>
> A.   That's correct.
>
> Q.   And so if one wanted to determine how the balance shaft interfaces with the other parts of  the engine, you could determine that through use of  the Workshop Information System?
>
> A.   Some of that information likely.
>
> ***Q.   And you, as an MB USA employee, have access to the Workshop Information System?***
>
> ***A.   Yes.***
>
> ***Q.   Is that because you are a product analysis engineer?***
>
> ***A.   Yes.***

*Id*. at 41:23-42:12 (emphasis added).   As in *Dugas*, MBUSA should be ordered to produce the documents.

II. **MBUSA'S POSITION: PLAINTIFFS CANNOT COMPEL DISCOVERY FROM THIRD-PARTY DAIMLER AG AND MBUSA HAS NO LEGAL RIGHT TO DEMAND SUCH DISCOVERY**

Judge Henderson repeatedly has admonished plaintiffs to move their case against MBUSA forward.  Two years after filing this case and one year after propounding the discovery at issue, instead of, *e.g.*, taking depositions of MBUSA witnesses, plaintiffs use old discovery requests to try to circumvent international treaties and impose unduly burdensome discovery obligations on an unserved non-party (Daimler AG) in violation of Rule 45.  Plaintiffs' attempts should be denied.

Plaintiffs apply an improper legal standard by relying on out-of-circuit authority and a magistrate judge's order addressing different discovery requests in *Dugas*, which is pending appeal as contrary to even Fifth Circuit law.  Stegeman Decl., Ex. A (*Dugas* Objs. at 13-23).  Regardless, under **Ninth Circuit** authorities, MBUSA has no "legal right to obtain [the **requested**] documents [from Daimler AG] upon demand."  *Citric Acid*, 191 F.3d at 1107.

MBUSA has produced documents in its possession, custody, and control, including documents from the Workshop Information System ("WIS") discussed above.  MBUSA is a "sales and servicing" subsidiary, so it has some items on, *e.g.*, replacing parts (again, which it produced).  But MBUSA does **not** design or manufacture the parts at issue.  This type of information is very sensitive, giving a competitive advantage to Daimler AG, and cannot be "demanded" by MBUSA as MBUSA has **no** reason to know how a part is designed or made (as opposed to replaced).

A. **Plaintiffs' Efforts to Ignore FRCP 45 and Circumvent the Hague Convention Impose an Undue Burden on Third-Party Daimler AG**

MBUSA properly limited its responses to information within its possession, custody, and control.  Plaintiffs do not contend that MBUSA failed to produce documents or information that MBUSA has.  Rather, plaintiffs argue only about items belonging to German-citizen and non-party Daimler AG.  *See* Plaintiffs' preamble, *supra* (citing Obj. No. 5 in Katriel Decl., Exs. 1, 2).  *E.g.*, plaintiffs seek things like Daimler AG's internal communications regarding the near identical *Suddreth v. MBUSA* nationwide class action that was dismissed with prejudice in 2011, and this lawsuit, which are clearly privileged.  *See* Requests 14 and 15.  Plaintiffs offer no evidence proving MBUSA has a legal right to demand Daimler AG's internal (and obviously privileged) communications.

5

Plaintiffs' requests impermissibly ignore protections for foreign entities and non-parties like Daimler AG.  *See Orlich v. Helm Bros., Inc.*, 560 N.Y.S.2d 10, 14 (App. Div. 1990) ("When discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is virtually compulsory.").[1] Earlier this year, the Seventh Circuit reversed a ruling, like the one sought by plaintiffs here, "ordering [a defendant] to be the court's agent in violating federal legal limitations on compelled discovery in foreign countries . . . ."  *In re Petition of Boehringer Ingelheim Pharm., Inc.*, 745 F.3d 216, 219 (7th Cir. 2014).  Moreover, Rule 45's protections for ***non***-parties prohibit such burdensome discovery, even if it covers matters within the scope of Rule 26.  *See, e.g.*, *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 521 (M.D.N.C. 1989); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. 1983) (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)) (restrictions on discovery as to non-parties "protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information").

### B.   Plaintiffs Apply the Wrong Standard for "Control" and Offer No Evidence That MBUSA Has a Legal Right to Demand the Documents at Issue

Plaintiffs' repeat references to Third Circuit standards aside, in the Ninth Circuit, "[c]ontrol is defined as the legal right to obtain documents upon demand."  *Citric Acid*, 191 F.3d at 1107 (quoting *U.S. v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).  Thus, plaintiffs cannot compel MBUSA to produce Daimler AG documents and information unless they first prove MBUSA has a legal right to demand these things from Daimler AG.  *See, e.g.*, *Dugan v. Lloyds TSB Bank, PLC*, 2013 WL 4758055, at *2 (N.D. Cal. Sept. 4, 2013); *MGA Entm't, Inc. v. Nat'l Prods. Ltd.*, 2011 WL 4550287, at *2 (C.D. Cal. Oct. 3, 2011).

In *Dugan*, the plaintiffs also argued the more lenient standards in *Gerling*.  2013 WL

---

[1] Numerous courts have found the Hague Convention and other means to be effective "alternative avenues" for getting discovery from a foreign company and refuse to "disregard[] the 'corporate formalities' associated with related but independent corporate entities to obtain documents in the possession and immediate control of a non-party parent corporation."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005) (U.S. subsidiary/ distributor could not be compelled to produce design information in possession of Korean parent/manufacturer); *see also, e.g.*, *Hard Disk Drives*, 2008 WL 3274479, at *3 (U.S.T.I.C. Aug. 6, 2003).  Plaintiffs have made no efforts to serve discovery through the Hague Convention—and recognize that Daimler AG and MBUSA maintain "corporate formalities."  *See supra* at 1.

4758055, at *2. *Dugan* rejected that argument: "The court finds more persuasive the reasoning of cases in this district that have required parties to establish that a subsidiary has a legal right to obtain documents from its parent on demand before compelling those parties to produce documents." *Id.*; *see, e.g.*, *Genentech, Inc. v. Trustees of Univ. of Pa.*, 2011 WL 5373759, at *2-*3 (N.D. Cal. Nov. 7, 2011). *Dugan* also explains why plaintiffs' reliance on *Choice-Intersil* is misplaced. There, "the district court found that the wholly-owned subsidiary had access to its parent's documents because it shared ***relevant*** databases with its parent and, upon demand, could obtain high-level documents from the parent regarding the ***marketing*** of the relevant product." 2013 WL 4758055, at *2 (emphases added); Stegeman Decl., Ex. A (*Dugas* Objs. at 10-13) (citing cases holding that, while "sales and servicing" subsidiaries like MBUSA have some documents, they do not have things like the design and manufacturing information sought in this case).

Plaintiffs' references to *Dugas* are similarly inapposite, as *Dugas* conflates "control" over documents with "access" to documents. Katriel Decl., Ex. 3. That is improper even in the Fifth Circuit, *see* Stegeman Decl. Ex. A (*Dugas* Objs. at 13-23), and is substantially more lenient than the Ninth Circuit's standard for "control," *i.e.*, "'the legal right to obtain documents upon demand.'" *Citric Acid*, 191 F.3d at 1107. The overwhelming weight of authority similarly holds that a subsidiary does not "control" documents in the possession of a parent corporation unless the subsidiary has the "legal right to obtain the documents requested upon demand." *See, e.g.*, *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995).

Indeed, a Florida court recently ruled that MBUSA does ***not*** have control over documents in Daimler AG's possession under the same standard applicable here. *See* Stegeman Decl., Ex. B (*Dugas*, Dkt. No. 121-2 (Court Order from *Alexander v. MBUSA*)). In *Alexander*, the court rejected the same argument plaintiffs make in this case and found no grounds to conclude MBUSA has "control" over Daimler AG's discovery. *Id.*

In addition, plaintiffs' cites to deposition testimony in *Dugas* are out-of-context and inaccurate. For example, Theodore Vaughan explained he has access to "WIS," which is nothing

more than a database of repair instructions and other items ***already produced*** in this case.  Courts

have expressly rejected the notion that a subsidiary has the legal right to demand all documents

from a parent just because there is some sharing of other documents:

> Simply because the [two companies] share some documents during the ordinary course of business is insufficient to deem [the US company] as having control over the documents underlying the patents at issue. . . . [The ruling on appeal] comes close to deeming all wholly owned subsidiaries engaged in sales and servicing as controlling their parent company's documents.  Such a result would be impracticable.

*U.S.I.T.C. v. ASAT, Inc.*, 411 F.3d 245, 255 (D.C. Cir. 2005); Stegeman Decl., Ex. A (*Dugas* Objs. at

10-13) (discussing numerous other cases).  The documents plaintiffs cite (*e.g.*, from WIS) prove

MBUSA complied with its obligations and ***produced*** what it "controls" as a warrantor and seller—

but they do not establish "control" over sensitive Daimler AG information, such as the items sought

in this case.[2]  Plaintiffs fail to inform the Court that Mr. Vaughan swore under oath that MBUSA

does ***not*** have access to the information at issue here, such as "highly confidential, proprietary, and

sensitive information" concerning "the development, manufacture, testing, or analysis of the parts at

issue."  Stegeman Decl., Ex. C ¶ 10 (*Dugas*, Dkt. No. 121-1).[3]

　　　　To the extent plaintiffs ask the Court to infer that MBUSA has a legal right to demand

documents based on "the inherent relationship between the two companies," that theory also "has

been rejected by the Ninth Circuit" and should be rejected here.  *Ehrlich v. BMW of N. Am., LLC*,

2011 WL 3489105, at *1 (C.D. Cal. May 2, 2011) (citing multiple Ninth Circuit decisions).  A

subsidiary, of course, does not normally have the right to command a parent to do anything, much

less produce sensitive trade secrets or highly confidential information that competitors would love

to acquire.  *See id.* at *2.  MBUSA already has produced what it has.  This Motion, demanding

that MBUSA produce information and documents it does ***not*** have, should be denied.

---

[2]  Plaintiffs cite cases where automobile distributors were found to be a "general manager" as defined by California's substitute service of process.  *See supra*, cases cited at 3:15-24.  But such cases have no bearing on discovery issues and do not prove MBUSA has a legal right to demand from Daimler AG the design, manufacturing, or other information at issue here.

[3] Plaintiffs incorrectly characterize Exhibit 5 to the Katriel Decl. as "regarding [the] balance shaft defect."  *See supra* at 3.  In *Dugas*, it has been established that this addresses camshaft adjuster solenoids—parts that have nothing to do with the balance shaft—but that were often damaged by technicians during other types or engine repairs or replaced for other reasons.  *See, e.g.*, Stegeman Decl., Ex. D (*Dugas*, Dkt. No. 150-2 (Edwards Decl. ¶ 17).

Dated:  October 31, 2014                    Respectfully submitted:


                                            /s/ Roy A._Katriel_____
                                            Roy A. Katriel (SBN 265463)
                                            THE KATRIEL LAW FIRM
                                            4225 Executive Square, Suite 600
                                            La Jolla, California 92037
                                            Telephone:  (858) 242-5642
                                            Facsimile:   (858) 430-3719
                                            e-mail: rak@katriellaw.com

                                            *Counsel for Plaintiffs*



                                            /s/  Chad A. Stegeman_____
                                            Chad A. Stegeman (SBN 225745)
                                            CARROLL, BURDICK & McDONOUGH LLP
                                            44 Montgomery Street, Suite 400
                                            San Francisco, CA 94104
                                            Telephone: (415) 989-5900
                                            Facsimile: (415) 989-0932
                                            e-mail: cstegeman@cbmlaw.com

                                            *Counsel for Defendant Mercedes-Benz USA, LLC*

*Filer's Attestation: Pursuant to Local Civil Rule 5-1(i)(3), the undersigned attests that all parties*

*have concurred in the filing of this Stipulation Regarding Deadline to Respond to Complaint.*