1   Roy A. Katriel (265463)
2   **THE KATRIEL LAW FIRM**
    4225 Executive Square, Suite 600
3   La Jolla, CA 92037
    Tel:   (858) 242-5642
4   Fax:   (858) 430-3719
    E-mail: rak@katriellaw.com

5   Gary S. Graifman, Esq. (*pro hac vice*)
6   **KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
    210 Summit Avenue
7   Montvale, NJ 07645
    Tel:   (201) 391-7000
8   Fax:   (201) 307-1086
    E-mail: ggraifman@kgglaw.com

9   *Counsel for Plaintiffs*

10

11               **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15   MAJEED SEIFI, TRACEY DEAKIN,          CASE NO.  12-cv-5493-TEH
     AND RONALD REYNER, On Behalf Of
16   Themselves And All Others Similarly
     Situated,                              **CLASS ACTION**
17
              Plaintiffs,                   **SECOND AMENDED COMPLAINT**
18
         vs.
19                                          **JURY TRIAL DEMANDED**
     MERCEDES-BENZ USA, LLC,
20
21            Defendant.                    Judge: Hon. Thelton E. Henderson

22

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 15 and the agreement of the parties, Plaintiffs Majeed Seifi, Tracey Deakin, and Ronald Reyner (collectively "Plaintiffs"), hereby file this Second Amended Complaint ("FAC").

## NATURE OF THE ACTION

1.      Plaintiffs Majeed Seifi ("Seifi"), Tracey Deakin ("Deakin"), and Ronald Reyner ("Reyner") bring this action on behalf of themselves and all other similarly situated owners and lessees of Mercedes Benz branded automobiles equipped with Mercedes' M272 or M273 engines[1] in the United States.  As detailed, herein, the subject engines are equipped with defective gears in their balance shafts (in the event of the M272 engines) or with defective idle gears (in the case of the M273 engines).  These defective gears wear out prematurely, excessively, and without warning, causing the vehicle to malfunction, the "check engine light" to remain illuminated, and the vehicle to misfire and/or stop driving.  The only recourse is to have the balance shaft or idle gear replaced, which is a large scale repair job, taking numerous days and costing several thousand dollars.  All the while, Defendant Mercedes-Benz USA, LLC ("Defendant" or "Mercedes") has known of the existence and manifestation of this defect, as is documented in its own internal documents, but has failed to take appropriate corrective or remedial action, and has concealed and affirmatively misrepresented the existence of this defect from unsuspecting owners and lessees.  Plaintiffs are among the numerous

---

[1] Mercedes' M272 engine is a V-6 engine first introduced in 2004, and found in the following Mercedes model vehicles in the following model years: Mercedes C 230, SLK 280, SLK 350, and CLS 350  (2004 to present); E 230, CLS 280, CLK 280, C 280, E 280, SL 280, C 350, E 350, S 350, SL 350, and Viano (2005 to present); R 280, R 350, ML 350, and Sprinter (2006 to present); S 280 (2007 to present); CLC 230, and CLC 350 (2008 to present).  Mercedes' M273 engine is a V-8 engine first introduced in the model year 2006, and found in the following Mercedes model vehicles in the following model years: E 500/E 550, CL 500/CL 550, CLS 500/CLS 550, and GL 500/GL 550 (2006); GL 450, S 450, and ML 450 (2007); ML 500/ML 550 (2008); and, CLK 500/CLK 550 (2006 and 2009).  The class seeks to represent U.S. owners and lessees of Mercedes Benz branded vehicles that are equipped with either the M272 or the M273 engine who also meet the additional criteria set forth in paragraph 35 of this Second Amended Complaint.

owners of such vehicles that have had faulty balance shaft or idle gears, and have incurred thousands of dollars' worth of repair bills as a result.  Defendant's conduct with regard to the sale, distribution, and repair (or lack thereof) of these vehicles amounts to a violation of Defendant's common law and statutory duties, as detailed more fully herein.

## JURISDICTION AND VENUE

2.     This Court has subject matter over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (as amended 2005) because the FAC pleads a class action involving more than $5 million in controversy, and involves a putative plaintiff class of diverse citizenship than Defendant.

3.     This Court has personal jurisdiction over Defendant Mercedes-Benz USA, LLC because Defendant markets and distributes Mercedes automobiles, including the ones forming the subject of this Complaint, within this judicial district.

4.     Venue is proper in this district because Plaintiff Majeed Seifi is a resident of this judicial district, his vehicle was purchased and malfunctioned within this judicial district, and the events giving rise to his claims took place within this judicial district. Venue in this district is therefore proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES AND THEIR EXPERIENCES

5.     Plaintiff Majeed Seifi is a resident of Alameda County in California and the owner of a 2006 Mercedes ML-350, equipped with Mercedes' M272 engine.  When Seifi's vehicle had approximately only 70,000 miles or so and shortly after Mr. Seifi had the vehicle serviced at his factory-authorized Mercedes dealership, Mr. Seifi noticed that the vehicle's "Check Engine Light" illuminated.  He contacted service personnel at his Mercedes factory-authorized dealer who instructed Mr. Seifi to retighten the vehicle's gas cap.  Mr. Seifi did so, but after a few miles, the problem persisted and the car's "Check Engine Light" illuminated once again.  Mr. Seifi brought the vehicle back to his Mercedes factory-authorized dealership, who upon inspecting the car, informed Mr. Seifi

3

1   that the vehicle had a defective balance shaft gear that would require replacement of the

2   balance shaft at a cost of approximately $6,000.00.   When Mr. Seifi complained that a

3   vehicle of such low mileage and age should not require a $6,000 repair bill, and that he

4   was never informed of an existing defect when he purchased the car or had it serviced,

5   he was advised that his vehicle was outside the scope of Mercedes' express warranty,

6   and there was no warranty coverage to be obtained.   Mr. Seifi was advised to contact

7   Mercedes-Benz USA, which he did to no avail.   Because continuing to drive the vehicle

8   would pose a safety hazard, as the defective balance shaft gear would cause the vehicle

9   to misfire and stall within traffic without any prior warning, Mr. Seifi has no choice but

10   to pay for the $6,000 repair bill himself, or be left with an unusable vehicle for which he

11   initially paid tens of thousands of dollars.

12         6.     Plaintiff Tracey Deakin is a resident of San Luis Obispo, California, and the

13   original owner of a 2006 Mercedes ML-350 that he purchased from an authorized

14   Mercedes dealer on approximately December 2005.[2]  The vehicle is equipped with

15   Mercedes' M272 engine.  On approximately April 2012, Plaintiff Deakin's vehicle's

16   "Check Engine Light" illuminated and the vehicles began misfiring without prior

17   warning.  Upon experiencing these issues, Mr. Deakin brought his vehicle in for repairs

18   to his factory-authorized Mercedes dealership. The dealership diagnosed the problem

19   with Mr. Deakin's vehicle as  a defective balance shaft gear that needed replacement—

20   an expensive repair job that would require disassembly of a significant part of the

21   vehicle's engine, and that would cost thousands of dollars to complete.   When Mr.

22   Deakin complained that an engine of such recent vintage should not malfunction and

23   need disassembly, the dealership and Mercedes Benz refused any demand from Deakin

24   for compensation or redress, instead informing Mr. Deakin that his vehicle was out of

25   warranty.  Mr. Deakin, having no choice when confronted with a non-driveable car, was

26

27   [2] Plaintiffs' original Complaint mistakenly identified Deakin's purchase date as
28   December 2006.

*Seifi et. al. v. Mercedes-Benz USA, LLC*,
Case No.  12-cv-5493-TEH                                   SECOND AMENDED COMPLAINT

left to expend close to $7,000 to complete the balance shaft gear repair job for his vehicle.

7.     When Mr. Deakin received his vehicle back from repair, the repair slip included the mechanic's notes and observations about the extent of the damage that had been present in Mr. Deakin's vehicle's engine: "balance shaft sprocket teeth all but missing."  As a result of this metal piece deep within the engine having been destroyed, the repair receipt also noted that, "on tear down of the engine, found lots of metal pieces in the engine oil sump" and "flakes and chunks have migrated into and through entire engine."

8.     Plaintiff Ronald Reyner is a resident of Newport Beach, California and an owner of a 2007 Mercedes-Benz GL 450 vehicle that was factory equipped with Mercedes' M273 engine.  Mr. Reyner purchased the vehicle in 2009 from a factory-authorized Mercedes-Benz dealership.  Just a few months thereafter and when his 8-cylinder vehicle had approximately logged only 92,000 miles, Mr. Reyner's vehicle's Check Engine Light illuminated.  Upon taking the vehicle to the Mercedes-Benz dealership for diagnosis, Mr. Reyner was advised that the idle shaft in the vehicle's engine would have to be replaced-- a repair that the dealership advised him would cost approximately $6,300 and would not be covered under the MBUSA New Vehicle Limited Warranty.   Because he felt he had no choice in order to be able to drive the vehicle, Mr. Reyner had the vehicle repaired at the Mercedes-Benz dealership.

9.     Defendant Mercedes-Benz USA, LLC is a limited liability corporation having its principal place of business at 3 Mercedes Drive in Montvale, New Jersey 07645.  Defendant is a subsidiary of Daimler, Inc., the manufacturer of Mercedes-branded vehicles.  Founded in 1965, Mercedes-Benz USA, LLC is responsible for the distribution and marketing of Mercedes and Maybach automobiles within the United States.  Defendant was the entity responsible for injecting the Mercedes vehicles currently owned by Plaintiffs into the United States stream of commerce.

## THE PERVASIVE NATURE OF THE PROBLEM

10.    Plaintiffs' experiences are but three of the many similar situations encountered by owners or lessees of M272 or M273 engine-equipped Mercedes vehicles in the United States.  Upon information and belief, the defect in the subject vehicles appears to be attributable to a defect in the materials selection and/or the manufacture or workmanship associated with the balance shaft gear (in the case of the M272 engines) or the idle gear (in the case of the M273 engines) that causes the sprockets on the balance shaft in the M272 engine to wear prematurely and excessively, and likewise to cause the guide on the idler gear that drives the timing chain in the M273 engine to wear prematurely and excessively.  Indeed, so pervasive is the problem, that a host of message boards for aggrieved Mercedes owners has arisen online.   Even a cursory sampling of these online complaints documents how pervasive the problem is.

11.    Attached as Exhibit 1 hereto are postings at an online message board found at a website entitled benzworld.org.  The message board topic begins with a posting of an owner of a 2006 Mercedes C230 with only 31,000 miles that had to have the balance shaft replaced.  (Ex. 1 at p. 1).  The reply postings reveal a steady stream of owners similarly affected.  One poster relates that: "That's exactly what happened to mine. The CEL [check engine light] came on for both cams being out of time. When they tore the motor apart it turned out that the balance shaft actually was worn causing it. Hopefully this won't happen again?"  (*Id*.).  Another owner posts that: "love my MB but am a real novice about anything automotive. CEL [check engine light] went on two days ago, brought it into MB and they told me that I needed to replace my balance shaft for a 06 E350 with 90k miles on it. Is this a common problem? I am being told it will take 3 days and $4,000 to fix this which seems unbelievable when I have never had an issue with the car before." (*Id*. at 2).  Another post relates that, "The dealer told me I had the same problem with the balance shaft, and told me it was a common problem, they would fix it for $4000 and Mercedes would kick in $2000 because it is a common problem." (*Id*.).  Yet another posting relates that "Was just told by my mechanic I have this issue." (*Id*. at

4).  Another poster to the same message board also informed that, "I was just informed that my 2006 e-350 needs to get the balance shaft replaced. Unfortunately, I am out of warranty; if they would have caught this problem 3 weeks ago when i brought it in for service, my warranty would have covered it." (*Id*. at 6).  And the postings continue, as another owner describes that, "I am about to have a Gear on the balance shaft on my 2006 C240 replaced. The CEL [check engine light] stays on after servicing. Estimated at $4000.00. Is this normal? I have 68,000 miles." (*Id*. at 7).  Yet another aggrieved Mercedes owner posts that, "I have a 2006 ML350 with 56,000 miles at the dealer right now to replace the balance shaft. I've started a facebook page for owners who have had the same problems with that motor to get everyone together with this issue. Maybe a possible class action in the future??" (*Id*.).

12.     The foregoing are but selected postings in only one online message boards, but the problem is so pervasive that several other online message boards with similar experiences exist.  Another message board entitled "ML-350 3.5L Balance Shaft Failure" at the peachparts.com site, attached hereto as Exhibit 2, contains the following posting from a Mercedes owner, "What a surprise!.. Wife's '06 ML350 had intermittent CEL [check engine light].  Last year, dealer replaced cam /timing position sensors. Problem continued to occur with CEL coming on even more frequently. NOW, they tell me that the Balance Shaft has a bad gear and it is deteriorating. 73K miles. Thank goodness for extended warranties. Finding from other web site threads and blogs that MB USA is not consistent with the treatment of customers... some customers are bearing the full cost of the repair while others are being offered "good will" discounts. Appears there had been a service bulletin out for 2 1/2 years on this problem with no sign that MBUSA is stepping up to cover a known fault. roughly 10 updates to the bulletin adding vehicles to the list." (Ex. 2 at 1).  In response, a poster to the same message board that is evidently a Mercedes mechanic relates that, "I've got two at my shop right now, an ML and an R Class. It looks like two of my guys will be busy for the next few days.  They're both out of warranty, but I'm sure MB will help out." (*Id*. at 3).

## MERCEDES' ACTUAL KNOWLEDGE OF THE DEFECT, AND THE FACTS SUPPORTING THE ALLEGATIONS OF SUCH KNOWLEDGE

13.     Mercedes has known all along about the existence of a defect with the balance shaft gears in its M272 engines and idle gears on its M273 engine, yet it has concealed that knowledge, deliberately omitted any information or dissemination about its existence to the unsuspecting putative class members, and beyond that has affirmatively misrepresented the reliability of vehicles equipped with the subject M272 and M273 engines so as to falsely convey the message that the vehicles were reliable and did not suffer from any reliability concerns known to Mercedes.

14.     As documented in several automotive industry trade magazines, the problem at hand began with Mercedes M272 and M273 engines manufactured as early as 2004, and prevailed in engines manufactured until September 2006.  A news article in the German automotive magazine *Autobild*, dated August 4, 2011, which was entitled, "Mercedes Admits Material Fault," documents:

> Owners of Mercedes six and eight cylinder engines still have to fear for their engines. Due to a material fault, on cars built between April 2004 until September 2006, a gearwheel of the timing chain can wear down. The damage is noticeable when the engine indicator lamp is on. Repairs cost up to 4700 Euros, depending on the model. Mercedes has built the engines of series M272 (2.5, 3 and 3.5 liter V6) and M273 (5 liter V8) in ten model ranges. It's still a mystery how many cars with M272 and M273 engines have been affected by this fault.

Exh. 3 hereto, at 1.[3]

---

[3] Exhibit 3 hereto is the translated English version of the *Autobild* news article.  The original German version of the article is attached hereto as Exhibit 4.

8

15.     The same German news article details that Mercedes was aware of the problem because it was caused by different steel compositions used in the part—a problem that Mercedes ultimately remedied in September 2006 by returning to a gear construction of conventional steel:

> The reason: in case of chain wheels made of sintered steel, different material compositions are used. This problem was solved only after chain wheels were once again made of conventional steel (September 2006).

*Id*. at 2.

16.     Not only that, but the *Autobild* German news report also details that, Mercedes has been well aware of the defect, and launched "an internal faults statistic - which is, however, kept classified by Mercedes."  *Id*. at 2.

17.     Building on the news story first reported in the German magazine *Autobild*, the online automotive trade journal *Carfolio*, posted an article entitled "Mercedes Hit With Timing Chain Issues on 2004-2006 V6 and V8 Model," which likewise documented that:

> Mercedes-Benz is currently trying to recapture the number one position in global luxury sales, but  a quality problem on its home turf in Germany seems to be undermining confidence in the brand. Autobild reports that the M272 V6 and M273 V8 engines used a sintered steel timing chain gear made of various materials starting in 2004, but switched to conventional steel in 2006, eliminating the problem with gear wear. The problem: nobody seems to know how many vehicles built between 2004 and 2006 are affected.

Exh. 5 hereto.

18.     The same news article goes on to report that Mercedes had been well

aware of the problem because it employed "secret internal defect tracking" in order to attempt to forecast the rate of failures that it could expect to see concerning the balance shaft gear-stripping.  *Id*.

19.     The report also detailed that, unlike in the United States, in Germany, Mercedes had acknowledged the problem and Mercedes' responsibility for it, by offering to cover free repairs to affected vehicles:

> If you have a vehicle with one of these engines built between 04 and 06 and your check engine light comes on, Mercedes encourages you to visit your M-B dealer rather than an independent shop, as Mercedes is offering free repairs to affected customers. And as Autobild's Matthias Mötsch argues, when your motto is "the best or nothing" the only answer to a situation like this is to fix 100% of the defects for free.

*Id*.

20.     That the defect at issue plagued Mercedes M272 and M273 engines starting in 2004, and that Mercedes launched and kept undisclosed to the public or consumers an "internal fault statistic" or a  "secret internal defect tracking" study to track the prevalence of the problems caused by this defect, and that Mercedes implemented a manufacturing change as of September 2006 (which necessarily must have been planned and approved before its actual production date and which pre-dated Deakin's vehicle purchase by two months) to remedy the defect by switching from sintered steel alloy to a conventional steel construction of the balance shaft gear,  and that Mercedes has been offering consumers in Germany free repairs to remedy the defect, but has failed to do the same for consumers in the United States, are all evidence establishing the fact that Mercedes was well aware of the defect plaguing the engine powering Plaintiffs' vehicle prior to the Plaintiffs' purchase.   Moreover, as detailed in paragraphs 30-34 below and the Exhibits referenced therein, Mercedes did more than merely fail to disclose its knowledge of this defect, but affirmatively misrepresented the reliability of the subject

vehicles and the steps that Mercedes had taken purportedly to ensure that the vehicles that it knew were plagued by this defect, were reliable and had no quality concerns.

21. Though Mercedes' knowledge of the defect first came into being before Plaintiffs' purchase of their 2006 and 2007 model year vehicles, Mercedes has continued to remain ever knowledgeable and mindful of the defect plaguing the M272 and M273 engines found in M272 and M273 engine-equipped Mercedes cars, but has continued concealing that knowledge and misrepresenting the attributes of these vehicles. In August 2007, Mercedes issued an internal Technical Service Bulletin that documented the problem and informed Mercedes technicians how to diagnose it and replace the defective balance shaft or idle gears. Further, to date, since the August 2007 initial release of the internal Technical Service Bulletin, Mercedes has issued approximately 10 amendments, supplements or additional Technical Service Bulletins, all of which acknowledge the problem brought about by the defective balance shaft or idle gears.

22. The Technical Service Bulletins were disseminated internally by Mercedes to its repair technicians, and were not designed to and did not inform the general public, drivers, or lessees of affected vehicle about the defect. To the contrary, even while knowing all the while of the existence of this defect, Mercedes continued to offer for sale and sell the subject vehicles equipped with the M272 and M273 engines, and took no steps to replace the defective parts, or to otherwise remedy the defect.

23. That Mercedes knew and has known all along about the defect in its balance shaft gears is also independently confirmed by review of their diagnostic codes and manuals. When a Mercedes vehicle is brought in for repairs to an authorized Mercedes dealership, the technician may connect the vehicle to an electronic diagnostic scanner that will output a series of codes, which purport to store in the vehicle's computer memory a set of conditions that the vehicle has experienced. Armed with these codes, the Mercedes technician can turn to Mercedes' repair manuals that may document potential diagnoses of fault tree procedures to follow, given certain diagnostic code outputs from the scanner tool. For several years now, and even prior to Mercedes'

11

issuance of its Technical Service Bulletin in mid-2007, Mercedes diagnostic manuals have alerted its technicians that in vehicles equipped with the M272 engine, if the scanner outputs codes that correspond to retarded cam shafts on the engine, the Mercedes diagnostic manual instructs the repair technician to check for probable balance shaft gear wear, thereby highlighting that Mercedes already knew of this defect, its symptoms, and manifestations, yet concealed its existence from the driving and buying public.

## AS KNOWN TO MERCEDES AND THE INDUSTRY, THE EFFECT OF USING SINTERED STEEL WAS CERTAIN FAILURE OF THE PARTS

24.     As documented in *Autobild*, the defect at issue was attributable to Mercedes' decision to manufacture the balance shaft gear and idle gear in the M272 and M273 engines, respectively, from sintered steel as opposed to conventional steel, starting in April 2004 until September 2006 (when Mercedes reverted to manufacturing the parts out of conventional steel).  Sintered steel is a type of metal has undergone a sintering process, in which powdered metal is heated below its melting point until the particles form a molecular bond. Metals such as iron, copper, and aluminum are commonly turned into sintered steel.

25.     Unlike traditional metallurgy, where steel is melted into a more or less liquid state before being shaped, sintered steel is forged while still in a powdered form. By not having to be melted, several phases are eliminated from the conventional process. This reduces manufacturing time, and hence costs in high volume production.

26.     The prospect of using sintered steel for engine components under high stress, like balance shaft gears and idle shaft gears, has been studied and reported at length in the literature.  For years, it has been well known in the trade that resort to parts made of sintered steel for engine components facing high stress (as is the case with idle shaft gears and balance shaft gears) would lead to premature failure because the parts

12

1   manufactured out of sintered steel did not retain the stress bearing or fatigue

2   characteristics of parts manufactured from conventional steel forging.

3         27.    For example in a Technical Paper published in 1998 by the Society of

4   Automotive Engineers ("SAE"), of which Mercedes is a member, researchers showed

5   that engine parts made out of sintered steel had less fatigue strength than the same part

6   made out of conventional forged steel.  Similarly, another Technical Paper published by

7   the SAE that same year documented that sintered steel engine parts are less reliable in

8   meeting machined specifications.  Another SAE Technical Paper published in 1988 had

9   previously concluded that the fatigue properties of sintered steel engine parts could not

10  be improved because of loss of microstructural heterogeneity in the composition of the

11  parts.  So too, in a published article in a treatise on metallurgy in automotive

12  applications, researchers testing sintered steel automotive parts found that the sintered

13  steel parts all failed due to corrosion fretting.

14        28.    These studies and properties of sintered steel material for critical

15  automotive parts were well known to the industry, and a subject of common study in

16  professional societies of which Mercedes and its engineers were members.  Despite these

17  longstanding results and reports in the trade literature, Mercedes decided in 2004 to

18  manufacture the balance shaft gears and idle shaft gears in the M272 and M273 engines

19  out of sintered steel.  When it did so, Mercedes knew, given these longstanding studies

20  and reports, that the parts were certain to fail.

21        29.    The failure of an engine's balance shaft gear or idle shaft gear is a highly

22  unusual occurrence in vehicles manufactured in the 21st century.   It is extremely rare—

23  virtually unheard of— to see these failures in modern vehicles, much less is it

24  commonplace to experience such failure in vehicles of the ages and mileage ranges of

25  Plaintiffs' vehicles.

26

27

28

## MERCEDES' AFFIRMATIVE REPRESENTATIONS CONCERNING VEHICLES EQUIPPED WITH THE SUBJECT ENGINES

30.     Mercedes did more than merely fail to disclose its knowledge of the defect plaguing the M272 and M273 engines.  Far from merely remaining silent (which would have been egregious enough), Mercedes undertook a campaign to affirmatively misrepresent the reliability and lack of quality concerns affecting the subject vehicles, all at a time when Mercedes knew that the precise opposite was true.

31.     For example, with the launch of the 2006 model year of its M-class line of vehicles, the cars were reviewed in the press as that year marked a purportedly redesigned version of the vehicles.  As part of the press coverage, Mercedes spokespeople touted the supposed reliability of the vehicle, and specifically noted that any reliability issues that were of concern in the prior model years of the same vehicles were resolved with the 2006 model year lineup.  In a review entitled, "2006 Mercedes-Benz M-Class" featured on the MSN network, Mercedes touted that:

> Mercedes has had quality issues in the past few years, but feels confident
> that the new design of the solid-feeling M-class should be free of problems.

Ex. 6 at  2.

32.     The same online news review of the 2006 M-class also quoted Mercedes spokesperson Rob Moran as acknowledging that "[t]he 2005 M-class [which Plaintiffs' 2006 model replaced] isn't unusually old for a Mercedes because the life cycle for most of our models is 7.5 years."  *Id*. at 2.

33.     The MSN network automotive review was just but one instance of Mercedes misrepresenting the reliability and quality attributes of its 2006 M-class vehicles.  An online article on *CNN Money*, dated November 20, 2006, reported on Mercedes' response to the poor reliability ratings that Consumer Reports had assigned to

the 2006 Mercedes vehicle lineup, as reported by owners of these cars. As documented in the CNN article, Consumer Reports found that:

> Among mid-sized SUVs, the M-class, a quality disaster when it first came out, still ranks as the least reliable in its grouping.

Ex. 7, at 1.

34. Yet, when confronted with this reporting, and knowing full well that these vehicles were plagued by a defect in their balance shaft gears known only to Mercedes (recall that by November 2006—the date of the *CNN Money* article—Mercedes had already changed the manufacture of the balance shaft gear to conventional steel to deal with this undisclosed defect), Mercedes affirmatively responded by conveying the opposite impression as to the reliability and owner experience of the 2006 M-class lineup. The CNN article reported that "a spokesman for Mercedes says that the data in the *Consumer Reports* rankings 'is totally out of sync with what we're seeing in the mainstream research as well as our own customer satisfaction and warranty data.'" *Id*. at 1. In truth and in fact, by this time, the complaints about the balance shaft gear defect found in the 2006 M-class vehicles that Plaintiffs purchased were so pervasive that Mercedes had initiated a "secret internal defect tracking" study of the problem. It also initiated a program in Germany where it began covering the cost of repairs for vehicles affected by this problem—something that it has not done in the United States.

## CLASS ACTION ALLEGATIONS

35. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action as a class action on behalf of all current and former owners and lessees of Mercedes-Benz branded automobiles equipped with certain M272 or M273 engines bearing serial numbers up to 2729..30 468993 or 2739 ..30 088611, respectively (the "Subject Vehicles"), who purchased or leased their Subject Vehicles within the United States. Specifically excluded from the Class are: persons who validly and timely exclude themselves using the procedure set forth by the Court; persons who have settled with, released, or otherwise had claims adjudicated on the

merits against MBUSA that are substantially similar to those alleged in this matter; persons with only personal injury, wrongful death or property damage (to property other than the Subject Vehicle) claims as a result of the defects alleged; employees of MBUSA; insurers or other providers of extended service contracts or warranties for the vehicles owned by Settlement Class Members; and the judicial officers assigned to this case and members of their respective families.  Plaintiffs reserve the right to amend this class definition as case developments warrant.

36.     Plaintiffs are adequate class representatives in that, as members of the class and as current owners of an allegedly defective Mercedes vehicle equipped with the M272 or M273 engine, Plaintiffs' interests are entirely aligned with those of the class. There are no individual conflicts that prevent Plaintiffs from adequately representing the class.  Plaintiffs have also retained competent counsel experienced in class action litigation.

37.     Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class.  The subject vehicles are manufactured on an assembly line setting, subject to a common design and manufacturing plan, such that evidence of a defect in the balance shaft or idle gears would be one that would predominate over the entire class membership, as would evidence of Defendant's course of action, knowledge of the alleged defect, and any alleged concealment thereof.

38.     A class action presents a superior form of adjudication over individual litigation.  The costs of litigating this action against a large and sophisticated defendant like Defendant in comparison to the recovery or relief sought would make individual litigation impracticable.  In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Defendant's duties owed to the various vehicle owners and lessees.

*Seifi et. al. v. Mercedes-Benz USA, LLC,*
Case No.  12-cv-5493-TEH                                              SECOND AMENDED COMPLAINT

39.     A class action is manageable.  The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

## COUNT I
## (NEW JERSEY CONSUMER FRAUD ACT)

40.     Plaintiffs hereby incorporate by reference all of the allegations of this Complaint with the same force and effect as if these allegations had been fully restated herein.

41.     Plaintiffs are owners of Mercedes model vehicles equipped with the M272 and M273 engines falling within the engine serial number range identified in Paragraph 35 and, therefore, contain the defect in the balance shaft or idle gear detailed herein.

42.     Defendant's failure to disclose as well as its intentional and fraudulent omission from any of its advertising and sales materials and brochures of the subject vehicles' defects described in this Second Amended Complaint, as well as Defendant's actual misrepresentation about the superior reliability and attributes of the subject vehicles, at a time when Defendant knew of the prevalence of the defect affecting the balance shaft gear and/or idle gear in the subject vehicles, amounts to an unconscionable commercial practice, deception, fraud, false pretense, or the knowing concealment, suppression, omission or misrepresentation of a material fact with the intent that others rely upon that omission or misrepresentation.   Defendant's conduct, therefore, violates N.J.S.A. § 56:8-2.

43.     Among other things, Defendant knew that the subject vehicles had a defect that would cause them to fail before their reasonable useful life, but intentionally concealed that information from consumers and the putative class members in order to maximize Defendants' profits, thereby independently violating the New Jersey Consumer Fraud Act.  Further, Defendant also touted the supposed superior reliability

and quality of the subject vehicles at a time when it knew that the subject vehicles were plagued by the defects alleged in this Second Amended Complaint.

44.     Plaintiffs and all members of the putative class have sustained an ascertainable loss directly as a result of Defendant's violation of the New Jersey Consumer Fraud Act.   Plaintiffs and the class members have had to or will have to expend significant money to repair and replace the defective parts that are contained in their vehicles' engines.   None of the Plaintiffs or putative class members obtained the benefit of their bargain in purchasing the subject vehicles because, unbeknownst to them, they each obtained a vehicle plagued with a defective balance shaft or idle gear.

## COUNT II

## (VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS. AND PROFESSIONS CODE, § 17200 ET. SEQ.).

45.   Plaintiffs hereby incorporate by reference each and every allegation of this Second Amended Complaint with the same force and effect as if it these allegations had been fully restated herein.

46.   California's Unfair Competition Law ("UCL") prohibits and makes actionable any unlawful, unfair, or deceptive business practice.   Mercedes' actions, as alleged herein, in connection with the sale and marketing of the subject vehicles with a latent defect to their balance shaft gears or idle gears amounts to, at least, an unlawful and deceptive business practice and, hence, a violation of the UCL.

47.   For at least the reasons alleged in Count I and Count III of this Complaint, Mercedes' actions are an unlawful business practice in that they amount to violations of the New Jersey Consumer Fraud Act as well as the California Legal Remedies Act.

48.     Mercedes' marketing and sale of the subject vehicles without disclosing the existence of the latent defect plaguing the cars' balance shaft gears or idle gears, and while misrepresenting the supposed quality and reliability attributes of these vehicles,

18

also amounts to a deceptive business practice within the meaning of the UCL.  The conduct was deceptive because it was intended to and did mislead and deceive Plaintiffs and the class members.  Had Mercedes disclosed to Plaintiffs that the subject vehicles contained a latent defect that would result in their vehicles being rendered non-driveable and requiring engine disassembly when they did at the cost of nearly thousands of dollars, they would not have purchased the vehicles.  Mercedes knew that if it were to make such a disclosure as to the existence of this latent defect, consumers at large would feel and react similarly and forego their purchases of these vehicles.  As a result, Mercedes intentionally elected to conceal its knowledge of this existing latent defect.

49.     As a direct, proximate, and foreseeable result of Mercedes' unlawful and/or deceptive business practice, Plaintiffs and the putative class members have sustained an ascertainable loss and actual damages, in that: they are left with an expense of thousands of dollars to have their vehicles repaired to remedy the defective balance shaft or idle gears; their vehicles have sustained a loss or diminution of value as a result of this undisclosed defect; and, have or will incur incidental damages attributable to the loss of use of the vehicle during the time that the vehicles are being repaired.

50.     Moreover, because of Mercedes' unlawful and/or deceptive business practices, Plaintiffs and the class members conveyed moneys and benefits to Mercedes in the form of, *inter alia*, the purchase price or lease payments for their vehicles, and the repair and parts costs for their vehicles to repair the damage caused by the defect at issue.

51.     Plaintiffs and the class members are entitled to and do seek an order of restitution forcing Mercedes to restore to them the benefits and monies they conveyed to Mercedes in connection with their purchase of the subject vehicles or any repair or replacement of the defective balance shaft or idle gears of these vehicles.

## COUNT III

## (VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §1750 et. seq.)

52. Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

71. Defendant has violated the following provisions of Cal. Civ. Code §1750 et. seq.:

(a) Cal. Civ. Code §1770(a)(5): by representing that its goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(b) Cal. Civ. Code §1770(a)(7): by representing that its goods or services are of a particular standard, quality, or grade, if they are of another;

(c) Cal. Civ. Code §1770(a)(9): by advertising goods and services with the intent not to sell them as advertised;

(d) Cal. Civ. Code §1770(a)(14): by representing that its subscription service confers or involves rights, remedies, or obligations which it does not have or involve;

(e) Cal. Civ. Code §1770(a)(16): by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

71. Defendant undertook the above and acts or practices in transactions intended to result, or which did result, in the sale of its vehicles to customers for personal, family, or household use.

72. Defendant has therefore violated the Consumers Legal Remedies Act, and Plaintiffs pray for money damages, as well as equitable and injunctive relief authorized by that Act, and for such additional relief as is set forth below.

73. Pursuant to Cal. Civ. Code §1782, on May 23, 2013, more than 30 days prior to filing this FAC, Plaintiffs' counsel sent via Certified Mail the requisite CLRA

*Seifi et. al. v. Mercedes-Benz USA, LLC,*
Case No. 12-cv-5493-TEH                                    SECOND AMENDED COMPLAINT

demand letter, informing Defendant of Plaintiffs' intent to plead an action to seek money damages under the CLRA, if the specific and complete relief sought by Plaintiffs under the CLRA, as pleaded in their original Complaint, was not provided by Defendant within 30 days. A copy of that CLRA demand letter is attached hereto as Exhibit 8.

74.    Rather than agreeing to provide the relief demanded, MBUSA, through its counsel, responded to the CLRA demand letter by denying any relief and baselessly threatening Plaintiffs—both of whom are longstanding Mercedes customers—that their continued litigation of their CLRA claims referenced in their demand letter would result in MBUSA "reserve[ing] its right to seek its reasonably attorneys' fees and costs under the fee shifting provision of the CLRA and all other remedies available to it." *See* Ex __, at 2. A copy of MBUSA's counsel's response to Plaintiffs' CLRA demand letter is attached hereto as Exhibit 9.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the class and subclass members pray for judgment against Defendant as follows:

a)  That the Court determine that this action may be litigated as a class action, and that Plaintiffs and their counsel be appointed class representative and class counsel, respectively;

b)  That the Court enter judgment against Defendant and in favor of Plaintiffs and the class on all counts;

c)  That Defendant be required by this Court's Order to remedy the defects alleged herein, and to compensate all members of the class for their damages and injuries, as well as to compensate Plaintiffs' counsel for their attorneys' fees and cost of suit; and, that Defendant be ordered to bear the cost of notice the absent class members, as well as of the administration of this common fund;

*Seifi et. al. v. Mercedes-Benz USA, LLC,*
Case No.  12-cv-5493-TEH                                          SECOND AMENDED COMPLAINT

d) That damages and/or restitution or disgorgement be awarded to each Plaintiff and class member according to proof;

e) That the Court award Plaintiffs and the members of the class punitive damages assessed against Defendant;

f) That Plaintiffs and the class members be awarded all such other relief as this Court deems just and proper.

Plaintiffs request a jury trial on all counts so triable.

Dated this 16th day of March, 2015.

Respectfully submitted,

_____/s/ Roy A. Katriel_____
Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (858) 242-4342
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com
Gary S. Graifman, Esq. (pro hac vice)
KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
e-mail: ggraifman@kgglaw.com

*Counsel for Plaintiffs*

*Seifi et. al. v. Mercedes-Benz USA, LLC,*
Case No.  12-cv-5493-TEH                                          SECOND AMENDED COMPLAINT