1

Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel:    (858) 242-5642
Fax:    (858) 430-3719
E-mail: rak@katriellaw.com

Gary S. Graifman, Esq. (*pro hac vice*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel:    (201) 391-7000
Fax:   (201) 307-1086
E-mail: ggraifman@kgglaw.com

*Counsel for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

15

16

17

18

19

20

21

22

23

24

| | |
|---|---|
| MAJEED SEIFI, TRACEY DEAKIN, AND RONALD REYNER, On Behalf Of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No.  12-cv-5493-TEH<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge: Hon. Thelton E. Henderson**<br>**Courtroom: 2, 17th Floor**<br>**Hearing Date:  April 27, 2015**<br>**Hearing Time: 10:00 am** |

25

26

27

28

1

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION……………………………………………......……1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT……………………………1

I.      INTRODUCTION AND SUMMARY OF MOTION……………………......……………1

II.     PRELIMINARY APPROVAL SHOULD BE GRANTED…………………………...……5

      A.      The Settlement Class Should Be Conditionally Certified…………………..……5

          1.   The Settlement Class Satisfies The Numerosity Requirement……………………...6

          2.   The Settlement Class Satisfies The Commonality Requirement……………….......6

          3.   The Settlement Class Satisfies The Typicality Requirement………………………..7

          4.   The Settlement Class Satisfies The Adequacy Requirement………………………..8

          5.   The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b)………….......8

      B.      The Notice Plan Should Be Approved…………………………………….……10

      C.      The Substantive Terms of The Settlement Are Fair, And Should Be Granted
          Preliminary Approval………………………………………………………….....11

      D.      The Settlement Was a Product of Adversarial Arms'-Length Negotiation………..13

CONCLUSION………………………………………………………………………………14

1

## <u>TABLE OF AUTHORITIES</u>

2

3   **Cases:**

4       *Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)…………………………………………………………………………………9
5

6       *Baghdasarian v. Amazon.com, Inc.,*
    2009 WL 2263581 (C.D. Cal., Jul. 7, 2009)………………………………………………………10

7       *Browne v. American Honda Motor Co.,*
    2010 WL 9499072 (C.D. Cal. Jul. 29, 2010)…………………………………...………………4
8

9       *Castro v. Zenith Acquisition Corp.,*
    2007 WL 81905 (N.D. Cal.  Jan. 9, 2007)………………………………………………….....11

10      *Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992)……………………………………………………………………12
11

12      *Ford v. Pilot Travel Centers, LLC,*
    No. 07-cv-2715 (N.D. Cal. April 15, 2008)…………………………………………….........2

13      *Friedman v. 24 Hour Fitness USA Inc.,*
    2009 WL 2410889 (C.D. Cal. Aug. 6, 2009)……………………………………………………9
14

15      *Gattreaux v. Pierce,*
    690 F.2d 616 (7th Cir. 1982)………………………………………………......………………12

16      *Gribble v. Cool Transports, Inc.,*
    2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)………………………………………………5
17

18      *Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)…………………………………………………6, 7, 8

19      *In re Connecticut General Life Ins. Co.,*
    1997 WL 910387 (C.D. Cal. Feb. 13, 1997)……………………………………………5
20

21      *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,*
    1993 WL 39306 (C.D. Cal. Jan. 12, 1993)………………………………………………5

22      *In re Laser Arms Corp. Securities Litig.,*
    794 F. Supp. 475 (S.D.N.Y. 1979)………………………………………………………10
23

24      *In re Mercedes TeleAid Contract Litigation,*
    257 F.R.D. 46 (D.N.J. 2009)………………………………………………………………6

25      *In re NVIDIA Corp. Derivative Litig.,*
    2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)………………………………12
26

27      *Jaffe v. Morgan Stanley & Co., Inc.,*
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008)………………………………………………2

28

1     *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
2     244 F.3d 1152 (9th Cir. 2001)..................................................................................9

3     *Lowdermilk v. United States Bank National Assoc.*,
     479 F.3d 994 (9th Cir. 2007)....................................................................................6

4     *Mullane v. Central Hanover Trust*,
5     339 U.S. 306 (1950)................................................................................................10

6     *Officers for Justice v. Civil Service Comm'n*,
     688 F.2d 615 (9th Cir. 1982)............................................................................11, 12

7     *Parra v. Bashas, Inc.*,
8     536 F.3d 975 (9th Cir. 2008)....................................................................................6

9     *Peil v. National Semiconductor Corp.*,
     86 F.R.D. 357 (E.D. Pa. 1980)..............................................................................10

10    *Rosario v. Livaditis*,
11    963 F.2d 1013, 1018 (7th Cir. 1992)......................................................................7

12    *Sadowska v. Volkswagen Group of America, Inc.*,
     2013 WL 9600948 (C.D. Cal. Sept. 25, 2013)...................................................4, 6

13    *Simpson v. Fireman's Fund Ins. Co.*,
14    231 F.R.D. 391 (N.D. Cal. 2005)............................................................................7

15    *Suddreth v. Mercedes-Benz USA, LLC*,
     2011 WL 5240965 (D.N.J. Oct. 31, 2011).......................................................8, 13

16    *Tchoboian v. Parking Concepts, Inc.*,
17    2009 WL 2169883 (C.D. Cal. Jul. 16, 2009).......................................................10

18    *Torrisi v. Tucson Elec. Power*,
     8 F.3d 1370 (9th Cir. 1993)....................................................................................11

19    *Valentine v. Nebaud, Inc.*,
20    No. 08-cv-5113, (N.D. Cal. Sept. 20, 2011)...........................................................2

21    *Van Bronkhorst v. Safeco Corp.*,
     529 F.2d 943 (9th Cir. 1976)..................................................................................11

22    *Zinser v. Accufix Research Int., Inc.*,
23    253 F.3d 1180 *amended* 273 F.3d 1266 (9th Cir. 2001).......................................8

24    **Rules and General Orders:**

25    Fed. R. Civ. P. 23.............................................................................................passim

26    United States District Court for the Northern District of California Procedural Guidance For
     Class Action Settlements, Preliminary Approval..............................................4, 6, 11
27
28

**NOTICE OF MOTION AND MOTION**

To Defendant Mercedes-Benz USA, LLC, its counsel of record, and any other interested parties: PLEASE TAKE NOTICE THAT on April 27, 2015, at 10:00 a.m., at Courtroom 2 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, in San Francisco, California, or at such other time or place as this Court may Order, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Majeed Seifi, Tracey Deakin, and Ronald Reyner, by and through their undersigned counsel, will and do hereby move this Court in unopposed fashion for an Order granting Preliminary Approval to the classwide Proposed Settlement reached in this matter.  A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel being filed herewith.  A copy of the proposed Order being sought to be entered by this Court is attached as Exhibit 3 to the Settlement Agreement.

This unopposed motion is based on the accompanying Memorandum in Support, Declaration of Roy A. Katriel, including the Settlement Agreement which is attached thereto (including all of its exhibits), any argument of counsel, and such additional material as this Court may consider.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION AND SUMMARY OF MOTION**

The parties to the above-entitled action are pleased to report that, following an in-person mediation session before the Honorable Edward Infante (Ret.) in November 2014, followed by extensive follow-up telephonic mediation discussions on numerous occasions with Retired Magistrate Judge Infante over the months since the mediation held last year, they have reached a proposed classwide settlement to resolve the Second Amended Class Action Complaint ("SAC") filed in this action.  A copy of the parties' Settlement Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval Of Class Action Settlement ("Katriel Decl.").

Plaintiffs now file this unopposed motion for preliminary approval, so that: notice of the

1

proposed settlement can be disseminated to the absent class members; the absent class members can be given an opportunity to avail themselves of the settlement, opt-out of the Settlement Class, or file any objections to the proposed settlement; and, this action and all other proceedings involving the subject-matter encompassed by this class action and Settlement Agreement be stayed pending the Court's determination as to whether to grant Final Approval to the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *11 (N.D. Cal. Feb. 7, 2008) (Henderson, J.) (once court grants preliminary approval it is proper to stay and enjoin members of settlement class from litigating before this or other courts matters covered by proposed settlement); *Valentine v. Nebaud, Inc.*, Case No. 08-cv-5113, Dkt. 239 at ¶ 18 (N.D. Cal. Sept. 20, 2011) (Henderson, J.) (same); *Ford v. Pilot Travel Centers, LLC*, Case No. 07-cv-2715, Dkt. 23 at ¶ 9 (N.D. Cal. April 15, 2008) (Henderson, J.) (same).

This unopposed motion for preliminary approval also seeks to set a date for the Final Approval and Fairness Hearing on the proposed settlement.  *See* Settlement Agreement, at ¶ 8.1.  At the Final Approval Hearing, the Court will have the opportunity to, *inter alia*, determine whether to grant final approval to the class action settlement, as well as to evaluate any objections to the settlement that may have been filed.  *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class members may only be entered after hearing held by the court).

The unopposed motion for preliminary approval should be granted.  The settlement reached is unquestionably fair—it provides class members meaningful monetary relief to reimburse them for repair costs they incurred to replace the allegedly defective balance shaft or idle gear parts that form the basis of the SAC.  *See* Settlement Agreement, at ¶¶ 4.4 – 4.8.  The Settlement Agreement also calls for Defendant Mercedes-Benz USA, LLC ("MBUSA") prospectively to cover future repairs for the allegedly defective parts at issue for the lesser of 10 years or 125,000 miles, subject to certain conditions and limitations.  *Id*. at ¶¶ 4.1 – 4.3.  This extended coverage more than doubles the durational limit of MBUSA's New Vehicle Limited Warranty's term of the lesser of 4 years of 50,000 miles.  The proposed settlement, therefore, provides meaningful redress for the claims and allegations pled in the SAC.

*Seifi, et al. v. Mercedes-Benz USA, LLC*
Case No.  12-cv-5493-TEH

Unopposed Motion For Preliminary Approval
Of Class Action Settlement

1   The gravamen of that pleading was that certain Mercedes-Benz vehicles equipped with so-called

2   M272 and M273 engines contained a defective sprocket attached to the balance shaft (M272) or idle

3   gear (M273).  *See* SAC, at ¶ 1. This alleged defect causes the vehicles to malfunction, typically once the

4   New Vehicle Limited Warranty has expired, and need replacement of the allegedly defective parts.

5   Because the balance shaft sprockets and idle gears are found deep within the engine compartment,

6   replacement of these parts is a large-scale job that requires disassembly of the engine at a cost of several

7   thousand dollars.  *Id*.  All three named plaintiffs are owners of Mercedes-Benz vehicles equipped with

8   either an M272 engine (Plaintiffs Seifi and Deakin) or an M273 engine (Plaintiff Reyner), whose

9   vehicles' engines required replacement of the allegedly defective balance shaft sprocket or idle gear to

10  the tune of thousands of dollars.  *Id*. at ¶¶ 5-9.

11          The Settlement Agreement addresses the claims made in plaintiffs' SAC in comprehensive

12  fashion, providing recourse both for those Settlement Class members whose vehicles have already

13  manifested the defect and been repaired at their owners' expense, as well as for those Settlement Class

14  members whose vehicles have yet to require repair but who are concerned that their cars will require

15  such repair in the future due to the defects alleged in the SAC.  For those Settlement Class members

16  whose vehicles have yet to manifest the alleged defect, the Settlement Agreement provides that MBUSA

17  will cover repairs necessary to address the alleged defects for a period of the lesser of up to 10 years or

18  125,000 miles from the vehicle's in-service date.  *See* Settlement Agreement, at ¶¶ 4.1 – 4.3.

19  Depending on when a claim is made for any future replacement of the defective part, under the

20  Settlement Agreement, MBUSA will pay either 100 percent, 70 percent, or 37.5 percent of the

21  reasonable repair cost necessitated by the alleged defect.  *Id*. at ¶¶ 4.1 – 4.2.  Likewise, for those

22  Settlement Class Members that already have experienced the defect and paid to have their vehicles

23  repaired, the Settlement Agreement provides that MBUSA will reimburse such eligible class members

24  according to the same durational limits and percentage of coverage limitations as apply to the future

25  repair term of the Settlement Agreement.  *See id*. at ¶¶ 4.4 – 4.6.  Moreover, the reimbursement

26  provision of the Settlement Agreement is available regardless of whether the repair was made at an

27  MBUSA factory-authorized dealership or at an independent repair establishment of the Settlement Class

28  member's choice.  *Id*. at ¶ 4.7.

3

1    Notably, the overall settlement consideration is not subject to any aggregate monetary cap,

2   proration, or other allocation.  Thus, if each and every Settlement Class member hypothetically were to

3   submit a valid claim under the Settlement Agreement or were to seek future repairs, MBUSA would be

4   liable to each without any diminution of the settlement consideration.  Moreover, the settlement

5   consideration is fair and equitable, taking into consideration the risk, cost, and uncertainty of litigation,

6   as well as the age of the vehicle (either in mileage or years of service).

7    In addition to the foregoing substantive relief, the Settlement Agreement also requires MBUSA

8   to pay attorneys' fees and expenses awarded, and to bear the cost of the settlement logistics, including

9   the costs of the proposed settlement administrator, KCC Class Action Services, LLC, who will

10   effectuate the notice plan and provide claims administration services.  *Id*. at ¶¶ 5.2, 6.2, and 9.1; *see*

11   United States District Court for the Northern District of California Procedural Guidance for Class Action

12   Settlements, Preliminary Approval, Section 2.  By any objective standard, the settlement warrants

13   preliminary approval.  Similar automotive classwide settlements that provided a cash reimbursement or

14   prospective warranty extension option have been granted final approval by California federal courts,

15   even where those options provided a lesser recovery than that provided here. *See Sadowska v.*

16   *Volkswagen Group of America, Inc.*, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013) (granting final

17   approval to nationwide class settlement that called for defendant car manufacturer to extended warranty

18   to lesser of 10 years or 100,000 miles and offer reimbursement for repairs already undertaken); *Browne*

19   *v. American Honda Motor Co.*, 2010 WL 9499072, at *4 (C.D. Cal. Jul. 29, 2010) (granting final

20   approval to nationwide class settlement that provided coverage for future brake repairs for a period of up

21   to three years or a reimbursement option covering up to 50 percent of repair costs already undertaken).

22    The notice of the proposed settlement also fully complies with Rule 23 and due process, as it

23   fully advises all class members of their rights under the settlement, and is to be disseminated

24   individually through the United States mail. *See* Ex. 1 to Settlement Agreement (proposed form of

25   Notice); Settlement Agreement, at ¶¶ 5.1 – 5.11 (calling for Settlement Administrator to disseminate

26   Notice of Proposed Settlement to identifiable members of settlement class via United States mail).

27   Additionally, to account for class members whose current address may not be readily identifiable, the

28   Settlement Agreement also calls for the publication of the notice.  *See* Settlement Agreement, at ¶ 5.3

4

1   (calling for publication of a settlement website containing the notice).

2       Certification of a Settlement Class for settlement purposes only is also worthy of preliminary

3   approval.  Here, the Settlement Class definition closely tracks the putative class definition alleged in the

4   SAC.  *Compare* Settlement Agreement, at ¶ 1.23 (Settlement Class definition) *with* SAC, at ¶ 35

5   (putative class defined in complaint).  As detailed below, moreover, Plaintiffs and their SAC meet the

6   criteria of Rule 23 for class certification.

7   **II.     PRELIMINARY APPROVAL SHOULD BE GRANTED.**

8          **A.     The Settlement Class Should Be Conditionally Certified.**

9       This is a class action, and as such, the proposed Settlement Agreement calls for certification of a

10  Settlement Class for settlement purposes only.  *See* Settlement Agreement, at ¶ 1.23 (defining

11  Settlement Class).  The use of such settlement classes is common and proper in the resolution of class

12  action litigation.  *See, e.g.*, *Gribble v. Cool Transports, Inc.*, 2008 WL 5281665, at * 3 (C.D. Cal. Dec.

13  15, 2008) (approving settlement class as part of final approval of class action settlement); *In re*

14  *Connecticut General Life Ins. Co.*, 1997 WL 910387, at *1 ¶ 2 (C.D. Cal. Feb. 13, 1997) (certifying "for

15  purposes of settlement, the Settlement Class defined in Section II and Exhibit E of the Settlement

16  Agreement"); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 1993 WL

17  39306, at *2 ¶2 (C.D. Cal. Jan. 12, 1993) (granting preliminary approval and certifying "for purposes of

18  this settlement only, Temporary Settlement Classes as defined in the Settlement Agreement.").

19      Here, subject to certain exclusions, the Settlement Class is defined as:

20      All current and former owners and lessees of Mercedes-Benz branded automobiles
        equipped with certain M272 or M273 engines bearing serial numbers up to 2729..30
21      468993 or 2739 ..30 088611, respectively (the "Subject Vehicles"), who purchased
        or leased their Subject Vehicles within the United States.

22  Settlement Agreement, at ¶ 1.23[1].

23

24      [1] The Settlement Agreement expressly excludes the following from the Settlement Class: a)
    Persons who validly and timely exclude themselves using the procedure set forth in Paragraphs 7.3-7.4;
25  b) Persons who have settled with, released, or otherwise had claims adjudicated on the merits against
    MBUSA that are substantially similar to those alleged in this matter; c) Persons with only personal
26  injury, wrongful death or property damage (to property other than the Subject Vehicle) claims as a
    result of the defects alleged; d) Employees of MBUSA; e) Insurers or other providers of extended
27  service contracts or warranties for the vehicles owned by Settlement Class Members; and f) The

28                                                      5

1    This Settlement Class definition sets forth an identifiable class, and generally tracks the putative

2    class definition originally pled in the SAC.  *See* CAC, at ¶ 35 (alleging class definition).[2]  *See* Procedural

3    Guidance for Class Action Settlements, Preliminary Approval, Section 1.a.   Because, as shown below,

4    the Settlement Class meets all the requirements of Rule 23, it should be certified for settlement purposes.

5                    **1.   The Settlement Class Satisfies The Numerosity Requirement.**

6            Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is

7    impracticable."  Fed. R. Civ. P. 23(a)(1).  It is undisputed that this action meets the numerosity

8    requirement.  MBUSA's parent manufacturer is a major international manufacturer of automobiles, such

9    that there are thousands of vehicles falling within the Settlement Class definition.  Material obtained by

10   Plaintiffs' counsel during discovery in this action confirm that approximately 300,000 Settlement Class

11   vehicles were manufactured and distributed within the United States.   This more than satisfies the

12   numerosity requirement for class certification.  *See Lowdermilk v. United States Bank National Assoc.*,

13   479 F.3d 994, 997 (9th Cir. 2007) (numerosity criteria satisfied by plaintiff's mere allegation that class

14   size "exceeds 30 persons.").

15                   **2.   The Settlement Class Satisfies The Commonality Requirement.**

16           Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R.

17   Civ. P. 23(a)(2).  "To establish commonality, '[t]he existence of shared legal issues with divergent

18   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

19   remedies.'"  *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (*quoting Hanlon v. Chrysler*

20   *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  Here, this commonality requirement is met because the

21   Honorable Thelton E. Henderson and the Honorable Jacqueline Scott Corley and members of their
     respective families.  *See* Settlement Agreement, at ¶¶ 1.23(a) – 1.23(f).

22

23        [2] The class definition in the SAC, which added a claim under the New Jersey Consumer Fraud
     Act, is broader than the class alleged in the First Amended Complaint ("FAC").  The FAC did not
     include former owners and lessees of the subject vehicles.  The SAC does so because it recognizes that

24   where a former owner already paid for repairs to replace the allegedly defective balance shaft or idle
     gears before selling the car to a current owner, it is the former owner who sustained the monetary loss

25   and should be entitled to recover.  The SAC also defines a nationwide class, as opposed to a California
     only class, recognizing that the alleged defect plagued cars nationwide in the same manner due to

26   MBUSA's identical course of conduct.  *See In re Mercedes TeleAid contract Litigation*, 257 F.R.D. 46,
     63 (D.N.J. 2009) (nationwide class was properly pled based on MBUSA's violations of the New Jersey

27   Consumer Fraud Act); *Sadowska*, 2013 WL 9600948, at *1 (granting final approval to nationwide class
     settlement against Volkswagen for alleged vehicle defect that plagued VW cars nationwide).

28
                                                   6

claims of all absent class members arise from the same allegation in the SAC; namely, does a defect exist in the Settlement Class vehicles' M272 or M273 engines that requires the replacement of the balance shaft sprocket or idle gear?

Further, the Settlement Class also shares this commonality requirement in that all Settlement Class Members whose vehicles incorporate the particular balance shaft sprocket or idle gear will benefit from future repairs for the parts at issue.  Moreover, those Settlement Class Members who experience the manifestation of the common defect are entitled to claim reimbursement for out-of-pocket repair expenses under the terms of the Settlement.  This is so because a key provision of the Settlement Agreement is that it permits eligible members to obtain partial reimbursement from MBUSA for costs associated with the Class Member having to replace the balance shaft or idle gear.  *See* Settlement Agreement, at ¶¶ 4.1 – 4.7 (detailing settlement consideration).

### 3.   The Settlement Class Satisfies The Typicality Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Hanlon*, 150 F.3d at 1020.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In determining whether typicality is met, the focus should be "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson*, 213 F.R.D at 396 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  Typicality does not require that "all class members suffer the same injury as the named class representative."  *Id*.

The typicality criterion is satisfied in this case.  Plaintiffs Majeed Seifi and Tracey Deakin own vehicles equipped with the Mercedes M272 engine, and both experienced a manifestation of the alleged defect that required replacement of their vehicles' balance shafts at a cost of thousands of dollars.  *See* SAC, at ¶¶ 5-7.  Similarly, Plaintiff Ronald Reyner owns a Mercedes vehicle equipped with an M273 engine, and experienced the manifestation of the defect to that engine that required replacement of the idle gear in his vehicle.  *Id*. at ¶¶ 8-9.  Because Plaintiffs are members of the proposed Settlement Class,

7

1   and assert the same causes of action on behalf of themselves and all absent class members, their SAC

2   and the Settlement Class meet the typicality requirement for class certification.

3   **4.   The Settlement Class Satisfies The Adequacy Requirement.**

4   Rule 24(a)(4) requires that "the representative parties will fairly and adequately protect the

5   interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy:

6   (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and

7   (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

8   *Hanlon*, 150 F.3d at 1020. There are no conflicts of interest alleged or that could possibly exist here.

9   Plaintiffs seek the exact same remedy as all class members; namely, relief to address the claim that the

10  vehicle has manifested or is unduly prone to manifest a balance shaft sprocket or idle gear failure.

11  Plaintiffs' interests, therefore, are perfectly aligned with the interests of the Settlement Class members.

12  Further, both Plaintiffs and their counsel are adequate class representatives. This is evidenced, in

13  the first instance, by the fact that Plaintiffs and their counsel have managed to negotiate this Settlement

14  Agreement with MBUSA, so as to grant meaningful relief to the class. This is particularly noteworthy,

15  given that a prior attempt to litigate this matter against MBUSA before a different court was dismissed

16  at the pleadings stage. *See Suddreth v. Mercedes-Benz USA, LLC*, 2011 WL 5240965 (D.N.J. Oct. 31,

17  2011) (dismissing class action complaint against MBUSA alleging claims based on same allegations of

18  defective balance shaft as are at issue here). Counsel for Plaintiffs are highly experienced in class action

19  litigation, and have been involved in many class action settlements and actions. *See* Exs. 2-3 to Katriel

20  Decl. (resumes of class counsels' law firms). Their track record in this action before this Court

21  evidences their adequacy to serve as Class counsel.

22  **5.   The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).**

23  In addition to meeting all the class certification requirements enumerated in Rule 23(a), a movant

24  must also satisfy at least one of the requirements of Rule 23(b). *See Zinser v. Accufix Research Int., Inc.*

25  253 F.3d 1180, 1886, *amended* 273 F.3d 1266 (9th Cir. 2001). Here, the settlement provides monetary

26  relief, so the appropriate criteria is set forth in Rule 23(b)(3), which provides that class certification is

27  appropriate if the criteria of Rule 23(a) are met, and if:

28

8

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

These so-called "predominance" and "superiority" requirements of Rule 23(b)(3) are also readily met in this case. "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Instead, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Friedman v. 24 Hour Fitness USA Inc.*, 2009 WL 2410889, at *6 (C.D. Cal. Aug. 6, 2009) (*quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).  Here, this cohesiveness assuredly exists because the overarching inquiry and interest of all putative class members is whether the members of the Settlement Class are entitled to relief from MBUSA for any evidence of a balance shaft of idle gear defect present in their M272 or M273 engine-equipped Mercedes vehicles.  This evidence and proof as to the existence of a legally cognizable claim to obtain such relief, therefore, would predominate over any individual issues in adjudicating this case.

Similarly, the "superiority" requirement of Rule 23(b)(3) is also met in this case.  In determining the superiority of a class action, courts consider the following four factors: (1) the class members' interests in individually prosecuting separate actions; (2) whether any litigation concerning the controversy has already been brought by class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.[3] *See* Fed. R. Civ. P. 23(b)(3)(a)-(d).  Here, those factors clearly militate in favor of class certification. Although the costs associated with replacing the balance shaft sprocket or idle gears in the class vehicles are real and significant, the cost of individually litigating such a case against MBUSA would easily

---

[3] Manageability is a factor to assess in deciding whether the superiority requirement has been met when class certification is sought as part of an adversarial trial process.  By contrast, "a settlement class need not be 'manageable' as a trial class action because no trial will occur." *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007) (*citing Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997)).

1   exceed the cost of any relief that could be obtained by any lone owner and lessee.  This, alone, warrants

2   a finding that a class action is a superior method of adjudication.  *See Tchoboian v. Parking Concepts,*

3   *Inc.*, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009) (granting motion for class certification and

4   noting that "[t]his superiority inquiry requires a comparative evaluation of alternative mechanisms of

5   dispute resolution."); *Baghdasarian v. Amazon.com, Inc.*, 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7,

6   2009) (granting motion for class certification and noting that the superiority inquiry is geared to address

7   "the problem that small recoveries do not provide the incentive for any individual to bring a solo action

8   prosecuting his or her rights.").

9   Because the proposed Settlement Class meets all the applicable requirements for certification

10  under Federal Rule of Civil Procedure 23, the class should be conditionally certified from purposes of

11  settlement.  At the Fairness Hearing, the Court will have the further opportunity to revisit this

12  conditional certification in deciding whether to grant Final Approval to the Settlement Agreement.

13      **B.      The Notice Plan Should Be Approved.**

14   Rule 23 and due process concerns call for notice to be provided to absent class members in order

15  to inform them of the proposed settlement, and grant them the opportunity to opt-out or object.  *See* Fed.

16  R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be the "best notice practicable"

17  under the circumstances.  *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).  Here, the

18  parties propose to disseminate the notice of the proposed class action settlement by way of United States

19  mail to the last known address of the Settlement Class members for which the class member's identity

20  and address are reasonably ascertainable from industry-recognized databases.  *See* Settlement

21  Agreement, at ¶¶ 5.1 – 5.11 (setting forth Notice Plan and notice terms under the Settlement

22  Agreement).   Such individual service of notice via the U.S. mail has been held, as a matter of law, to

23  satisfy the due process concerns and to meet the "best practicable notice" standard.  *See In re Laser*

24  *Arms Corp. Securities Litig.*, 794 F. Supp. 475, 496 (S.D.N.Y. 1979) ("Therefore, the Court finds that

25  notice by first class mail is the "best practicable notice.");  *Peil v. National Semiconductor Corp.*, 86

26  F.R.D. 357, 375 (E.D. Pa. 1980) ("In the present case, the best notice practicable would apparently be

27  obtained by a first class mailing.").  Moreover, the Settlement Agreement calls for an additional means

28

10

1   of notice dissemination by publication to capture those Settlement Class members for whom a known

2   mailing address may not be on file.  *See* Settlement Agreement, at ¶ 5.3.  The Settlement Agreement also

3   requires notice of the settlement within ten days of filing this motion pursuant to the Class Action

4   Fairness Act (28 U.S.C. § 1715).  *See* Settlement Agreement, at ¶ 5.9; Procedural Guidance for Class

5   Action Settlements, Preliminary Approval, Section 10.

6           The proposed form and content of the notice also complies with due process and Rule 23.  The

7   proposed notice is attached as Exhibit 1 to the Settlement Agreement, and informs absent class members

8   as to the terms of the settlement, their right to avail themselves of the settlement, opt-out, or object, as

9   well as the binding effect of the settlement on members of the Settlement Class.  *See* Ex. 1 to Settlement

10  Agreement. The form of notice and its plan of dissemination should, therefore, also be approved.

11
        **C.     The Substantive Terms of The Settlement Are Fair, And Should Be Granted**
12      **Preliminary Approval.**

13          Preliminary approval should also be granted to the settlement because its terms are fair and

14  reasonable.  Ultimately, the decision as to whether to grant preliminary approval to a settlement of a

15  class action is a matter left to the discretion of the trial court.  *See Castro v. Zenith Acquisition Corp.*,

16  2007 WL 81905, at *1 (N.D. Cal.  Jan. 9, 2007).  In exercising that discretion, however, the Court

17  should bear in mind that "there is an overriding public interest in settling and quieting litigation," and

18  this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

19  Cir. 1976).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties,

20  *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the

21  court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties

22  to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is

23  not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

24  settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v.*

25  *Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

26          The general standard by which courts are guided when deciding whether to grant preliminary

27  approval to a class action settlement is whether the proposed settlement falls within the range of what

28
                                                        11

1   could be "fair, adequate, and reasonable," so that notice may be given to the proposed class, and a

2   hearing for final approval may be scheduled. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.

3   1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the

4   proposed settlement is "within the range of possible approval" and that notice should be given, "the

5   next step is the fairness hearing.").  An evaluation of the benefits under any proposed settlement "must

6   also be tempered by the recognition that any compromise involves concessions on the part of all the

7   settling parties.  Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an

8   abandoning of highest hopes.'"  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-061100-SBA (JCS),

9   2009 U.S. Dist. LEXIS 24973, *16 (N.D. Cal. Mar. 18, 2009) (*quoting Officers for Justice*, 688 F.2d at

10  624).

11          This proposed settlement assuredly satisfies the foregoing criteria.  The terms of the settlement

12  provide class members with meaningful relief that addresses the precise legal injury that was alleged in

13  the SAC.  Unlike notorious class settlements that release class member claims for mere pennies on the

14  dollar, here the recovery offered is real and substantial.  Each qualifying Settlement Class member is

15  entitled to receive potentially thousands of dollars to reimburse the cost of vehicle repair.  *See*

16  Settlement Agreement, at ¶ 4.7 (setting forth that the reasonable repair value for repairs performed at an

17  independent repair station and on whose basis the 40 to 70 percent reimbursement amounts will be

18  calculated shall be deemed to be $4,000.00).   Eligible Settlement Class members also are provided

19  coverage for future repairs of the allegedly defective balance shaft sprockets and idle gears that more

20  than doubles the duration of the original MBUSA warranty.  *Id*. at ¶ 4.1 – 4.3.  By any measure, the

21  settlement terms are fair and reasonable.

22          The risks of continued litigation here are real.  Defendant's counsel have repeatedly alerted

23  Plaintiffs' counsel that, had the case continued to be litigated in adversarial fashion, MBUSA was

24  prepared to litigate the case through to trial and appeal.  Whatever outcome those proceedings would

25  produce, it would necessarily take years to materialize, such that many Settlement Class members would

26  already have disposed of their vehicles and would not be able to obtain the full benefits of the Settlement

27  Agreement that has been executed now.   Moreover, the litigation risks did not merely amount to the risk

28

12

1   of losing the case or a delay in obtaining any recovery.  Instead, in its written response to Plaintiffs'

2   CLRA demand letter, MBUSA placed Plaintiffs' counsel on notice that, "[i]f plaintiffs insist on pressing

3   the claims described in your May 23, 2013 letter, . . . MBUSA will defend itself accordingly, and

4   reserves its right to seek its reasonable attorneys' fees and costs under the fee shifting provisions of the

5   CLRA and all other remedies available to it." Dkt. No. 46-17 [MBUSA Response To Plaintiffs' CLRA

6   Demand Letter (dated Jun. 24, 2013)], at 2.

7        Although Plaintiffs remain confident in the merits of their case, the very nature of adversarial

8   class litigation means that results are not predictable with any degree of certainty.  In this regard, it is

9   significant that a prior attempt by different plaintiffs to litigate this very same matter was dismissed at

10  the pleadings stage by the United States District Court for the District of New Jersey.  *See Suddreth v.*

11  *Mercedes-Benz USA, LLC*, 2011 WL 5240965 (D.N.J. Oct. 31, 2011) (dismissing class action complaint

12  against MBUSA alleging claims based on same allegations of defective balance shaft as are at issue

13  here).  A classwide settlement that provides Settlement Class members real and tangible benefits cannot

14  be said to be unreasonable or unfair when a prior attempt at classwide litigation of the same issue

15  resulted in dismissal and zero recovery for the plaintiffs of that prior class action complaint.

16       **D.     The Settlement Was a Product of Adversarial Arms'-Length Negotiation.**

17       That the discussions and negotiations leading up to the settlement were conducted in vigorous,

18  adversarial, and arms-length fashion also serves as an added indicia of the fairness of the settlement.

19  Here, settlement negotiations were not even broached in earnest until the parties had exchanged

20  meaningful discovery, including depositions and thousands of pages of documents produced in response

21  to discovery demands.  Plaintiffs' counsel also had consulted with a number of expert witnesses,

22  including expert metallurgists, prior to engaging in mediation or other settlement talks.  Moreover, at the

23  time that mediation commenced, Plaintiffs had filed a motion for partial summary judgment as to

24  liability.  *See* Dkt. No. 107.  That motion had been fully briefed and calendared for a hearing.  Thus, at

25  the point of settlement discussions, each side had a bona fide basis on which to make an informed

26  assessment of the value, strengths, and potential weaknesses of their respective case and defenses.

27       Further, it is undeniable that the settlement negotiations here were non-collusive and adversarial

28  in nature.  Indeed, the parties engaged in an in-person mediation session before the Honorable Edward

1  Infante (Ret.), and still were unable to reach an agreement to settle the case at that time. *See* Katriel

2  Decl., at ¶ 2. The agreement in principle to settle the case was reached only months after the initial in-

3  person mediation had already concluded, and then largely as a result of the continued efforts of

4  Magistrate Judge Infante as an experienced mediator. *Id*. at ¶ 3. Only after the agreement in principle

5  to settle the claims of the class members was reached and a Memorandum of Understanding was

6  executed by counsel, did the parties begin negotiating the open issue of attorneys' fees and incentive

7  awards. *Id*. at ¶ 4. This separate negotiation also took weeks and intensive efforts by Magistrate Judge

8  Infante. In the end, resolution of this issue required an independent mediator's proposal that was

9  accepted by both parties, further attesting to the adversarial, bona fide, and arms' length nature of the

10  negotiations. *Id*.

11        Because the proposed settlement amounts to a reasonable means of resolving this litigation, and

12  because the risks and expenses inherent in continuing to litigate this matter are significant and uncertain,

13  this proposed settlement should be preliminarily approved.

14  **CONCLUSION**

15        For all the foregoing reasons, the unopposed motion for preliminary approval should be

16  GRANTED.

17

18  Dated: March 23, 2015                _____/s/ Roy A. Katriel_____
                                     Roy A. Katriel (SBN 265463)

19                                         THE KATRIEL LAW FIRM
                                       4225 Executive Square, Suite 600

20                                         La Jolla, CA 92037
                                       Telephone: (858) 242-5642

21                                         Facsimile:  (858) 430-3719

22

23                                         Gary S. Graifman, Esq. (*pro hac vice*)

24                                       KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
                                       210 Summit Avenue

25                                         Montvale, NJ 07645
                                       Tel: (201) 391-7000

26                                         Fax: (201) 307-1086

27

28                                    *Counsel for Plaintiffs*

14