Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
4225 Executive Square, Suite 600
La Jolla, California 92037
Telephone: (858) 242-5642
Facsimile:  (858) 430-3719
e-mail: rak@katriellaw.com

Gary S. Graifman, Esq. (*pro hac vice*)
KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
210 Summit Avenue
Montvale, NJ 07645
Telephone: (201) 391-7000
Facsimile:  (201) 307-1086
e-mail: ggraifman@kgglaw.com

*Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MAJEED SEIFI AND TRACEY DEAKIN, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No. 3:12-cv-5493-TEH<br><br>**PLAINTIFFS'  NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND AND INCENTIVE AWARDS**<br><br>**Hearing Date:  August 17, 2015<br>Time:            10:00 am<br>Judge:          Hon. Thelton E. Henderson<br>Courtroom:   12**<br><br>**REDACTED PUBLIC VERSION** |

1
2

# TABLE OF CONTENTS

3   NOTICE OF MOTION AND MOTION………………………………………...………1

4   MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION…………………………..1

5   INTRODUCTION………………………………………………………………………....1

6   FACTUAL BACKGROUND AND PROCEDURAL HISTORY…………………………….3

7
8   I.      THE LITIGATION HAS A LONG UNDERLYING AND PROCEDURAL
            HISTORY………………………………………………………………………….3

9
10  II.     CLASS COUNSEL HAS ACHIEVED A MEANINGFUL AND FAVORABLE
            SETTLEMENT FOR THE CLASS……………………………………………....6

11  ARGUMENT………………………………………………………………………………7

12  I.      THE REQUESTED FEE AWARD SHOULD BE APPROVED AS REASONABLE…...7

13
        A.      The Requested Fee Award That Was Proposed By Magistrate Judge
14              Infante Is Fair And Reasonable Under The Percent-Of-The Benefit Value
                Approach………………………………………………………………..……9

15
16          1.      The Negotiated Attorneys' Fees Is Reasonable And Is Less Than
                    Accepted Ninth Circuit Benchmarks For Similar Class Settlements……...13

17
18          2.      The Requested Fee Award Is Also Comparable To, Or Less Than, Fee
                    Awards In Other Similar Automotive Defect Class Actions……..……….14

19
        B.  An Independent Lodestar Cross-Check Confirms The Reasonableness Of The
20          Fee Request……………………………………………………………………14

21
22          1.      The Hours Expended and Hourly Rates Charged Are Reasonable………..19

            2.      The Modest Lodestar Multiplier Is Also Justified……………...………..21
23
24  III.    THE COSTS AND EXPENSES FOR WHICH REIMBURSEMENT IS SOUGHT
            ARE REASONABLE, AND SHOULD BE APPROVED……………………………23

25
26  IV.     THE INCENTIVE AWARDS SOUGHT SHOULD ALSO BE APPROVED…………..24

27
28  CONCLUSION……………………………………………………………………………25

# TABLE OF AUTHORITIES

**Cases:**

*Alin v. Honda Motor Co.*,
No. 08-4825 (D.N.J. 2012)……………………………………………………..……14

*Anderson v. Nextel Retail Stores, LLC*
(C.D. Cal. June 20, 2010, No. CV 07-4480)……………………………………..……..21

*Barboza v. West Coast Digital GSM, Inc.*,
179 Cal. App. 4th 540 (2009)…………………………………………………….……20

*Bellinghausen v. Tractor Supply Co.*,
No. 13-cv-2377-JSC, 2015 WL 1289342 (N.D. Cal. Mar. 20, 2015)……………………..……24

*Browne v. American Honda Motor Co.*,
No. 09-06750, 2010 U.S. Dist. LEXIS 144823 (C.D. Cal. Oct. 5, 2010)………………………7, 20

*Browne v. American Honda Motor Co., Inc.*,
No. CV 09-06750 (C.D. Cal. 2010)…………………………………………..…………..14

*Burroughs v. Board of Trustees of Pension Fund For Operating Engineers*,
542 F.2d 1128 (9th Cir. 1976)…………………………………………………….……10

*Barrera v. Gamestop Corp.*
(C.D. Cal. Nov. 29, 2010, No. CV 09-1399)………………………………………….…..21

*Create-A-Card, Inc. v. Intuit Inc.*,
No. 07-6452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)………………………….…21

*Crommie v. Public Utils. Comm'n*,
840 F. Supp. 719 (N.D. Cal. 1994)…………………………………………….…………23

*Dugas v. Mercedes-Benz USA, LLC*,
No. 6:12-cv-2285 (W.D. La. 2012)……………………………………………….………23

*Falk v. General Motors Corp.*,
No. C07-0291-JCC (W.D. Wash. Nov. 7, 2008)……………………………………..………14

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)………………………………………………..……..21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1088)………………………………………………………..8, 13

*Hensley v. Eckehart*,
461 U.S. 424 (1983)…………………………………………………….……..………8

*Holloway v. Best Buy Co.*,
No. C-05-5056-PJH (MEJ) (N.D. Cal.)………………………………………....…………21

*Hopson v. Hanesbrands Inc.*,
No. 08-cv-0844-EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009)……………………..………25

*Horsford v. Board of Trustees of California State Univ.*,
132 Cal. App. 4th 359 (2005)……………………………………………………………………19

*In re Bluetooth Headset Products Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)……………………………………………………………………8, 15

*In re Cellphone Termination Fee Cases*,
180 Cal. App. 4th 1110 (2009)…………………………………………………………..………8

*In re Charles Schwab Sec. Litig.*,
No. C-08-1510-WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)……………………………13

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009)……………………………………………………………..………22

*In re Cont'll Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992)…………………………………………………………………...8

*In re First Capital Holdings Fin. Prod. Sec.*,
MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992)…………………………8

*In re HPL Technologies, Inc.*,
366 F. Supp.2d 912 (N.D. Cal. Apr. 22, 2005)…………………………………………………11

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)……………………………………………………24

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990)………………...…….8

*In re Navistar Diesel Engine Prods. Liab. Litig.*,
No. MDL 2223, No. 11-C-2496 (N.D. Ill. Aug. 11, 2013)………………………………………21

*In re Nissan Radiator Transmission Cooler Litig.*,
2013 WL 4080946 (S.D.N. Y. May 30, 2013)………………………………….……………20-21

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)…………………………………………………………10

*In re Toyota Motor Corp.*,
No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013)…………10, 13

*Johnson v. General Mills, Inc.*,
No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013)………..…….…….24

*Kakani v. Oracle Corp.*,
2007 U.S. Dist. LEXIS 95496 (N.D. Cal. Dec. 21, 2007)……………………………………...22

*Kearney v. Hyundai Motor Am.*,
No. 09-1298, 2013 U.S. Dist. LEXIS 91636 (C.D. Cal. June 28, 2013)……………...……19, 21

*Kim v. Euromotors West/The Auto Gallery*,
149 Cal. App. 4th 170 (2007)………………………………………………………..……….9

*Luquetta v. Regents of Cal.*,
CGC-05-443007 (San Francisco Super. Ct.)…………………………………………………21

*Mills v. Electric Auto-Lite Co.*,
396 U.S. 375 (1970)…………………………………………………………………..……...10

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008)………………………………………………………………19

*Navarro v. Servisair*,
No. 08-cv-2716, MHP, 2010 WL 1729538 (N.D. Cal. Apr. 27, 2010)……………...………25

*O'Keefe v. Mercedes-Benz United States, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003)……………………………………………….……...10, 11

*POM Wonderful, LLC v. Purely Juice, Inc.*,
No. CV-07-2633, 2008 WL 4351842 (C.D. Cal. Sept. 22, 2008)………………………………21

*Richard v. Ameri-Force Mgmt. Servs., Inc.*
(San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019)………………..……….21

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009)……………………………………………...……….24

*Sadowska v. Volkswagen Group of Am.*,
No. CV-11-00665-BRO (C.D. Cal. Sep. 25, 2013)………………………………...……..7, 20

*Seifi v. Mercedes-Benz USA, LLC*,
No. 12-cv-5493-TEH, 2013 WL 5568449 (N.D. Cal. Oct. 9, 2013)………………………25

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)………………………………………………..…….8, 9

*Suddreth v Mercedes-Benz LLC*,
2011 WL 5240965, No. 10-cv-5130-DMC (D.N.J. Oct. 31, 2011)……………………..…….3, 23

*Trew v. Volvo Cars of N. Am., LLC*,
No. S-05-1379-RRB, 2007 U.S. Dist. LEXIS 55305 (S.D. Cal. July 31, 2007)………...……10, 11

*Trustees. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*,
460 F.3d 1253 (9th Cir. 2006)……………………………………………….………23

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010)………………………………………………….………24

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)……………………………………………………10, 13, 22

*Vo v. Las Virgenes Municipal Water Dist.*,
79 Cal. App. 4th 440 (2000)…………………………………………………….………19

**NOTICE OF MOTION AND MOTION**

**TO DEFENDANT MERCEDES-BENZ USA, LLC AND ITS COUNSEL OF RECORD:**

Please take notice that on August 17, 2015 at 10:00 am in Courtroom 12 of the United States District Court for the Northern District of California's San Francisco Division, counsel for Plaintiffs Majeed Seifi, Tracey Deakin, and Ronald Reyner (collectively "Plaintiffs"), in connection with the proposed Class Action Settlement ("Settlement") to which this Court has granted Preliminary Approval (Dkt. No. 149), will and do hereby move for an Order approving Plaintiffs' Counsel's Motion For Attorneys' Fees, Costs, and Incentive Awards.  This motion is based on the arguments made in the accompanying Memorandum in Support filed below, as well as the: Joint Declaration of Gary Graifman and Roy A. Katriel In Support OF Approval Of Class Settlement And Award Of Attorneys' Fees And Reimbursement Of Expenses ("Joint Declaration"); Declaration of Roy A. Katriel In Support of Attorneys' Fees And Reimbursement Of Expenses Of The Katriel Law Firm ("Katriel Decl.,); Declaration of Gary S. Graifman In Support of Attorneys' Fees and Reimbursement Of Expenses of Kantrowitz, Goldhamer & Graifman, P.C.. ("Graifman Decl."), all exhibits thereto, as well as all filings of record in this action and any other matters as the Court may consider.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION

**INTRODUCTION**

Plaintiffs' Counsel, The Katriel Law Firm and the law firm of Kantrowitz, Goldhamer & Graifman, P.C., hereby respectfully move for Court approval of their motion for attorneys' fees, reimbursement of costs and expenses, as well as approval of incentive awards to the three named plaintiffs who have litigated this action to successful resolution on behalf of the Class.  The fee and cost award being sought by Plaintiffs' Counsel amounts to $ 2,411,882 in fees and $ 63,118 in expenses.  This total fee and expense award amounts to less than 10 percent of the reasonable Settlement value to the Class.  It is the fee amount proposed by Retired Magistrate Judge Edward A. Infante, who presided over protracted mediation talks in this matter and issued his Mediator's Proposal with regard to Plaintiffs' Counsel fee award after the parties successfully executed a Memorandum of Understanding as to the settlement of the Class members' claims.  *See* Katriel

Decl. at ¶ 4.   Mercedes-Benz USA, LLC ("MBUSA") has agreed not to oppose this fee request (*see* Settlement Stip., Dkt. No. 142-2, at ¶ 9.2), and because any fees awarded to Plaintiffs' Counsel are to be paid on top of the consideration afforded to the Class members under the Settlement, no award of fees will diminish or adversely impact the Class members' recovery.

At Argument Sections I.A. and I.B. *infra*, we show that the fee award being sought is reasonable, both as a percentage of the Settlement value as well as by resort to the lodestar approach—the two methodologies adopted by the Ninth Circuit to assess the reasonableness of an attorney fee demand.  Likewise, Plaintiffs' request for reimbursement of expenses also is reasonable and should be approved.  The expenses incurred were necessary and reasonable in prosecuting this action and are the types of costs (travel to depositions and hearings, court reporter fees, expert fees, mediator fees, Westlaw fees incurred in this action, etc.) that have been routinely approved as reimbursable expenses in a fee petition.

Plaintiffs' Counsel also seeks Court approval for Incentive Awards to be paid to the three named plaintiffs in this action for their investment and expenditure of time, money, and efforts in litigating this action on behalf of the class.  MBUSA has agreed, subject to Court approval, to pay Plaintiffs Seifi and Deakin $ 9,000 each, and to pay Plaintiff Reyner an award of $ 3,000, in recognition of the efforts, resources, and time they devoted to work on this case on behalf of the Class.  *See* Settlement, Dkt. No. 142-2, at ¶ 9.1.  As detailed in Argument Section IV *infra*, Messrs. Seifi and Deakin, not only sat for day-long depositions in this action, but also parted with their cars so that MBUSA could conduct an inspection of the vehicles.  These plaintiffs also produced extensive written discovery in the form of responsive documents, records, and written answers to the discovery propounded on them by MBUSA's lawyers.  Moreover, Mr. Seifi's wife was also deposed, and Mr. Deakin's wife had her deposition noticed and prepared for it, only to have it preempted by the mediation talks in this action that ultimately resulted in the Settlement.  Likewise, Plaintiff Reyner, who was added into the case as part of the Second Amended Complaint, was the only named plaintiff who owned an M273 engine-equipped vehicle, and was thus uniquely qualified to represent the interests of these members of the Class.  Not only did he lend his name to the litigation, but he produced responsive documents to establish his standing to

bring suit, and conferred with counsel in order to fulfill his duty as a class representative.

For all the foregoing reasons, and as detailed more fully below, Plaintiffs' motion for approval of their request for attorneys' fees, costs, and incentive awards should be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    THE LITIGATION HAS A LONG UNDERLYING PROCEDURAL HISTORY.

On October 5, 2010, a class action complaint styled as *Suddreth v. Mercedes-Benz USA, LLC*, was filed in the United States District Court for the District of New Jersey.  *See Suddreth v. MBUSA, LLC*, No. 2:10-cv-510-DMC, Dkt. No. 1.  That pleading sought to represent a class of owners of certain Mercedes-Benz vehicles equipped with engines known as the Mercedes M272 or M273 engine.  The allegation was that a part deep in the heart of the engine, known as the balance shaft gear in the 6-cylinder M272 engine, or the idle gear in the 8-cylinder M273 engine, was defectively manufactured, such that it wore prematurely and required replacement to the tune of $5,000 or more.  The New Jersey federal court dismissed that action on October 31, 2011 at the pleadings stage.  *See Suddreth v. Mercedes-Benz LLC*, 2011 WL 5240965, (D.N.J. Oct. 31, 2011).

In mid-2012, even after *Suddreth* had been dismissed by the New Jersey federal court, consumers continued calling The Katriel Law Firm and the firm of Kantrowitz, Goldhamer & Graifman with complaints that their vehicles had experienced the balance shaft defect.  Although the prior track record of litigation in *Suddreth* suggested that classwide litigation against MBUSA on this issue would be risky, Plaintiffs' Counsel researched and analyzed the law, as well as the underlying *Suddreth* decision, and determined that there was a supportable basis to proceed with litigation asserting factual allegations that were not pled in *Suddreth*.  Thus, on October 24, 2012, Plaintiffs' Counsel filed this case against MBUSA, seeking to represent a class of California owners of Mercedes-Benz vehicles equipped with the M272 or M273 engines.  The *Seifi* Class Action Complaint, however, contained detailed additional factual allegations that had not been pled in the *Suddreth* original Class Action Complaint, including allegations of investigations that had been reportedly undertaken in Germany in connection with the alleged balance shaft and idle gear failures.  *See Seifi* Dkt. No. 1, at ¶¶ 12-22.

From the outset, MBUSA's reaction was swift and aggressive in opposing the Complaint.

MBUSA filed two motions—one to transfer the case to the United States District Court for the District of New Jersey (where MBUSA had previously obtained dismissal of the *Suddreth* action), and the other to dismiss the *Seifi* complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See Seifi* Dkt. Nos. 9 and 12.  That motion also contained an alternative plea to strike the class allegations. Dkt. No. 9.

Plaintiffs' Counsel opposed all these motions. *See Seifi* Dkt. Nos 18 and 29.  It defeated the motion to transfer venue, defeated in part the motion to dismiss, and defeated the motion to strike the class allegations.  *See* Dkt. Nos. 27 and 42.   Thereafter, in response to the Court's Order and in keeping with the pre-suit demand requirement of the California Consumer Legal Remedies Act, Plaintiffs' Counsel filed a First Amended Complaint. *See* Dkt. No. 46.  Again, MBUSA moved to dismiss the action and to strike its class allegations.  *See* Dkt. No. 49.  Again, Plaintiffs' Counsel defeated in large part the motion to dismiss, and the motion to strike outright.  Dkt. Nos. 56, 63.

The adversarial nature of the case continued apace.  Over the ensuing months and following years, Plaintiffs' Counsel filed a motion for default (Dkt. Nos. 67 and 70), as well as a subsequent motion for partial summary judgment as to liability or, in the alternative, summary adjudication. [Dkt. Nos. 106-108, and 121].   The latter was premised on counsel's review of the extensive discovery, both written and in deposition form, that had been produced in the case.  That discovery was not at all uncontroversial, and Plaintiffs' Counsel filed a motion to compel, which was referred to, briefed, and argued before Magistrate Judge Corley.  [Dkt. Nos. 93, 97, and 104].  Judge Corley's decision was then appealed for a review by Judge Henderson. [Dkt. No. 131].  In addition to discovery from MBUSA, Plaintiffs' Counsel also propounded third-party discovery on dozens of independent factory-authorized MBUSA dealerships in California, and MBUSA objected and opposed this discovery.  *See* Joint Decl. at ¶¶ 7-9.

As for MBUSA, it too pursued discovery relentlessly.  It propounded extensive written discovery on Plaintiffs Seifi and Deakin, including interrogatories, document requests, and requests for admission.  *Id.*   Plaintiffs' Counsel timely responded and, where appropriate, objected to this discovery.  Plaintiffs produced extensive records and other documentation responsive to MBUSA's written discovery.  Plaintiffs' Counsel also engaged in several mandatory and

protracted meet-and-confer sessions with MBUSA's counsel to discuss the parties' respective objections to various discovery responses and disputes. *Id*. at ¶ 7.

Armed with the foregoing discovery, Plaintiffs' Counsel turned to an expert metallurgist and materials science expert. *See* Katriel Decl. at ¶ 3. That expert consultation was done in anticipation of Plaintiffs' motion for class certification. To aid the expert, Plaintiffs' Counsel secured the allegedly defective balance shaft parts that had been extracted from the Plaintiffs' respective vehicles when these parts failed and were replaced. Plaintiffs' Counsel also arranged for MBUSA's counsel and technical personnel to inspect Plaintiffs' vehicles. *See* Joint Decl., at ¶ 8. Following that, Messrs. Seifi and Deakin sat for separate day-long depositions taken by MBUSA's counsel. *Id*. at ¶ 34. After those depositions were completed, MBUSA noticed the depositions of these Plaintiffs' spouses. *Id*. Ms. Seifi was deposed by MBUSA's counsel. *Id*.

On September 3, 2014, the Court Ordered the parties to attend private mediation. [Dkt. No. 87]. The parties attended an in-person mediation session before Retired Magistrate Judge Edward A. Infante at the San Francisco office of JAMS on November 25, 2014. *Id*. at ¶ 11. The mediation session did not result in a settlement, but Judge Infante continued holding follow-up telephonic sessions with both parties. *Id*. Over the course of several weeks, the parties, with the aid of the mediator, exchanged proposals and counterproposals that eventually led to a Memorandum of Understanding ("MOU") in January 2015 to resolve the claims of the Class members. *Id*. Only after the execution of the MOU to resolve the Class members' claims did the parties turn to separately discussing any agreement on the Plaintiffs' Counsel's fee. *Id*. at ¶¶ 15-16. Here too, the parties turned to Magistrate Judge Infante to mediate this dispute, and he engaged the parties over several weeks in telephonic conferences to attempt to reach agreement.

On February 20, 2015, Judge Infante issued a Mediator's Proposal in which he recommended to both sides the proper attorney fee to be agreed to as part of the Settlement. *See* Katriel Decl. at ¶ 4. Both sides had the opportunity to accept or reject the Mediator's proposal, and each agreed to it. Judge Infante's Mediator's Proposal corresponds to the combined fee and expense amount of $ 2.475 million now being sought by Plaintiffs' counsel. Judge Infante's Mediator's Proposal also provided for the incentive award payments to the named Class plaintiffs

that are being sought in this motion. *Id*.

## II.      CLASS COUNSEL HAS ACHIEVED A MEANINGFUL AND FAVORABLE SETTLEMENT FOR THE CLASS.

Plaintiffs' Counsel will be filing a separate motion for Final Approval Of the Class Action Settlement by the date set by the Court for that filing.  In that motion, Plaintiffs' Counsel anticipates describing in greater detail all the benefits the Settlement achieves, and the risks attendant to continued adversarial litigation.  For present purposes, however, we give a brief overview of the Settlement in order to provide context for the fee request being made.

The Settlement addresses the claims made in Plaintiffs' Second Amended Complaint in comprehensive fashion, providing recourse both for those Settlement Class members whose vehicles have already manifested the defect and been repaired at their owners' expense, as well as for those Settlement Class members whose vehicles have yet to require repair but who are concerned that their cars will require such repair in the future due to the defects alleged in the SAC. For those Settlement Class members whose vehicles have yet to manifest the alleged defect, the Settlement Agreement provides that MBUSA will cover repairs necessary to address the alleged defects for a period of up to 10 years or 125,000 miles (whichever comes first) from the vehicle's in-service date.  *See* Settlement Agreement, at ¶¶ 4.1 – 4.3.   Depending on when a claim is made for any future replacement of the defective part, under the Settlement Agreement, MBUSA will pay 70 percent or 37.5 percent of the reasonable repair cost necessitated by the alleged defect.  *Id*. at ¶¶ 4.1 – 4.2.  Likewise, for those Settlement Class Members that already have experienced the defect and paid to have their vehicles repaired, the Settlement Agreement provides that MBUSA will reimburse such eligible class members according to the same durational limits and percentage of coverage limitations as apply to the future repair term of the Settlement Agreement.  *See id*. at ¶¶ 4.4 – 4.6.   Moreover, the reimbursement provision of the Settlement Agreement is available regardless of whether the repair was made at an MBUSA factory-authorized dealership or at an independent repair establishment of the Settlement Class member's choice.  *Id*. at ¶ 4.7.

Notably, the overall settlement consideration is not subject to any aggregate monetary cap, proration, or other allocation.  Thus, if each and every Settlement Class member hypothetically

were to submit a valid claim under the Settlement Agreement or were to seek future repairs,

MBUSA would be liable to each without any diminution of the settlement consideration.

Moreover, the settlement consideration is fair and equitable, taking into consideration the risk, cost,

and uncertainty of litigation, as well as the age of the vehicle (either in mileage or years of service).

In addition to the foregoing substantive relief, the Settlement Agreement also requires MBUSA to

pay attorneys' fees and expenses awarded, and to bear the cost of the settlement logistics, including

the costs of the proposed settlement administrator, KCC Class Action Services, LLC, who will

effectuate the notice plan and provide claims administration services.  *Id.* at ¶¶ 5.2, 6.2, and 9.1; *see*

United States District Court for the Northern District of California Procedural Guidance for Class

Action Settlements, Preliminary Approval, Section 2.

By any objective standard, the settlement is fair, reasonable, and offers meaningful relief to

the Class.  Similar automotive classwide settlements that provided a cash reimbursement or

prospective warranty extension option have been granted final approval by California federal

courts, even where those options provided a lesser recovery than that provided here. *See Sadowska*

*v. Volkswagen Group of America, Inc.*, 2013 WL 9600948, at *3 (C.D. Cal. Sept. 25, 2013)

(granting final approval to nationwide class settlement that called for defendant car manufacturer to

extended warranty to lesser of 10 years or 100,000 miles and offer reimbursement for repairs

already undertaken); *Browne v. American Honda Motor Co.*, 2010 WL 9499072, at *4 (C.D. Cal.

Jul. 29, 2010) (approving nationwide class settlement that provided coverage for future brake

repairs for up to 3 years or reimbursement of up to 50% of repair costs already undertaken).

It is significant that the Settlement achieved came about not only after over two years of

adversarial litigation in this action, but also after the prior attempt in *Suddreth* to hold MBUSA

accountable for this same defect failed.   Plaintiffs' Counsel's efforts in bringing about a

meaningful settlement that benefits the Class members without the risk or further protracted

justifies an award of attorneys' fees and costs.

## **ARGUMENT**

## I.       **THE REQUESTED FEE AWARD SHOULD BE APPROVED AS REASONABLE.**

At the conclusion of a successful class action, Plaintiffs' Counsel may apply to the Court

for an award of "reasonable attorneys' fees and non-taxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Courts considering a fee application from class counsel must ensure that the fees awarded are reasonable. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In doing so, however, district courts must be mindful that courts encourage litigants to resolve fee issues by agreement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1088). This is in keeping with the powerful public policy of encouraging and approving non-collusive settlements, including those in class actions. *See In re Cellphone Termination Fee Cases*, 180 Cal. App. 4th 1110, 1118 (2009) ("Public policy generally favors the compromise of class action litigation."); *see also In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488, at *12 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement. . . including the amount of the fee... if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement.").

By the same token, the United States Supreme Court discourages a "second major litigation" arising from a request for attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). When, as here, the agreed-upon fee was negotiated at arm's-length and "there is no evidence of self-dealing or disabling conflict of interest, the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by adversarial parties in the litigation." *In re First Capital Holdings Fin. Prod. Sec.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *13 (C.D. Cal. June 10, 1992). Rather, courts will generally defer to the parties, applying a lower level of scrutiny. *See Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) ("[T]he court need not inquire into the reasonableness of the [negotiated] fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated"). This is because the negotiated fee is, in effect, the market-set price for the fees. *See In re Cont'll Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (Posner, J.) (explaining that the negotiated fee reflects a market-based price because it encompasses both parties' best estimate and view as to the value of the legal services and what the court might have awarded if the matter had been litigated).

The foregoing observations apply with particular force here, where the agreed-upon attorneys' fees and expense amount of $ 2.475 million (*see* Settlement Stip., Dkt. No. 142-2, at ¶ 9.1) was the product of a non-collusive adversarial negotiation that was overseen by a mediator of unimpeachable qualifications.  Indeed, the negotiated fee amount was the result of a Mediator's Proposal made to the parties by Retired Magistrate Judge Edward A. Infante.  *See* Katriel Decl., at ¶ 4.   After scrutinizing the merits of the case, the risks of litigation, the results achieved by way of settlement, and the work engaged in by all counsel in the case, it was Retired Magistrate Judge Infante who made the settlement recommendation of the attorney fee amount to be agreed upon. The parties then had a set time period in which to accept or reject the Mediator's Proposal. This procedural history speaks of the arms' length, adversarial, and non-collusive nature of the negotiation of the fees being sought.

Equally telling here is that the amount of the fee award will have no bearing on the amount of relief afforded to the Class members.  The Settlement achieved a common benefit to the members of the Class in the reimbursement and future contribution to repair obligations imposed on MBUSA, but this relief, though a common benefit, is not presented in a common fund from which Plaintiffs' Counsel seek to be paid.  Instead, the fee award negotiated and being sought is to be paid by MBUSA *on top of* any relief afforded to the Class.  That means that, regardless of the fee awarded to Plaintiffs' Counsel, the amount of consideration offered to the Class will be unchanged.  There is no danger here that an award of fees to Plaintiffs' Counsel will adversely impact the recovery of the Class.  Conversely, any reduction of Plaintiffs' Counsel fee would inure to the benefit of MBUSA only, the named defendant accused of the alleged wrongdoing who has already agreed not to oppose the negotiated fee amount.

### A.   The Requested Fee Award That Was Proposed By Magistrate Judge Infante Is Fair And Reasonable Under The Percent-Of-The Benefit Value Approach.

In determining attorneys' fees, courts may opt for either the common fund or the lodestar method.[1]  *See Staton*, 327 F.3d at 972-974 (authorizing courts to consider non-monetary benefits

---

[1] Under the mandatory fee-shifting provision of the CLRA, the Court "shall award court costs and attorneys' fees to a prevailing plaintiff in a litigation" under that section. Cal. Civ. Code § 1780(e). "[A]n award of attorney fees to 'a prevailing plaintiff' in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by

as part of the value for the common fund if such benefits can reasonably be valued).  In the Ninth Circuit, the percentage-of-the-recovery method is the prevailing approach for cases where the value to the class is ascertainable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (surveying common fund cases in the Ninth Circuit).  This method is preferred because it most fairly correlates the compensation of counsel with the benefit conferred upon the Class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (describing the advantages of using the percentage method).

Although often referred to as the "percent of the fund" approach, the United States Supreme Court as well as the Ninth Circuit have made clear that the percentage approach applies with full force where, as here, there is a common benefit awarded to the Class without there being an actual common fund.  As the Ninth Circuit has explained:

> Under the common fund exception, courts originally permitted a plaintiff to recover attorneys' fees when his action in bringing suit resulted in the recovery or establishment of a fund in which others had the right to share. In *Mills v. Electric Auto-Lite Co.*, *supra* the Court expanded this doctrine, holding that there was no need for the creation of an actual fund as long as a "substantial benefit" of some kind had accrued to the enriched class and the court had 'jurisdiction over an entity through which the contribution can be effected.'

*Burroughs v. Board of Trustees of Pension Fund For Operating Engineers*, 542 F.2d 1128, 1132 (9th Cir. 1976) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396-97 (1970)).

In automobile defect class actions, courts frequently evaluate the reasonableness of a fee request by viewing it as a percentage of the total value of the repair obligation provisions conferred as a benefit upon the Class.  *See In re Toyota Motor Corp.*, No. 8:10ML-02151-JVS, 2013 U.S. Dist. LEXIS 94485, at *211 (C.D. Cal. June 17, 2013) (valuing the relief involving the installation of a break override system at $400 million); *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266, 305-307 (E.D. Pa. 2003) (valuing extended warranty coverage at approximately $20 million and applying a percentage method to determine fees); *Trew v. Volvo Cars of N. Am., LLC*, No. S-05-1379-RRB, 2007 U.S. Dist. LEXIS 55305, at *15 (S.D. Cal. July

a pre-trial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-179 (2007); *see also Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) (authorizing fees under CLRA when the plaintiff obtained relief sought by way of a class action settlement).

31, 2007) (valuing the extension of warranty replacing a throttle module at $24 million based on part replacement costs and applying a percentage method to determine fees).  Regardless of whether the percentage of the common benefit or the lodestar method is used to gage the reasonableness of the fee petition, the other approach may and should be used as a cross-check to confirm the soundness of the fee request. *See In re HPL Technologies, Inc.*, 366 F. Supp.2d 912, 915 (N.D. Cal. Apr. 22, 2005) (describing lodestar cross-check process).

The value of the Settlement benefit conferred upon the Class by Plaintiffs' Counsel more than supports the fee request.  As detailed in the accompanying Joint Declaration and summarized below, the requested fee and expense request amounts to only 9.84% of the value of the benefit conferred on the Class, well below the Ninth Circuit benchmark. *See* Joint Decl., at ¶¶ 19-22.

Courts have recognized that a car manufacturer's future repair obligation secured by a classwide settlement can be valued in a number of ways. *See O'Keefe*, 214 F.R.D. at 305-307 (evaluating multiple methodologies for valuation). An approach commonly accepted by Courts is simply to value the cost of replacing or repairing the alleged defective condition.  For example, in *Trew v. Volvo*, a case where the plaintiff's counsel sought fees under a catalyst theory, the court considered the value of an extended warranty providing repairs or replacements to the electronic throttle module (ETM) in the class vehicles. 2007 U.S. Dist. LEXIS 55305, at *15.  In *Trew*, the court valued the warranty as the replacement cost of the ETM, which was $1,000 per module. *Id*. The total value of the *Trew* warranty, based on 24,000 defective modules, was $24 million. *Id*.

Here, the reasonable repair value used as the baseline to judge the Settlement consideration is evident on the face of the Settlement Agreement itself.  Under the Settlement terms, for example, MBUSA has agreed that repairs of the balance shaft (for M272 engines) or idle gear (for M273 engines) will be valued at $ 4,000 if performed at independent repair stations.  If performed at MBUSA factory-authorized dealerships, these repair values will likely be more, as documented by the repair bills paid for by Plaintiff Seifi in having the balance shaft replacement done at an MBUSA factory authorized dealership. *See* Joint Decl., at ¶ 4.

Discovery in this case has shown that, thus far,

██ .  For such vehicles, the Settlement provides that, upon submission of an eligible claim under the Settlement, their owners would be eligible for reimbursement of either 37.5% or 70% of the reasonable repair value, depending on the age and mileage of the car at the time the repair was made.  A blended averaged rate, therefore, of 53.75% (i.e., the average of 37.5% and 70% reimbursement tiers allowed under the Settlement) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  But, this only accounts for the settlement consideration afforded to those vehicle owners who already had the balance shaft repair performed.

The Settlement also provides for near identical consideration to owners whose Class vehicles will have to have the repairs performed in the future.   Provided such owners have their repairs done at an MBUSA dealership within 10 years or 125,000 miles of the vehicle's in-service date (whichever comes first), the Settlement provides for an identical contribution level of 37.5% or 70% of the reasonable repair cost, depending on the age and mileage of the car at the time of repair.  There is no reason to conclude that future repairs of the vehicles will occur at any rate different than the rate of vehicles necessitating previous repairs.[2]  However, even if one conservatively assumed that the rate of future repairs during the Settlement term would be only 75 percent of the repair rates already performed, ██████████████████████████████████████████████████████████████████████████████████████  Further, even if one assumed that all such eligible vehicles would only qualify for the lesser 37.5% of reimbursement by the time their repair is undertaken[3], and one uses the same $5,000 average reasonable repair cost[4], that

---

[2] The more reasonable assumption is that because such vehicles are older, they are at a higher risk of experiencing the balance shaft failure if that has not happened already than vehicles whose balance shaft already failed.

[3] In fact, at least some Class Vehicles could qualify for the higher 70 percent reimbursement rate for future repair because 2007 model year Class vehicles that were placed in-service in mid or late 2015 and sustain a balance shaft failure that is replaced in mid to late 2015 (i.e., within 8 years of the vehicle's in-service date) would qualify for the 70 percent contribution rate from MBUSA, provided the repair was also done before the vehicle had exceeded 80,000 miles.  Nevertheless, recognizing that most future repairs eligible for contribution would qualify for the 37.5 rate of contribution under the Settlement, we have used that lower number exclusively in the Settlement value calculation, thereby yielding an overly conservative result.

yields a total Settlement value of ████████████████████████████████

Adding the past and future repair components of the Settlement, yields a total Settlement value of $ 25,161,125 ████████████████, not including the costs of Settlement Notice and Claims Administration that MBUSA is also obligated to pay for under the terms of the Settlement. Dividing the requested fee and expense award of $2.475 million to the foregoing settlement value yields a percent-of-benefit value of approximately 9.84 percent which, as detailed below, is well below the Ninth Circuit's 25 percent benchmark for reasonableness of a fee award.

**1. The Negotiated Attorneys' Fees Is Reasonable And Is Less Than Accepted Ninth Circuit Benchmarks For Similar Class Settlements.**

For cases using the percentage-of-the-award method, 25 percent of the overall figure is considered a "benchmark award for attorneys' fees." *Hanlon*, 150 F.3d at 1029. Here, the total value of the Settlement, using an analysis that employs conservative assumptions, is $ 25.16 million. The negotiated attorneys' fees, as a percentage of the Settlement value, therefore amount to 9.84 percent. This Court has remarked that attorney fee petitions, like the one at issue here, that amount to significantly less than the Ninth Circuit's 25 percent of the settlement value benchmark are inherently reasonable. *See In re Charles Schwab Sec. Litig.*, No. C-08-1510-WHA, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) ("By percentage, the federal fee award is 8.8 percent of the federal fund, and the California fee award is 11.7 percent of the California fund. Compared to the Ninth Circuit benchmark of 25 percent, these percentage-of-fund numbers represent very clearly how fair and reasonable these awards are.").

In comparison to the meaningful success achieved, Retired Magistrate Judge Infante has proposed, and Plaintiffs' Counsel have agreed, to a fair and reasonable amount in attorneys' fees. The requested award falls on the low end of percentage-of-the-recovery cases as "[i]n the Ninth Circuit particularly, the most common percentages awarded were 25 percent, 30 percent and 33 percent." *In re Toyota Motors*, 2013 U.S. Dist. LEXIS 94485, at *218 (citing a survey conducted

---

[4] All future repairs must be performed at MBUSA factory-authorized dealerships in order to qualify for contribution from MBUSA under the Settlement. Therefore, the $4,000 reasonable repair value that the Settlement ascribes to repairs done at an independent service station is inapplicable to future repairs.

by the plaintiffs' expert of Ninth Circuit cases from 2006 and 2007); *see also Vizcaino*, 290 F.3d at 1043 (surveying fee awards from dozens of large common benefit settlements in the Ninth Circuit, finding that most fell between 20-30%).  By reference to these authorities, the 9.84 percent of the benefit sought by Plaintiffs' Counsel as a fee recovery is undeniably reasonable.

### 2. The Requested Fee Award Is Also Comparable To, Or Less Than, Fee Awards In Other Similar Automotive Defect Class Actions.

The reasonableness of the fee award sought here is also independently confirmed by surveying fee awards entered by federal courts in other automotive defect class action settlements. Those awards show that fees comparable to, or greater than, those being sought by Plaintiffs' Counsel were approved in settlements that resulted in comparable or lesser relief for the class members.  *See, e.g., Parkinson*, 796 F. Supp. 2d at 1165 (awarding $ 3.7 million for settlement of defective flywheel transmissions where class members received 50%-100% in cash reimbursement of repair based on mileage at the time of repair); *Sadowska v. Volkswagen Group of Am.*, No. CV-11-00665-BRO, Dkt. No. 127 (C.D. Cal. Sep. 25, 2013) (awarding $2.2 million in fees to counsel who obtained a new warranty for transmission parts for the class); *Falk v. General Motors Corp.*, No. C07-0291-JCC (W.D. Wash. Nov. 7, 2008) (approving fees of $2.372 million on a settlement providing for a 7 year/70,000 mile warranty for repair and replacement of defective speedometer); *Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 (C.D. Cal. 2010) (awarding $2 million in fees for settlement authorizing partial reimbursement to class members for costs of replacing brake pads); *Alin v. Honda Motor Co.*, No. 08-4825 (D.N.J. 2012) (awarding $2.515 million in fees after counsel obtained settlement providing for reimbursement of certain repairs on an air conditioning part).

Whether referencing the 9.84 percent of the total value of the $ 25.16 million Settlement achieved, or comparing the total fees sought to fees awarded in other similar class action settlements involving alleged automobile defects, the negotiated fees fall well within the reasonable range, and should be approved.

### B. A Lodestar Cross-Check Confirms The Reasonableness Of The Fee Request.

A lodestar cross-check independently confirms that the negotiated fee is reasonable. Plaintiffs' Counsel total lodestar, as documented in the accompanying Graifman and Katriel

Declarations amounts to $1,883,627.50, plus $63,118 in costs or expenses.  Thus, this lodestar amount confirms the reasonableness of the requested fee previously calculated to be approximately 9.84 percent of the common Settlement benefit.  Applying a very modest 1.28 multiplier to the lodestar makes the fee award calculated by the lodestar method coincide with the fee amount calculated by resort to the percent-of-the-benefit approach.

The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation... by a reasonable hourly rate." *Bluetooth*, 654 F.3d at 941.  Here, Plaintiffs' Counsel have submitted detailed declarations attesting to their efforts to prosecute this action (*see* Joint Decl., at 1-13) and the total hours expended, hourly rates and experience of Plaintiff's Counsel. *See* Graifman Decl.; Katriel Decl.   The tasks performed by Plaintiffs' Counsel are also set forth in their respective declarations.  Moreover, the public docket and motion-intensive procedural history of this action independently provide a basis to discern the level of work that was involved in litigating this case to and through successful resolution by settlement after nearly three years of adversarial litigation.

By way of summary and for illustrative purposes only, some of the major filings that Class Counsel performed in this action are identified in the Table below:

| **DOCKET NUMBER** | **DATE FILED** | **FILING DESCRIPTION** |
| --- | --- | --- |
| 1 | 10/24/12 | Research, draft, and file Original Class Action Complaint |
| 18 | 2/25/13 | Research, draft, and file Opposition to MBUSA's Motion To Transfer Venue |
| 19 | 2/25/13 | Draft Declaration of Majeed Seifi In Support Of Opposition To Motion To Transfer Venue |
| 20 | 2/25/13 | Draft Declaration of Tracey Deakin In Support Of Opposition To Transfer Venue |

| 21 | 2/25/13 | Draft Declaration of Roy A. Katriel In Support Of Opposition To Motion To Transfer Venue |
| 24 | 3/27/13 | Draft and file Request For Judicial Notice In Support Of Opposition To Transfer Venue |
| 29 | 4/18/13 | Draft and File Opposition to Motion To Dismiss Class Action Complaint |
| 36 | 5/20/13 | Attend and argue at hearing on MBUSA's Motion To Dismiss Class Action Complaint |
| 46 | 7/05/13 | Draft and file First Amended Class Action Complaint |
| 56 | 8/28/2013 | Draft and File Opposition to Motion To Dismiss First Amended Class Action Complaint |
| 61 | 9/30/2013 | Attend and argue at hearing on Motion To Dismiss First Amended Class Action Complaint; Attend Case Management Conference |
| 67 | 12/04/13 | Draft and File Motion for Entry of Default |
| 70 | 12/04/2013 | Draft and File Reply In Support Of Motion For Entry Of Default |
| 78 | 03/24/14 | Attend Case Management Conference |
| 86 | 08/11/14 | Attend Case Management Conference |
| 92-94 | 10/31/14 | Draft and File Joint Discovery Dispute Submission and Accompanying Motion To File Documents Under Seal |

| | | |
|---|---|---|
| | | (referred To Magistrate Judge Jacqueline Corley) |
| 97 | 11/02/14 | Draft Declaration of Roy A. Katriel In Support Of Joint Discovery Submission (referred to Magistrate Judge Jacqueline Corley) |
| 98 | 11/03/14 | Attend Case Management Conference |
| 100 | 11/06/14 | Attend (telephonically) and argue discovery motion before Magistrate Judge Jacqueline Corley |
| 104 | 11/20/14 | Draft and File Supplemental Discovery Brief (referred to Magistrate Judge Jacqueline Corley), and accompanying Motion To File Documents Under Seal |
| 107 | 11/24/2014 | Draft and File Motion For Partial Summary Judgment As to Liability Or, In the Alternative, Summary Adjudication, Accompanying Declaration, and Accompanying Motion to File Documents Under Seal |
| 116 | 12/08/14 | Draft and File Motion To Strike |
| 121 | 12/15/14 | Draft and File Reply In Support of Motion For Partial Summary Judgment As To Liability Or, In the Alternative, Summary Adjudication |
| 131 | 12/30/2014 | Draft and File Plaintiffs Motion For Relief From Nondispositive Pretrial Order Of Magistrate Judge |

| 140 | 3/16/2015 | Draft and File Second Amended Class Action Complaint |
| 142 | 3/23/2015 | Draft and File Motion For Preliminary Approval Of Class Action Settlement |

Aside from, and simultaneously with, the foregoing filings, Class Counsel spent considerable time, effort, and resources in conducting and responding to discovery, including taking or reviewing depositions of MBUSA employees that were held across the country, as well as reviewing thousands of documents that were produced in discovery (including a significant volume of technical documents drafted and produced in their native German language). Plaintiffs' counsel also defended the depositions taken by MBUSA of Mr. Seifi, Mr. Deakin, and Ms. Seifi. There was also extensive written discovery, including interrogatories, documents requests, as well as requests for admission. Plaintiffs' Counsel propounded extensive written discovery not only on MBUSA, but also on dozens of independent factory-authorized MBUSA dealerships across California. *See* Joint Decl., at ¶¶ 7-9. Plaintiff also consulted with an expert metallurgist and materials science engineer to assist in prosecuting this action, and in contemplation of Plaintiffs' upcoming filing of their motion for class certification. *See* Katriel Decl., at ¶ 3.

Beyond that, Plaintiffs' counsel obtained and reviewed the allegedly defective parts that were extracted from Plaintiffs' vehicles for replacement. The named Plaintiffs themselves, with the oversight of Plaintiffs' Counsel, submitted their respective vehicles for inspection by MBUSA at agreed-upon factory authorized MBUSA dealerships.

On September 3, 2014, the Court ordered the parties to attend private Alternative Dispute Resolution ("ADR"). The parties, who previously had attended the telephonic conferences with the Court's ADR Program Staff Attorney several times without success, agreed to attend an in-person mediation session before Retired Magistrate Judge Edward A. Infante at the San Francisco offices of JAMS. Plaintiffs' Counsel prepared a detailed mediation brief submitted in advance of the mediation session. The November 2014 mediation did not result in a settlement. Nevertheless, over the ensuing weeks and months, the parties continued attending telephonic settlement conferences with Magistrate Judge Infante and MBUSA's counsel.

**1.   The Hours Expended and Hourly Rates Charged Are Reasonable.**

In making a determination as to the reasonableness of the hours comprising a lodestar, courts are to "focus on providing an award of attorneys' fees reasonably designed to fully compensate plaintiffs' attorneys for the services provided." *Horsford v. Board of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 395 (2005).   Courts do so by looking at "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, litigation tactics." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 445 (2000). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

As set forth in the accompanying Graifman and Katriel Declarations, the lodestar analysis here is comprised of 2479.1 hours of attorneys' billable time expended at hourly rates ranging from $350 to$795, excluding paralegal work that is billed at lesser hourly rates of $195.  These hours and rates are reasonable in light of the work performed, results obtained, and counsel's experience level and qualifications.   As a general matter, the total 2479.1 hours expended by Plaintiffs' Counsel (excluding paralegal time) compares favorably to hours approved in other class actions involving automobile defects.   Some of the hours expended were devoted to Plaintiffs' research and understanding of complex metallurgical and automotive engine concepts that were at play in analyzing the alleged balance shaft issues, which was critical to resolving the case.  *See Kearney v. Hyundai Motor Am.*, No. 09-1298, 2013 U.S. Dist. LEXIS 91636, **27-*28 (C.D. Cal. June 28, 2013) (crediting plaintiff's counsel for "analysis of complex technical systems" in awarding counsel's full lodestar for completed work).   Here, before the actions were filed, Plaintiffs' Counsel investigated and evaluated Class Members' complaints regarding the alleged defects in the Mercedes-Benz engines, which included an overlap between engine dynamics and materials or metallurgical technology.[5] *See* Joint Decl., at ¶ 9 (detailing technical nature of

---

[5] This is evidenced, for example, by citation in the pleadings to numerous technical papers published by the Society of Automotive Engineers ("SAE") that, *inter alia*, discuss the feasibility of using sintered steel in automotive engine components.  *See* Class Action Complaint, Dkt. No. 1, at ¶¶ 26-27.  Plaintiffs' Counsel researched, reviewed, and sought out these and other technical papers and sources to support the allegations made in their pleadings.  Such research continued throughout the pendency of the case.

discovery and subject-matter).

In light of the unique challenges faced by Plaintiffs' Counsel, the extensive settlement negotiations and post-settlement work is reasonable, and compares favorably to other cases.  For example, in *Browne v. American Honda Motor Co.*, No. 09-06750, 2010 U.S. Dist. LEXIS 144823, at *5 (C.D. Cal. Oct. 5, 2010), "class counsel contacted Honda not long after the action commenced to assess whether an early settlement would be possible. After several months of negotiation, the parties agreed to a settlement." Even though *Browne* settled soon after the filing of the complaint, the court nonetheless evaluated the activities in this case, and approved plaintiffs' counsel's reported 3,210 hours, most of which were devoted to pre-filing investigation and settlement negotiations and approval. *Id*.at *32-35.  Moreover, *Browne* centered on far less technologically complex allegations regarding premature wear on brake pad.  Other approved automotive class action settlements entailed a similar number of lodestar-approved hours that yielded settlement terms comparable to the ones secured here.  *See Sadowska*, *18 n.10 (court credited 3,115 hours to plaintiffs' counsel in a case with no contested motions).

Plaintiffs' Counsel expects to devote significant time to fielding Class Member inquiries even after final approval, as Plaintiffs' Counsel's obligation to the Class continues after final approval of the Settlement.  *Barboza v. West Coast Digital GSM, Inc.*, 179 Cal. App. 4th 540, 546-547 (2009) ("[C]lass counsel must represent all of the absent class members' interests throughout the litigation to the extent there are class issues."); Joint Decl., ¶ 26. Plaintiffs' Counsel have been responding to multiple phone calls per day from Class Members since the mailing of the Class Notice on September 9, 2013 and expect many more such inquiries in the future. *Id.*  In addition, Plaintiffs' Counsel must continuously monitor the performance of the Claims Administrator (particularly where, as here, a significant portion of the claims are expected to be filed well after settlement approval), and potentially tend to post-approval disputes that Class Members may have regarding the implementation of the future repair program. Based on the foregoing, the total number of hours billed or will be billed by Plaintiffs' Counsel is reasonable.

The hourly rates billed by counsel as part of their lodestar, ranging from $350 to $795 for attorneys, are also reasonable and are ones that have been approved by this and other courts in

similar class actions.  *See In re Nissan Radiator Transmission Cooler Litig.*, 2013 WL 4080946 at *17 (S.D.N.Y. May 30, 2013) ( where fees included attorney Gary Graifman's $785 hourly rate, noting that "[T]he Court finds the rates charged fall within the prevailing market rates 'for similar services by lawyers of reasonably comparable skill, expertise and reputation.'") (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)); *In re Navistar Diesel Engine Prods. Liab. Litig.*, No. MDL 2223, No. 11-C-2496, Dkt. No. 349, at 2 (N.D. Ill. Aug. 11, 2013) (Court "approves counsel's proposed hourly rates" in case where The Katriel Law Firm was member of Plaintiffs' Executive Committee and hourly fees ranged from $450 for associates to $750 for lead counsel), *see* Dkt. No. 256-2, at 44).

California federal and state courts have approved hourly rates in this range for plaintiffs' law firms in California. *See, e.g., Kearney*, 2013 U.S. Dist. LEXIS 91636, *24 (C.D. Cal. June 28, 2013) (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co.*, C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour, associate rates between $355 and $405 per hour); *Create-A-Card, Inc. v. Intuit Inc.*, No. 07-6452 WHA, 2009 WL 3073920, at *2 (N.D. Cal. Sept. 22, 2009) (awarding fees in 2009 calendar year based on hourly rate of $700 for partner and $315 for junior associate); *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV-07-2633, 2008 WL 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (awarding fees in calendar year 2008 based on hourly rates of $750 for lead attorney and $425 for senior associate); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-00096019) ($695 to $750 an hour for partners; $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) ($700 an hour for partners; $475 an hour for associates); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20, 2010, No. CV 07-4480) ($655 to $750 an hour for partners; $300 to $515 an hour for associates); *Luquetta v. Regents of Cal.*, CGC-05-443007 (San Francisco Super. Ct.) (approving 2012 partner rates between $550 and $850 per hour);

Plaintiffs' Counsels' rates are thus reasonable and should be approved.

### 2.  The Modest Lodestar Multiplier Is Also Justified.

After determining the lodestar, the Court must determine whether there should be an

enhancement or reduction to the lodestar by applying a multiplier. Courts within the Ninth Circuit have also considered additional factors in considering the fairness of the award, including the application of a multiplier. These factors include: (1) the results achieved; (2) the risks of further litigation and the complexity of the case; (3) the contingent nature of the fee; (4) awards made in similar cases; and (5) a percentage cross-check. *Vizcaino*, 290 F.3d at 1048-50; *accord In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551 (2009). While no single factor is determinative of reasonableness, these factors also support Plaintiffs' fee request. *See Vizcaino*, 290 F.3d at 1049-1050 (finding by Ninth Circuit that a multiplier of "3-4 range" is common after conducting a survey of cases). This Court has referred to the Ninth Circuit survey of multipliers to note that lodestar multipliers of up to 4.0 are "typically awarded" in common fund cases. *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 95496 (N.D. Cal. Dec. 21, 2007) (summarizing the *Vizcaino* table to conclude that a 1.0 to 4.0 multiplier is "typically awarded in common-fund cases."). Here, the multiplier being sought if the Court were to rely on the lodestar method amounts to a modest 1.28 multiplier.

Not only has the Settlement resulted in an excellent outcome for the Class, but Class Counsel litigated the case entirely on a contingent fee basis, foregoing any payment or assurance of payment for nearly three years. That uncertainty poses a sufficient risk, in and of itself, to warrant a lodestar multiplier, but the risk here was aggrandized from the routine class action case. The reason is that counsel for MBUSA informed Class Counsel early on, that not only would MBUSA vigorously oppose any relief and defend the case, but MBUSA intended to avail itself of the reverse fee-shifting provision of the CLRA to seek fees *against* Class Counsel in the event MBUSA defeated the CLRA claim. Thus, MBUSA's Class Counsel's wrote to Class Counsel early on that, "[i]f plaintiffs insist on pressing the claims described in your May 23, 2013 letter, . . . . MBUSA will defend itself accordingly, and reserves its right to seek its reasonable attorneys' fees and costs under the fee shifting provisions of the CLRA and all other remedies available to it." Dkt. No. 46-17 [MBUSA Resp. To Plaintiffs' CLRA Demand Ltr. (dated Jun. 24, 2013)], at 2.

That risk of non-payment, aggrandized as it was by MBUSA's express representation that it reserved its rights to seek fees from Class Counsel if Class Counsel persisted in pressing the

CLRA suit, was onerous enough to justify the modest lodestar multiplier being requested here under the lodestar approach.  That is particularly so when one further considers that, by the time Class Counsel filed this suit, a prior attempt at suing MBUSA based on the same alleged balance shaft defect had failed and been dismissed by another federal district court.  *See Suddreth,* 2011 WL 5240965.  Likewise, plaintiffs in a related federal class action that had been pending in Louisiana federal court reportedly settled the case on only an individual basis.  *See Dugas v. Mercedes-Benz USA, LLC*, No. 6:12-cv-2885 (W.D. La), Dkt. No. 179.   Class Counsel's decision to persist in this litigation, where prior attempts had failed or been abandoned, and where Class Counsel risked not only non-payment but being held responsible for MBUSA's fees, bespeaks of the inordinate risks Class Counsel undertook in litigating this action through to successful settlement.   Indeed, just to account for the risk of non-payment brought about by the contingent nature of the fee arrangement, this Court and the Ninth Circuit have approved of awarding a 2.0 multiplier to account for the "return expected by lawyers." *Fadhl v. City and County of San Francisco*, 859 F.3d 649, 650 (9th Cir. 1988); *see also Crommie v. Public Utils. Comm'n*, 840 F. Supp. 719 (N.D. Cal. 1994) (applying a 2 multiplier for contingent risk to entice "competent counsel" to take on statutory cases).

In light of the foregoing, a 1.28 lodestar multiplier is justified and should be approved.

## III.   THE COSTS AND EXPENSES FOR WHICH REIMBURSEMENT IS SOUGHT ARE REASONABLE, AND SHOULD BE APPROVED.

As detailed in the accompanying Katriel and Graifman Declarations, Plaintiffs' counsel expended $ 63,118 in reasonable and necessary expenses to litigate this matter.  *See* Joint Decl., at ¶ 33.   These expenses were incurred for such tasks as traveling to and from Court appearances, depositions, and the mediation, as well as for court reporters, Court transcript costs, copying, mediator fees, and retainer fees paid to the expert metallurgist, as well as for Westlaw fees for legal research done specifically for this case.   For these expenses, the rule is that prevailing parties may recover, as part of statutory attorneys' fees, "litigation expenses . . . when it is 'the prevailing practice in the given community' for lawyers to bill those costs separate from their hourly rates." *Trustees. of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland*

*Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted).   The foregoing categories of expenses are assuredly the type of expenses that attorneys in California bill their clients when the costs are incurred.  *See Johnson v. General Mills, Inc.*, No. 10-00061-CJC, 2013 U.S. Dist. LEXIS 90338, at *20-*21 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)) (both courts awarding the requested expenses, including for expert witnesses, mediation, photocopying and computerized research).

The $ 63,118 in cost and expense reimbursement is reasonable and should be approved.

## IV.      THE INCENTIVE AWARDS SOUGHT SHOULD ALSO BE APPROVED.

A payment of an incentive awards to class representatives is permissible and often awarded as compensation for an individual undertaking the risk and expending time in working with plaintiffs' counsel to advance Class Members' interests.  *See Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks incurred during the litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010).

Here, MBUSA has agreed, subject to Court approval, to pay $ 9,000 each to Plaintiffs Majeed Seifi and Tracey Deakin, who have been the named plaintiffs in this action since its inception in 2011, as well as a $3,000 incentive award to Plaintiff Ronald Reyner, who was added to the case as part of the Second Amended Complaint.  *See* Settlement Stip., Dkt. No. 142-2, at ¶ 9.1.  Messrs. Deakin and Seifi contributed significantly, at their own expense, to the successful resolution of this case.  Each sat for a day-long deposition by MBUSA's counsel. *See* Joint Decl., at ¶ 8.  Each searched for and produced extensive documents responsive to MBUSA's written discovery. *Id*.   Each provided their respective vehicle for inspection by MBUSA.  Each also had their spouse sit for a deposition. *Id*.  Each also secured the parts extracted from their cars for the balance shaft replacements so that the replaced parts could be examined by Plaintiffs' expert metallurgist.  In addition, both of these named plaintiffs met with counsel, had frequent telephone conversations with counsel, and executed various declarations necessary to prosecute the action. The incentive award they seek is clearly justified and is in line with incentive awards approved by this Court. *See Bellinghausen v. Tractor Supply Co.*, No. 13-cv-2377-JSC, 2015 WL 1289342, at

*17 (N.D. Cal. Mar. 20, 2015) (awarding named class plaintiff $15,000 incentive award "in light of the time and effort Plaintiff expended for the benefit of the class."); *Navarro v. Servisair*, No. 08-cv-2716, MHP, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27, 2010) ("Based on this active participation, an incentive award of $10,000.00 is reasonable.")

Likewise, plaintiff Ronald Reyner came forward to represent the members of the Class who own an M273-engine equipped Class Vehicle.  *See* Second Amended Complaint, at ¶ 8.  The Court had previously suggested that such a separate plaintiff owning an M273 vehicle would possibly be required as the case progressed beyond the pleadings to the certification stage.  *See Seifi v. Mercedes-Benz USA, LLC*, No. 12-cv-5493-TEH, 2013 WL 5568449, at *7 (N.D. Cal. Oct. 9, 2013) (Henderson, J.,) (holding that name plaintiffs Seifi and Deakin who owned only M272 engine-equipped vehicles could not pursue a CLRA money damages claim on behalf of M273 engine-equipped vehicle owners but noting that "[h]ad one of the Plaintiffs owned a vehicle with the M273 engine, the result might be different.").  Mr. Reyner met with counsel, searched for records and documents, and lent his name to the Second Amended Complaint.  Without his participation, a settlement encompassing the rights of M273 vehicle owners may have been subject to attack.  His relatively modest incentive award request of $ 3,000 should also be approved.  *See Hopson v. Hanesbrands Inc.*, No. 08-cv-0844-EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable.").

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs' motion should be GRANTED.

1

2  Dated: June 12, 2015                    Respectfully submitted,

3

4                                          ____/s/ Roy A. Katriel_____
                                           Roy A. Katriel (SBN 265463)
5                                          THE KATRIEL LAW FIRM
                                           4225 Executive Square, Suite 600
6                                          La Jolla, CA 92037
                                           Telephone: (858) 242-5642
7                                          Facsimile: (858) 430-3719
                                           e-mail: rak@katriellaw.com
8

9                                          Gary S. Graifman, Esq. (*pro hac vice*)
                                           KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
10                                         210 Summit Avenue
                                           Montvale, NJ 07645
11                                         Tel | (201) 391-7000
                                           Fax | (201) 307-1086
12

13                                         *Counsel for Plaintiffs and the Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28