Roy A. Katriel (SBN 265463)
THE KATRIEL LAW FIRM
4225 Executive Square, Suite 600
San Diego, California 92037
Telephone: (858) 242-5642
Facsimile:  (858) 430-3719
e-mail: rak@katriellaw.com

Gary S. Graifman, Esq. (*pro hac vice*)
KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.
210 Summit Avenue
Montvale, NJ 07645
Tel:    (201) 391-7000
Fax:   (201) 307-1086
E-mail: ggraifman@kgglaw.com

Counsel for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MAJEED SEIFI AND TRACEY DEAKIN, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | **Case No. 3:12-cv-5493-TEH**<br><br>**JOINT DECLARATION OF GARY S. GRAIFMAN AND ROY A. KATRIEL IN SUPPORT OF SETTLEMENT APPROVAL AND AWARD OF ATTORNEYS' FEES, REIMBURSABLE EXPENSES, AND INCENTIVE AWARDS**<br><br>Hearing Date: August 17, 2015<br>Time:            10:00 am<br>Judge:          Hon. Thelton E. Henderson<br>Courtroom:    12<br><br>**REDACTED PUBLIC VERSION –** |

No. 3:12-cv-5493-TEH
*Seifi et. al .v. Mercedes-Benz USA, LLC*

GARY S. GRAIFMAN AND ROY A. KATRIEL, declare pursuant to 28 U.S.C.§ 1746 as follows:

1. Gary S. Graifman is a shareholder of the law firm Kantrowitz Goldhamer & Graifman, P.C. ("KGG"). Roy A. Katriel is a principal owner of the law firm Katriel Law Firm ("KLF"). Each firm was appointed as interim co-lead counsel in the above action pursuant to the Preliminary Order of this Court dated April 8, 2015 (Docket No. 149) (both firms are referred to herein as "Co-Lead Counsel" or "Plaintiffs' Counsel"). The Preliminary Approval Order preliminarily approved the within class action settlement, conditionally certified the class and approved the notice to be sent to Class Members.

2. Co-Lead Counsel were directly involved in, responsible for, and have personal knowledge regarding all aspects of the within litigation (the "Litigation"). Counsel submit this declaration in support of Plaintiffs Counsel's motion for an award of attorneys' fees and reimbursement of expenses and approval of payment of incentive awards to Plaintiffs and in support of final approval of the proposed settlement as set forth in the Settlement Agreement filed March 23, 2015 (the "Settlement Agreement")1, resolving all claims in the Litigation (the "Settlement") against Defendant Mercedes-Benz U.S.A., LLC ("MBUSA").2

I.   INTRODUCTION AND OVERVIEW

3. This action and the Settlement involve present and former owners and lessees of MBUSA vehicles which contain the M272 and M273 engines bearing certain specific serial

---

1 Unless otherwise defined herein, capitalized terms have the same meaning as set forth in the Settlement Agreement which has been previously filed with the court as Exhibit "1" to the Declaration of Roy Katriel in Support of Preliminary Approval of Settlement (Docket "Dkt" No. 142). A copy is also annexed hereto as Exhibit "1."

2  The papers in Support of Final Approval of the Settlement and in Support of Certification of the Settlement Class are not due to be filed until August 3, 2015 under the Preliminary Approval Order, Para. 19. However, to the extent discussion of the Litigation and Settlement are required as background for this motion for an award of counsel fees and reimbursement of expenses, those are set forth in this submission as well.

1

numbers between the model years 2005 to 2007 (the "Class Vehicles").[3] As alleged in the Second Amended Complaint (the "SAC"), which is the current, operative complaint, the Class Vehicles suffer from a defect in the balance shaft gears (for M272 engines) and the idle gear (in M273 engines)(also referred to as the "Subject Sprockets") in that the gears, during that period of production, were made out of a sintered steel which was not sufficiently sturdy enough to withstand the pressure involved (the "Defect" hereinafter).  Therefore such gears would wear out prematurely, excessively, without warning and ultimately if left unchecked, break apart in the engine (See SAC, ¶1).  As a result of the alleged Defect, the entire engine must be removed, the balance shaft and gears taken out, replaced, certain timing materials reconfigured and then the engine reinstalled in the vehicle.  Such repairs involve approximately 25 hours of labor and involve a job for which labor and parts can run on average approximately $4,000 to $6,000 retail. MBUSA developed a specific protocol to diagnose and replace the Subject Sprockets involved which was embodied in the document distributed to its dealers labeled as "Local Information Document LI 03.30-P-050027." (Settlement Agreement at ¶1.13).

   4. Plaintiff Majeef Seifi ("Seifi"), a California resident, was the owner of a 2006 Mercedes ML3560 equipped with one of the relevant M272 engines.  When Seifi's vehicle had approximately 70,000 miles, he was required to repair the balance shaft at a cost of approximately $6,000 (SAC, ¶5).  He was required to pay for the repair because the then-current warranty, to which Mercedes was holding firm, was limited to 50,000 miles or 4 years.  Similarly, Plaintiff Tracey Deakin ("Deakin") was the owner of a Mercedes 2006 ML350 which suffered the problem

---

[3] The Class Vehicles are identified in the Settlement Agreement at Sections 1.23 and 1.27. Specifically, they include Class Vehicles with the M272 and M273 engines bearing serial numbers up to 2729..30 468993 or 2739..30 088611.  These include M272 engine models: ML350, SLK280/300, SLK350, C230, C280, C350, C350 4Matic, C280 Wagon 4Matic, CLK350, CLK350 (Cabriolet), E350, E350 4matic, E350 Wagon, R350, R350 4Matic, and include M273 engine models: ML550 4Matic, GL450 4Matic, GL550 4Matic, CLK550, CLK550 (Cabriolet), E550, E550 4Matic, CL550, CLS550, S550 4Matic and SL550.

at approximately 102,000 miles. The Deakin Class Vehicle also required the balance shaft gear repair at a cost of approximately $7,000 (this amount also included replacing the cam sensors and adjusting the cam timing to determine if that might resolve the problem he was experiencing). Again, Mercedes refused to cover the repair under warranty (SAC, ¶6).  Plaintiff, Ronald Reyner, similarly owned a 2007 Mercedes GL450, which had the M273 engine, and had the idle gear problem requiring the repair at 92,000 miles. Again, Mercedes refused to cover the repair under warranty (SAC, ¶8). As a result of the issues faced by Mssrs. Deakin and Seifi, they contacted Co-Lead Counsel herein, KGG and KLF, in or about 2012. The initial complaint herein was filed on October 24, 2012 (Dkt. No. 1) asserting class claims on behalf of owners or lessees of the MBUSA Class Vehicles containing the Defect.

5. After the filing of the initial complaint in the Northern District of California, Defendant through its counsel sought by motion, to have the within action transferred to New Jersey, where MBUSA maintains its principal offices and where a prior action had been filed and dismissed and was no longer pending. (Dkt. No. 12). After briefing and argument on the motion, the Court entered an order denying the motion on April 2, 2013 (Dkt. No. 27).  Defendant had also initially filed motions to dismiss the complaint and to strike class allegations concurrent with its Motion to Transfer (Dkt. No. 9). Those two dispositive motions, however, had been stayed pending a determination on the Motion to Transfer.  Thus, upon the Motion to Transfer being denied, Co-Lead Counsel filed opposition papers to the Motion to Dismiss and Motion to Strike Class Allegations (Dkt. No. 29-30). After the motions were argued (Dkt. No. 36), the Court rendered its Order and Opinion denying the Motion to Dismiss in part and granting it in part, and denying the Motion to Strike Class Allegations (Dkt. No. 42).

6. Thereafter, Plaintiffs filed their First Amended Complaint ("FAC") on July 5, 2013 (Dkt. No. 46) which clarified and expanded on some of the prior allegations.  Again, Defendant

3

filed a Motion to Dismiss the FAC on August 2, 1013 (Dkt. No. 49). After Plaintiffs fully briefed the motion (DKt. No. 56) and after oral argument, the Court entered its Order and Opinion which denied in part the Motion to Dismiss and granted the motion in part. In particular, the Court granted the Motion to Dismiss with regard to the breach of express warranty claim, finding that while Plaintiffs pled procedural unconscionability, they could not plead substantive unconscionability sufficient to extend the durational limits of the express warranty (which was 50,000 miles or 4 years, whichever came first). Thus, any breach of warranty claims which were based on the defect occurring after 50,000 miles or 4 years, could not be asserted by Plaintiffs. However, the Court sustained the CLRA claims for money damages but limited them to the putative M272 class members only because the then-plaintiffs, Seifi and Deakin both had M272 vehicles. However, the Court granted that portion of the motion (*i.e.*, relating to the M273 vehicles) without prejudice, allowing Plaintiffs to amend in the event a class representative with an M273 engine asserted claims relating to those Class Vehicles.

7. Thereafter, MBUSA answered the FAC and the parties commenced discovery. During discovery, Defendant produced thousands of pages of documents. However, this occurred only after numerous meet and confers over discovery disputes were held by the parties and Plaintiffs drafted motions to compel, which were initially not filed due to interim agreements the parties reached.4

8. During discovery, Plaintiffs were also required to answer interrogatories, answer supplemental interrogatories, produce documents and, in the cases of Mssrs. Seifi and Deakin, prepare for and sit for full-day videotaped depositions at the offices of MBUSA's counsel in San Francisco. In addition, the Class Vehicles of both Seifi and Deakin were required to be produced

---

4 Eventually, a motion to compel was filed by Plaintiffs and fully briefed and argued with respect to certain issues. Such motion was filed after the Court appointed Magistrate Judge Jacqueline Scott Corley to oversee the remaining discovery disputes (See Dkt. No.'s 92 -100).

at a time and place designated by Defendant for physical inspection by MBUSA's expert.  Plaintiff Seifi's wife was also deposed and Plaintiff Deakin's wife was noticed for a deposition and prepared for same which was cancelled when the parties agreed to participate in mediation.

9. In discovery, Defendants produced engineering documents, warranty documents, consumer complaint documents, instructional videos, materials and specifications documents and emails between and among certain relevant personnel.  In addition, although MBUSA objected to production of documents from its parent company, Daimler A.G., during the course of and in the context of the Litigation, certain documents were eventually produced as part of confirmatory discovery herein.  In addition, Plaintiffs took the deposition of Daniel Edwards, who had been MBUSA's Manager of Warranty Services and Warranty Training Specialist and a long-time senior management level employee with MBUSA.  Edwards was produced as a 30(b)(6) witness by MBUSA on November 19, 2014.

10. After conducting extensive document review, Co-Lead Counsel believed that a sufficient basis existed to move for partial summary judgment on certain limited issues relating to liability.  Thus, on November 24, 2014, Plaintiffs filed a Motion for Partial Summary Judgment (Dkt. No.'s 106 to 108).

11. On November 25, 2014, concurrent with the filing of the Motion for Partial Summary Judgement, the parties commenced mediation through JAMS in San Francisco before an experienced mediator, retired Magistrate Judge Edward A. Infante.[5]  The parties engaged in multiple mediation sessions, a series of communications back and forth through the auspices of Judge Infante, and the transmittal of various information.  On or about January 27, 2015, the parties reached agreement as to the claims with respect to the Defect.  The agreement was

---

[5] During the conduct of settlement discussions and after the summary judgment motion was briefed, the Court adjourned oral argument on the summary judgment motion in light of the parties' progress in connection with the mediation being conducted before Judge Infante. (e.g., See Dkt. No. 138).

subsequently memorialized in the Settlement Agreement which was filed herein on March 23, 2015 together with the Motion for Preliminary Approval (Dkt. No. 142, Settlement Agreement, at Exhibit 1 of Decl. of Roy A. Katriel in Support of Plaintiff's Motion for Preliminary Approval).

12. On November 16, 2015, Plaintiffs filed the Second Amended Complaint which included as a Plaintiff and class representative, Ronald Reyner, owner of a Class Vehicle with an M273 engine. Thus, the SAC asserted claims on behalf of M272 and M273 vehicle owners. The SAC also asserted claims under the California UCL, the California CLRA and the New Jersey Consumer Fraud Act on behalf of a nationwide class.

13. In addition to the action being litigated by Co-Lead Counsel herein, after this action was initiated, a separate action was filed in Louisiana by unrelated parties, entitled *Dugas, et ano. v. MBUSA North America, Inc., et al*. ("*Dugas* Action"). The *Dugas* Action was pending in the W.D. Louisiana. As of this filing, Co-Lead Counsel has been informed and believes that MBUSA has settled the claims of the *Dugas* plaintiffs individually and that action is not currently pending. Dugas' counsel in the Louisiana action have agreed to defer to and support the Settlement herein.

**II.    SETTLEMENT NEGOTIATIONS AND SETTLEMENT**

14. As set forth, *supra*, serious settlement negotiations were opened in or about November 2014, after the parties engaged in substantial discovery and motion practice. These in-person negotiations conducted at arms-length were intensive, and at times, contentious. MBUSA, during the Litigation and in the Settlement has not acknowledged that any replacement or repair which may be needed to the balance shaft gear and idle gear on a Class Vehicle, particularly those with mileages higher than the 50,000 warranty, was the result of any Defect. In fact, MBUSA has contended, and would no doubt continue to contend, that any failure of the Subject Sprockets is

the result of normal and expected wear and tear that vehicles experience over time and that timely maintenance of the vehicles was essential to the integrity of the Subject Sprockets.

15. Substantive settlement negotiations proceeded without discussion of Co-Lead Counsel's fees and expenses. Only after a settlement in principle was reached regarding the relief to the Class – after successful mediation before an experienced mediator who has conducted scores of class action settlement negotiations-- did the parties attempt to negotiate an agreement with respect to Co-Lead Counsel's fees and expenses.

16. After several in-person meetings and countless communications, the Settlement Agreement was signed in March 2014 and filed with the Court on March 23, 2014. After approximately two and one half years of contentious litigation and settlement negotiations, Plaintiffs have achieved an exceptional result for Settlement Class Members. This Settlement not only benefits Class Members who have already had their Class Vehicles' balance shaft gear or idle gear replaced, but also stands to benefit Class Members whose vehicles may experience the Defect in the future. This Settlement provides significant monetary relief, which can be as much as several thousands of dollars for certain Settlement Class Members. The repairs ordinarily cost between $4,000 to $6,000. Thus, based on these estimates and the settlement benefits described immediately below, each Class Member who experienced the Defect within 10 years or 125,000 miles has saved or will save in the future, anywhere from $1,500 to $4,200.

17. The nationwide settlement will resolve all claims before this Court. Under the terms of the Settlement, MBUSA agrees to:

7

- Make the repairs through Authorized Mercedes-Benz Dealers, if and as needed, arising to the Subject Sprockets as a result of the Defect in 2005-2007 model year Class Vehicles, pursuant to the L.I. repair protocol (Settlement Agreement, ¶ 4.2). For those Class Vehicles which require balance shaft or idle gear replacements between 50,000 miles or 4 years (whichever occurs first)6 and 80,000 miles or 8 years (whichever occurs first), MBUSA will cover seventy percent (70%) of the reasonable repair amount (Settlement Agreement, ¶ 4.2). For balance shafts or idle gears needing replacement where the repair date is between 80,000 miles or 8 years (whichever occurs first) and 125,000 miles or 10 years (whichever occurs first), MBUSA will cover thirty-seven and a half percent (37.5%) of the reasonable repair costs;

- Reimburse to Class Members who have previously paid for qualified repairs of the balance shaft sprockets (M272 engines) or idle gears (M273 engines), provided such vehicle engines are within the serial numbers containing the Subject Sprockets, an amount which equals either (i) seventy percent (70%) of the reasonable repair amount or (ii) thirty-seven-and-a-half percent (37.5%) of the reasonable repair amount. The seventy percent (70%) reimbursement amount applies if the repair was made prior to the vehicle having 80,000 miles or being in service for more than 8 years (whichever occurs first). The thirty-seven-and-a-half percent (37.5%) reimbursement amount applies if the repair was done after the vehicle had 80,000 miles or was in service for more than 8 years (whichever occurs first) but before the vehicle had 125,000 miles or was in service for more than 10 years (whichever occurs first). (Settlement Agreement, ¶¶4.4- 4.6). The term "reasonable repair amount" is the amount of the repair for the balance shafts and idle gears if done at an Authorized Mercedes–Benz Dealer and if done at an Independent Service Provider (*i.e.,* not an Authorized Mercedes-Benz Dealer), the "'reasonable repair amount' will be the lesser of the actual amount charged or $4,000." (Settlement Agreement, ¶ 4.7);

- Pay the costs for all notice and administration expenses, including providing notice of the proposed settlement by direct mail to Class Members (Settlement Agreement, ¶6.2).

- Pay Co-Lead Counsel as and for its contingent fee, the counsel fees and expenses agreed upon in the Settlement Agreement of $2,475,000, subject to approval of the Court. (Settlement Agreement, ¶9.1 – 9.4).

- Pay to the three (3) Plaintiffs an incentive award of $21,000 (Settlement Agreement, ¶ 9.1).

- The counsel fees, expenses, administrative and notice costs, and the incentive awards, are to be paid directly by Defendant and will not reduce any of the amounts to be paid to Class Members under the Settlement.

---

6  For Class Vehicles which required the repair prior to either 50,000 miles or 4 years, whichever occurred first, such repairs were covered under the Basic Warranty and entitled to 100% coverage thereunder.

8

18. In addition, despite there being over 291,854 vehicles in the class and approximately 579,578 Notices of Pendency of Class Action Settlement sent directly to potential Class Members (See Declaration of Lacey Racines re Notice Procedures, filed May 28, 2015, Dkt. No. 155 ("Racine Decl.")), and a website established to provide internet notice of the settlement, only eight (8) Class Members have sought to object to the Settlement to date.7

19. Plaintiffs' Co-Lead Counsel estimates the value of the Settlement's benefit on a class wide basis to be approximately $25,161,125 plus the costs of Notice and Administration. According to confirmatory discovery, approximately 291,854 Class Vehicles were sold (*e.g.*, 2005-2007 model year vehicles with the M272 and M273 engines containing the relevant serial numbers).8 Confirmatory discovery confirmed that there were 5,680 claims made *during the Warranty Period* (*e.g.*, vehicles fixed under warranty would have had the Defect during the express warranty period, which covered vehicles up to 50,000 miles or 4 years, whichever occurred first). Daniels Decl., ¶6. However, because the Defect manifests more frequently after the warranty period ends, the post-warranty failures are higher. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, this does not include *future repairs* still to be made under the settlement to

---

7 Because the time period to object does not end until June 27, 2015, Plaintiffs do not address in detail any of the objections currently on file in this submission but will do so in their submission to be filed on or before August 3, 2015 pursuant to the Preliminary Approval Order. In addition, Plaintiffs' Counsel reserve the right to oppose any of the Objections on the grounds that they have not been properly or timely filed pursuant to the Preliminary Approval Order.

8 This information was provided by MBUSA as part of confirmatory discovery in the Confirmatory Discovery Declaration of Daniel Edwards, sworn to May 20, 2015 ("Daniels Decl.")).

9 This information was provided by MBUSA as part of confirmatory discovery in the form of a CONFIDENTIAL SUPPLEMENTAL Declaration of Daniel Edwards, sworn to May 20, 2015 ("Daniels CONFIDENTIAL Decl.")). Accordingly, this information is redacted from the public

9

1 | vehicles between 50,000 miles and 125,000 miles which will be entitled to recoupment and, therefore, the number of failures will continue in the future.

20.     With respect to the ▓▓▓▓▓ done out-of-warranty to date, the average cost to consumers for the repair is $5,000, and, as to those, the reimbursement amount herein will be either 70% or 37.5% of that amount.  53.75% is the blended rate of the two reimbursement tiers, when one combines the 70% and 37.5% reimbursement tiers, assuming there are an equal number of reimbursement claims for each of these two categories.

21.     $5,000 x 53.75% equals $2687.50 which is the average recoupment amount for each claim made. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This does not include the fact that, under the Settlement, future repairs will be made, after final approval of the Settlement.  Assuming that the future repairs equal even three-quarters (e.g., 75%) of the past out-of-warranty repairs, ▓▓▓ and further assuming all of those are in the lower reimbursement tier of 37.5%, the value of future repair savings for class members will be $8,643,750 ▓▓▓▓ ▓▓▓  Thus, the value of the Settlement, taking into account past out-of-warranty repairs and future out-of-warranty repairs, is ***$25,161,125.***

22.     The fees and expenses sought to be approved herein, which are $2,475,000, represent only approximately 10% of the estimated full value of the Settlement herein.

23.     Notably, because the reimbursement value of each claim is significant, Class Members are motivated to file claims herein.  Co-Lead Counsel's past experience with similar claims administration in auto defect settlements confirms that there will be a robust claims participation herein.

24.     The Notice program used in this Settlement has been significant and reasonably calculated to provide the best practicable notice.  Under the terms of the Settlement, the Claims

---

filed version of the Joint Declaration and Brief.

10

Administrator was to use the same sources which car manufacturers generally use when engaging in a government-mandated recall program (Settlement Agreement, ¶¶5.1-5.3).  Specifically, MBUSA utilized a third-party to search the vehicle registration records in all fifty states utilizing the vehicle identification numbers ("VIN") for all Class Vehicles.  By using this method, the parties were able to identify both the current and former owners/lessees of the Class Vehicles.  Over 579,578 individual notices were then sent by first class mail to these identified Class Members (Racine Decl. ¶11).  In addition, a settlement website was created and maintained for Settlement Class members on which they could view the Settlement Notice, the Claims Form, the Settlement Agreement and ask questions via email (Racine Decl. ¶12).  In addition, this website offers the ability for potential class members to verify if their VIN is part of the Class Vehicles and, if so, to create a personalized Claim Form to print and submit via mail (Racine Decl., ¶12).  The notice also provides Class Members with an email contact for Co-Lead Counsel.  Co-Lead Counsel's respective offices have already handled scores of inquiries about the Settlement and claim process and expect to respond to hundreds of inquiries during the Claims Period.

25.     In addition to reimbursement, the terms of the Settlement provide that Class Members who have the problem now or in the future can still have the work done at MBUSA's expense, subject to the time and mileage co-pays.  Therefore, if a Class Vehicle owner experiences the Defect in a year from now and brings the vehicle to the Authorized Mercedes-Benz Dealer for repair, the Class Member can get the repair done and be reimbursed (i) 70% of the reasonable repair cost if the vehicle is below the 80,000 miles and 8 years threshold; and (ii) 37.5% if the vehicles is between the 80,000 mile or 8 year threshold and the 125,000 mile and 10 year threshold (Settlement Agreement, ¶4.1 – 4.3).  Thus, this continuing benefit allows for extended-warranty repairs at a reduced cost for Class Vehicles already beyond the stated express warranty limit of 50,000 miles or 4 years.

26. The telephone numbers and email addresses of Co-Lead Counsel were included on the Settlement Notices disseminated to the Settlement Class Members. As a result, during the Claims Period, after dissemination of the Settlement Notice, Co-Lead Counsel expect to be contacted by hundreds of Settlement Class members who seek direction on whether they qualify to make a claim and how to make a claim. In fact, Co-Lead Counsel has already been very active in providing responses to and interacting with Settlement Class Members.

**PLAINTIFFS' COUNSEL'S FEE AND EXPENSE APPLICATION**

27. To date, Co-Lead Counsel, engaged in significant legal work to bring this matter to a successful conclusion. Annexed hereto as Exhibits "2" and "3" are the Declarations of Gary S. Graifman and Roy A. Katriel, providing more particularized detail as to the work engaged in, the specific lodestar information and providing itemization of the expenses incurred by each of their respective firms.

28. Plaintiffs' Counsel undertook the prosecution of the within Litigation entirely on a contingency fee basis and assumed significant risks in bringing these claims. From the outset, Co-Lead Counsel understood that it was undertaking an expensive and complex litigation with no guarantee of receiving compensation for the enormous investment in time and money that the case would require. The negotiations in this matter were intense and hard fought. The Litigation was complex and the process of achieving the Settlement was in numerous ways unique. Co-Lead Counsel were faced with substantial issues to overcome on establishing with sufficiency the claims so that they could move to the discovery phase of the case. In addition to briefing the two motions to dismiss, the motion to strike class allegations, and addressing the motion to transfer, Co-Lead Counsel reviewed substantial document production, including approximately 6,000 pages, engaged in a motion to compel, filed and briefed a motion for partial summary judgment,

deposed Mr. Edwards, a senior management level employee of MBUSA, as a 30(b)(6) witness, and commenced drafting of the soon to be filed class certification motion.

29. If required to certify a litigation class, Co-Lead Counsel would have been expected to establish the elements of each claim for each state law claim brought on behalf of Plaintiffs. With respect to the California claims, Plaintiffs would have been required to establish that MBUSA knew of the Defect and still sold vehicles with such Defect and that issues with respect to the Defect materializing in certain vehicles raised predominantly common questions and not predominately individualized questions. Moreover, because the Class Vehicles were sold between 2005 and 2007, by the time this matter would be tried and any appeal thereafter concluded, many of the vehicle owners would no longer be in possession of their vehicles and many likely would have discarded the proof needed to be compensated. Thus, there is a substantial benefit in resolving the case at this juncture to disseminate notice and the eventual benefits obtained.

30. We believe our efforts were well organized and efficiently managed—indeed, counsel had no incentive to do otherwise as this matter is a contingency matter. Each hour that Co-Lead Counsel devoted to this case was at risk and indeed, is still at risk until the Court grants final approval and determines the fee award to Co-Lead Counsel. Co-Lead Counsel submits with this Joint Declaration, their opening brief in support of their application for an award of legal fees and reimbursement of expenses.

31. During the course of this Litigation, Co-Lead Counsel expended a total of 3,061,3 hours, including all paralegal and secretarial time devoted to this case. The lodestar of each firm is set forth as follows:

| Firm | Total hours | Lodestar |
|---|---|---|
| KGG | 1299.50 | $ 901,532.50 |
| KLF | 1761.8 | $ 982,095.00 |
| **TOTAL:** | **3061.3** | **$1,883,627.50** |

32. Although each consumer class action is complex and to some extent sui generis, Co-Lead Counsel herein were able to utilize their experience in litigating consumer class actions and, in particular, vehicle defect class actions to bring the matter to a successful conclusion. By understanding the workings of vehicle manufacturers' operations to some extent, counsel were able to fashion discovery requests with knowledge of what evidence and materials Defendant should or would likely have. As a result, a thorough approach to discovery was engaged in and some of the motion practice and meet and confer discussions revolved around material which Co-Lead Counsel had a reasonable belief to base their assertions that there were certain areas of documentation that Defendant was in possession of. In support of the hourly rates of Co-Lead Counsel, Co-Lead Counsel submit their separate declarations herein.

33. During the course of the Litigation, Co-Lead Counsel incurred expenses of $66,218. The itemization of these expenses for each firm are annexed as exhibits to the separate firm declarations annexed hereto of Gary S. Graifman and Roy Katriel as Exhibits "2" and "3." respectively. The expenses incurred herein were reasonable and necessary for the prosecution of the Litigation, are the types of expenses that class counsel typically incur in complex litigation, and for which Plaintiffs' Counsel are typically reimbursed when the Litigation gives rise to a Settlement and final approval thereof. These expenses will be paid separately from and in addition to the benefits made available to the Class. The breakdown of these expenses by firm are as follows:

| Firm | Expenses |
|---|---|
| KGG | $ 35,972.12 |
| KLF | $ 30,245.88 |
| **TOTAL:** | **$ 66,218.00** |

34. In addition, Plaintiffs' Counsel seek an incentive award of $9,000 for Plaintiffs Seifi and Deakin and $3000 for Plaintiff Reyner in the within action. The Defendants have agreed

to such award in the Settlement Agreement, subject to approval of the Court (Settlement Agreement, ¶9.1).  The Plaintiffs each came forward to initiate actions on behalf of Class Members in connection with their respective Class Vehicles and cooperated in every respect with Plaintiffs' Counsel.   They provided documentation to counsel as evidence for their claims and the claims of the putative Class.  In the case of Plaintiffs' Deakin and Seifi, they provided additional documents when requested, answered interrogatory requests and then supplemental requests, prepared for their depositions with Co-Lead Counsel and travelled to the offices of Defendants' counsel and answered questions during full day videotaped depositions.  In addition, their respective spouses prepared for depositions and, in the case of Ms. Seifi, submitted to a deposition.  Both Plaintiffs Seifi and Deakin participated in having their vehicles brought to a location selected by Defendant's counsel and allowed their respective vehicles to be physically inspected.  Both also produced the damaged Subject Sprocket parts for inspection.  Finally, all Plaintiffs have been involved in this action, have provided insight, assistance and remained in constant conduct with counsel to discuss the Litigation and the eventual Settlement; all Plaintiffs reviewed and approved the pleadings and motions filed while they were Plaintiffs and communicated with counsel about settlement discussions.  In sum, all Plaintiffs played a key role in assuring there would be a recovery for the Class.

  35. Accordingly, the Plaintiffs and Co-Lead Counsel respectfully request that the Court approve the award of counsel fees, approve the reimbursement of expenses, and approve the award of the incentive payments to Plaintiffs, as requested herein.

  Under the penalties as provided by law, the undersigned declare that the statements as set forth in this declaration are true and correct to the best of their knowledge.

Dated:  June 12, 2015                    /s/ Gary S. Graifman
                                         GARY S. GRAIFMAN


                                         /s/ Roy A. Katriel
                                         ROY A. KATRIEL