# EXHIBIT 2 TO JOINT GRAIFMAN AND KATRIEL DECLARATION

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAJEED SEIFI, TRACEY DEAKIN AND RONALD REYNER, On Behalf of Themselves And All Others Similarly Situated, | Civil Action No.: 12-cv- 05493-TEH |
| **Plaintiffs,** | |
| v. | |
| MERCEDES-BENZ U.S.A., LLC | |
| **Defendant.** | |

**DECLARATION OF GARY S. GRAIFMAN IN**
**SUPPORT OF AWARD OF ATTORNEY'S FEES**
**AND REIMBURSEMENT OF EXPENSES**
**OF KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**

I, GARY S. GRAIFMAN, hereby declare:

1.     I am a partner/shareholder in the law firm of Kantrowitz, Goldhamer & Graifman, P.C. (also referred to as "KGG" hereinafter).  I submit this declaration in support of the application for an award of attorneys' fees and reimbursement of expenses in connection with services rendered in the course of the litigation (the "Litigation") of the within action against Mercedes-Benz U.S.A., LLC ("MBUSA").  I am over the age of 21, have personal knowledge of the facts stated herein, and, if sworn as a witness, can competently testify to the facts stated herein.

2.     In this action, KGG acted as Co-Lead Counsel for the putative class in the Litigation and the individual Plaintiffs.

3.     My firm was involved since the inception of this action.  In 2012, Plaintiffs Tracey Deakin and Majeed Seifi contacted Co-Lead Counsel-- my Firm and my co-counsel, Roy Katriel, of the Katriel Law Firm ("KLF"), respectively.  Both had experienced the balance shaft defect and had been denied coverage by MBUSA under the applicable warranty.  KGG and KLF had both investigated the issue prior to being contacted.  KGG thereafter undertook to further investigate the

degree of the problem using various databases and research tools we have used in the past in other defective automobile class cases litigated and consulted with an expert. We confirmed that the problem was significant and that, under California law, certain claims could be asserted based on a number of grounds. Thereafter, together with our co-counsel, KLF, we undertook further investigation and formulation, drafting, research and finalization of the initial complaint. That complaint was finalized and filed on behalf of Mssrs. Deakin and Seifi October 24, 2012 in the Northern District of California.

4.   As one of the Co-Lead Counsel for Plaintiffs and the putative class, the attorneys of my firm were involved in performing a varied number of tasks including, the following, among others: preliminary investigation and review of the balance shaft gear and idle gear problem, the extent of the problem and proper warranty coverage and related issues, MBUSA's warranty and field inspection database and information capture systems; preparation of the initial complaint; legal research and briefing on the Defendant's motion to transfer, motions to dismiss and motion to strike; vetting of potential class representatives; investigation and preparation of first amended complaint; drafting and revising of various Joint Case Management Statements and Reports; travel and attendance at Court conferences, oral argument and Court appearances;  appearances via teleconference at certain Court conferences;  meetings with Defendant's counsel; preparing and propounding discovery requests to Defendant; receipt and review of discovery requests from Defendant;  review of requests with client; preparation of responses to discovery demands of Defendant;  meet and confer on MBUSA's discovery issues with Defendant's counsel; meet and confer on Plaintiffs' discovery issues with Defendant's counsel; negotiation and drafting of a proposed stipulation re MBUSA's discovery issues; research issues of service on German parent company;  preparation of non-party subpoena schedules for MBUSA dealers; receive and review all documents produced by Defendant in response to Plaintiffs' document production demands;  review

videos relating to balance shaft gear replacement; categorize and organize all documents produced by Defendant;  preparation of materials for Depositions of Defendant's 30(b)(6) witnesses and organize and prepare exhibits for depositions; conducting of deposition (with Co-Lead Counsel) in Montvale, New Jersey;  review of materials and preparation with client, Plaintiff Deakin, for deposition;  attend and defend deposition of Plaintiff Deakin;  review deposition with Plaintiff Deakin and arrange to produce post-deposition documents;  receive and review third party subpoenas from Defendant for German Auto;  conferences with German Auto and review German Auto documents;  prepare for deposition of German Auto; prepare for deposition of Judy Deakin; Prepare and organize physical inspection of Deakin vehicle; prepare and organize physical inspection of Deakin defective balance shaft gear; participation in conferences among Co-Lead Counsel involving litigation strategies and prosecution;  preparation, legal research, review and revision of Plaintiffs' Motion for Partial Summary Judgment; preparation, legal research, review and revision of portions of Plaintiffs' Motion to Compel;  discussions with Louisiana counsel; discussion with scores of putative class members;  legal research and initial drafting of class certification motion;  conferences with Plaintiff, Ronald Reyner;  Review Documents of Plaintiff Reyner;  draft, review, revise and finalize Second Amended Complaint;  arrange and prepare for the private mediation, including preparation of mediation briefing and exhibits; travel to San Francisco and attendance at and participation in private mediation;  conferences with Defendant's counsel to organize potential settlement meetings; preparation of materials for further settlement discussions; attendance with co-counsel at multiple settlement discussions with mediator and/or defendant's counsel;  preparation, review and multiple revisions of settlement term sheet agreement; communications with Plaintiffs regarding settlement discussions and settlement proposals;  review and revisions of Settlement Agreement, class notices, preliminary approval order drafts and final approval order drafts;  preparation, research, drafting and finalization of Plaintiffs' brief and motion

3

in support of preliminary approval and conditional certification of class; review objections and organize them; review of confirmatory discovery documents; preparation, research and initial drafting of final approval papers; coordination of class settlement administration; communications with claims administrator and defendant's counsel; email and phone communications with multiple class members regarding claims questions and issues.

5.   I have litigated and settled a number of automobile defect consumer class actions. Some include recent decisions which have been reported officially or on Westlaw, such as:

- *In re Nissan Radiator Transmission Cooler Litigation,* 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (referred to as "*Nissan Radiator Transmission Cooler Litig.*");

- *In re Nissan Radiator Transmission Cooler Litig.,* 2012 WL 1877306 (S.D.N.Y. May 15, 2012);

- *In re Nissan Radiator Transmission Cooler Litig.,* 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011);

- *Marshall v. Hyundai Motor America,* 51 F.Supp.3d 451 (S.D.N.Y. Sept. 30, 2014);

- *Haag v. Hyundai Motor America,* 969 F.Supp.2d 313 (W.D.N.Y. Sept. 10, 2013);

- *Wiseberg v. Toyota Motor Corp.,* 2012 WL 1108542 (D.N.J. March 30, 2012);

- *Sheris v. Nissan North America, Inc.,* 2008 WL 2354908 (D.N.J. June 3, 2008).

6.   In the *Nissan Radiator Transmission Cooler Litig.*, the settlement had many attributes which are also present herein. The defect was an integral component requiring significant labor to repair; the cost of repair was substantial (between $4,000 - $6,000 on average); the nationwide settlement included a tiered reimbursement program; with respect to future repairs which may have been required, the settlement included a reduction of the repair cost to Class Members for those future repairs which occurred up to 100,000 miles or 10 years (whichever occurred first). The claims process was robust and garnered significant interest, many claims and a number of inquiries to counsel. Our work continued until well after the settlement was approved. The significant hours spent by the Co-Lead Counsel firms, post-approval, in shepherding through the claims

4

administration and payment process in that case was time not reimbursed post-approval, and, similarly, that time and work will not be separately reimbursed herein either in the future.

7. In *Nissan Radiator Transmission Cooler Litig.*, final approval was granted by Opinion and Order dated May 30, 2013.  In its final approval decision, the Court approved my hourly rate of $785, as submitted in the fee application of co-lead counsel therein. See, 2013 WL 4080946 at *17 ("[T]he Court finds the rates charged fall within the prevailing market rates 'for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" [citing to *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).  That same hourly rate of $785 per hour for my time was thereafter approved by Hon. Judge Ronald M. Whyte in a consumer class action against Trend Micro, Inc. (USA) litigated and settled in the Northern District of California.  That settlement was approved in August 2013.[1]  My current hourly rate, requested herein, is $795 per hour, a rate similar to that approved over two years ago.

8. In this case, because of the intense phone and email contact sought by Class Members as a result of the notice disseminated in this Settlement, the paralegal who works in the class action practice at the firm, Cherie D. Cornfield was given an in-depth primer on the terms of the Settlement, the benefits received, the terms of the release and how we were addressing the various questions which were being posed by Class Members seeking guidance.  Ms. Cornfield also performed similar work in the *Nissan Radiator Transmission Cooler Litig.* settlement.   As a result, she has been able to handle a large number of the initial contacts with Class Members and help guide them.  The time she has spent on that has and will continue to assist me in handling the many questions that are and will be posed by those who contacted the Firm.  Of course, she consults with me directly and frequently, in this regard, and I also have responded directly to many emails and calls to date and well over a hundred emails and a significant number of calls in an effort to give

[1] Name and Docket No. was: *Graifman, et al v. Trend Micro Inc. (USA)*, Civ. No. 11-cv-02488 (RMW).

5

1    guidance to Class Members.

2         9.  My firm incurred a total of 1,299.50 hours from the inception of the Litigation through

3    June 1, 2015.[2]   The hourly rates and lodestar of the attorneys and paralegals from my firm who

4    participated in the Litigation are as follows:

| NAME | HOURLY RATE | HOURS | LODESTAR |
|------|-------------|-------|----------|
| Gary S. Graifman (P) | $795.00 | 805.50 | $640,372.50 |
| Robert Lubitz (SA) | $695.00 | 255.80 | $177,781.00 |
| Michael L. Braunstein (SA) | $695.00 | 70.10 | $48,719.50 |
| William T. Schiffman (SA) | $595.00 | 4.70 | $2,796.50 |
| Cherie D. Cornfield (PL) | $195.00 | 163.40 | $31,863.00 |
| **TOTAL** | | **1,299.50** | **$901,532.50** |

(P)=Partner, (SA)= Senior Associate, (A)=Associate, (PL)=Paralegal

10.  The total lodestar for work performed by counsel and paralegals in my firm equals

**$901,532.50**.  This information was prepared from contemporaneous time records regularly

maintained by my firm, which are available for in camera review at the Court's request.  Time spent

in preparing this declaration in support of my firm's application for an award of fees and

reimbursement of expenses, and any other time related to billing or periodic time reporting, has not

been included.   A more detailed breakdown of the categories of time spent in this Litigation by

KGG is set forth in the chart compiling the Lodestar annexed hereto as Exhibit "A."

11.  My firm incurred a total of **$35,972.12** in unreimbursed expenses in connection with the

prosecution of the Litigation, broken down into categories in the chart attached hereto as Exhibit

"B."

12.   The expenses incurred pertaining to this case are reflected in the books and records of

[2]  As noted hereinabove, it will also be necessary to engage in additional future work in connection with
preparing, researching, finalizing and filing the Final Approval submissions and replies to objections;
preparing for the Final Approval Hearing; attending the Final Approval Hearing; addressing post-
approval settlement and class administration issues; dealing with any possible motions or appeals;
addressing questions of class members and assisting them in the claims process;  reviewing the claims
denied and advocating where needed for rehearing of such denial.  Based on my prior experience, this
work will require additional hours of firm time and expertise.  I base this on my years of experience of
shepherding class actions settlements and settlement claims administration through to conclusion.

6

my firm.  These books and records are prepared from expense vouchers and check records prepared in the normal course of business, and are an accurate record of the expenses incurred.

13.  With respect to the standing of counsel in this case and each of the attorneys and paralegals therein, attached hereto as Exhibit "C" is a brief biography of my Firm and the attorneys and paralegals who have been working on this matter.

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 11, 2015, at Montvale, New Jersey

GARY S. GRAIFMAN

# EXHIBIT A

## MERCEDES BENZ BALANCE SHAFT CLASS ACTION LITIGATION
### Seifi, et al. v. Mercedes Benz USA, LLC, Case No. 12-cv-05493 (TEH)
### KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
### LODESTAR CATEGORY BREAKDOWN
### PERIOD: Inception – June 1, 2015

| Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | Hours | Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gary S. Graifman (P) | 5.0 | 7.50 | 102.80 | 6.0 | 26.90 | 285.80 | 17.20 | 89.30 | 98.00 | 93.0 | 74.0 | 805.50 | $640,372.50 |
| Robert Lahtz (SA) | | .20 | | | | 235.60 | .70 | 18.80 | .50 | | | 255.80 | $177,781.00 |
| Michael L. Braunstein (SA) | | | 35.10 | 6.60 | 1.80 | 26.60 | | | | | | 70.10 | $48,719.50 |
| William T. Schiffman (SA) | | | | | | | 4.70 | | | | | 4.70 | $2,796.50 |
| Cherie D. Cornfield (PL) | | 66.60 | 8.50 | | 1.30 | 50.70 | | 1.0 | 1.0 | | 34.30 | 163.40 | $31,863.00 |
| **TOTAL** | | | | | | | | | | | | 1,299.50 | $901,532.50 |

(P) Partner
(SA) Senior Associate
(A) Associate
(PL) Paralegal

**CATEGORIES**
1. Investigation, research and drafting original complaint
2. Conferences with counsel, clients and class members
3. Motion practice- Motions to Dismiss
4. Removal Motion (jurisdictional)
5. Investigation, research and drafting Amended Complaint
6. Discovery
7. Investigation, research and drafting Second Amended Complaint
8. Settlement Negotiation Process and Documentation & Settlement Briefing
9. Post settlement documentation and briefing(e.g., Prelim Approval, Final Approval)
10. Preparation/Drafting for Class Certification Motion
11. Class Certification Claims Administration issues

# EXHIBIT B

**SEIFI, ET AL. V. MERCEDES-BENZ USA, LLC**
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**EXPENSE CATEGORY BREAKDOWN**
**FROM INCEPTION THROUGH JUNE 1, 2015**

| Category | Amount |
|---|---|
| Computer Research and Electronic Document Retrieval (Westlaw, Lexis/Nexis, Pacer, Dow Jones) | $ 4,852.31 |
| Travel, Hotel, Meals and Related Expenses | $ 19,839.49 |
| Photocopying (including commercial or internal copying) | $ 1,832.72 |
| Facsimile and Long Distance Telephone | $ 105.50 |
| Postage and Overnight Delivery (Fed Ex, UPS) | $ 246.02 |
| Filing/Deposition/Transcript Fees | $ 4,787.58 |
| Experts/Consultants/Mediator | $ 4,308.50 |
| **TOTAL** | **$ 35,972.12** |

EXHIBIT C

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**747 Chestnut Ridge Road**
**Chestnut Ridge, New York 10977**
Tel: 845-356-2570
Fax: 845-356-4335
website: www.kgglaw.com
-and-
**210 Summit Avenue**
**Montvale, New Jersey 07645**
Tel: 201-391-7000
Fax: 201-307-1086

## THE FIRM

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.** is a full-service law firm (the

"Firm") with offices located in Montvale, New Jersey, at 210 Summit Avenue, Montvale, New

Jersey 07645 and with offices at 747 Chestnut Ridge Road, Chestnut Ridge, New York.

The Firm is managed by its four (4) partners, PAUL B. GOLDHAMER, BARRY S.

KANTROWITZ, GARY S. GRAIFMAN and RANDY J. PERLMUTTER

Among the various areas of law practiced by the Firm, the Firm specializes in commercial

litigation and class action litigation, which is managed by Gary S. Graifman of the Firm (see

below).

The Firm has a total of twelve (12) attorneys, including the four partners.  There are five

(5) associates and twelve (12) support personnel (paralegals, secretaries and bookkeeping), as

well as three (3) of counsel attorneys at the firm's offices.  The biographical information of Gary

S. Graifman, partner in charge of this matter, is set forth below.

1

**Gary S. Graifman, Esq.** is a partner in the firm of **KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.** Prior to joining the firm, he was a partner in the firm of ATLAS & GRAIFMAN in New York City, New York. Mr. Graifman specializes in the area of commercial litigation and securities and consumer class action litigation. He is admitted to practice before the courts of the State of New York, the State of New Jersey, the United States Federal Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey, the United States Court of Appeals for the Second Circuit, the Third Circuit and the Eighth Circuit. He is also a member of the Class Action Committee of the New Jersey State Bar Association. Mr. Graifman has litigated numerous cases involving complex business litigation, consumer class actions and securities class actions. He has litigated a number of cases resulting in reported decisions, including cases of first impression. Mr. Graifman has been nominated by *Super Lawyers Magazine* as a New Jersey Super Lawyer for 2011 through 2014. He has been a panelist and speaker on class action issues before various bar organizations including those sponsored by the Class Action Committee of the New Jersey State Bar Association and by the National Employment Lawyers Association, New York Chapter.

In a settlement of a nationwide consumer fraud class action on behalf of 11,000 businesses who had been defrauded by the telephone company, Norvergence, Inc., and various equipment leasing companies, the New Jersey Superior Court approved a partial settlement with CIT Technology Financing, U.S. Bancorp, De Lage Laden Leasing and two other leasing companies on June 30, 2006. The firm, Kantrowitz Goldhamer & Graifman, was Co-Lead Counsel.

The presiding Judge, Judge Robert Coogan stated that: "The class counsel at bar ...are

2

well qualified, they are experienced in class action litigation.  Counsel have vigorously pursued

this litigation in this court, and although it's a rounded number, it has been two years, almost.

[W]hat was shown here and what leads me to acknowledge this is the dimension, the worthiness,

the scope of the advocacy, and the overall professional presentation, both in terms of the

pleadings and here in the courtroom.  There's also one other thing that I think as a jurist we

judges fail to take note of, but now is the appropriate time to do it, it's the concept of collegiality.

Collegiality amongst yourselves, collegiality of yourselves to the Court.  And then I say

collegiality amongst yourselves I mean that without there being one ounce of sacrifice of the

responsibility that each of you have as a litigator to advocate.  There has been full advocacy here,

but it's been done with a recognition of that other asset, which is collegiality.  The record will

confirm counsel have done it this morning, that this pursuit has been vigorous.  There has been

extensive document discovery conducted here, depositions were conducted.  And all of that to a

point prior, prior to the time of beginning the time to, process of trying to resolve the case. ... I'm

satisfied that counsel who have accepted the responsibility of appearing on behalf of the named

plaintiffs have fairly and adequately represented the interest of the class.  Adequately I use only

because that's the standard.  The reality here is that it was superior work."

In another settlement of a nationwide class action against the vehicle manufacturer,

DaimlerChrysler, alleging defective brake assemblies for Jeep Grand Cherokees, Mr. Graifman

served as co-lead counsel for the class.  In approving the settlement, the Court (Hon. Jonathan N.

Harris, New Jersey Super. Ct., Bergen Co.) stated: "[P]laintiffs' counsel engaged in careful and

extensive research, investigation, and analysis of the facts and circumstances surrounding the

conduct of defendants' business practices.  I conclude that class counsel have a sufficient basis

3

upon which to assess the strengths and weaknesses of the claims and the terms of the settlement."

Furthermore, in a matter settled in 2008 in the U.S. District Court for the Northern

District of California, in which Mr. Graifman and the Firm were co-lead counsel (entitled *In re*

*Rambus Inc. Securities Litigation*, 06-cv-4346 (N.D. Ca.)), and which involved an $18 million

settlement approved by the Court in a securities fraud matter involving backdated options, U.S.

District Court Judge, Hon. Jeremy Fogel, stated in approving the settlement that "[i]t appears that

the class will receive more money than is typical in these types of cases, certainly in backdating

cases. This is a substantial settlement. So, I am satisfied in terms of an independent review and

adequacy of the settlement that it is fair and adequate." (From Transcript of Final Approval

Hearing, dated May 14, 2008).

The following represent examples of class action, complex business litigation and

reported cases of note **Mr. Graifman** and the firm have taken an active role in:

1.  **In re Rambus Securities Inc. Litigation.**, 06-c-v4346-JF (U.S. District Ct., N.D. Cal.)
    **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this securities
    class action involving allegations of backdating of options.  The matter was settled for
    $18.33 million and approved on May 14, 2008.

2.  **In re Nissan Radiator/Transmission Cooler Litigation**, Case No. 10-cv-0-7493 (VB)
    (U.S. District Ct., S.D.N.Y.).  **Mr. Graifman** and the Firm served as co-lead counsel in
    this litigated consumer class action seeking reimbursement for repairs to Nissan
    Pathfinder, Xterra or Frontier vehicles caused by cross-contamination of radiator fluid
    with transmission fluid seeping into the transmission.  The matter was settled with
    Defendants agreeing to extend the warranty to 100,000 miles or 10 years and pay for the
    repairs below that extended mileage and time period, subject to certain deductibles that
    applied.  The nationwide class action settlement was approved by the Court in May 2013.

3.  **Sheris v. Nissan North America, Inc.**, 07-cv-2516 (WHW) (U.S. District Ct., D. New
    Jersey).  **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this
    consumer class action against Nissan for alleged brake defect in the 2005 G35x model
    vehicle.  Court certified a New Jersey settlement class which involved reimbursement of

4

the cost of brake and rotor replacement up to $340 per brake replacement.

4.    **Jermyn v. Best Buy Stores, L.P.**, 1:08-cv-00214 (CM) (U.S. District Ct., S.D.N.Y.). **Mr. Graifman** and the Firm served as Co-Lead Counsel in this litigated consumer class action certified as a New York consumer class by Hon. Colleen McMahon. The class consisted of Best Buy purchasers who were denied price match guarantees by Best Buy. The matter settled shortly before trial.

5.    **Lubitz, et al. v. DaimlerChrysler Corp.**, BER-L-4883-04 (New Jersey Superior Court, Bergen Co.) **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this consumer class action against DaimlerChrysler Corp. The Court certified a nationwide settlement class and approved a settlement valued at $14.5 million to owners of Jeep Grand Cherokees, model years 1999 through 2004.

6.    **In re Trend Micro Class Action Litigation,** Case No. CV 11-02488 (RMW) (U.S. District Ct., N.D. Calif.). **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this consumer class action concerning the failure to provide the remaining time left on current trial subscriptions when the subscriber on the trial subscription converted to a paid subscription. The case was settled in 2013 and Final Approval of the settlement was entered November 15, 2013 by the Court granting subscribers cash refunds or credit towards their future subscriptions and changing the policy of the Company going forward.

7.    **In re Symantec Class Action Litig.**, 1-05-cv-053711 (Superior Ct. Of State of California, Co. Of Santa Clara) (Komar, J.). **Mr. Graifman** and the Firm served as Co-Lead counsel in this consumer class action involving the cut-off of subscription time when the subscriber to Norton's anti-virus software renewed or upgraded earlier than the end of the then-current subscription. After the class was certified upon a litigated motion, the matter was settled for a cash payment or a voucher for further use with the anti-virus subscription (at the consumer's option), with the settlement valued in excess of $5 million.

8.    **Regina Davis et al. v. Beazer Homes, U.S.A., et al.,** 1:08-cv-00247 (U.S. District Ct., M.D.N.C.). **Mr. Graifman** and the Firm served a Co-Lead Counsel for this class action settled in connection with claims that defendants' seller-funded downpayment assistance program violated REPSA and North Carolina's Unfair & Deceptive Trade Practices Act, resulting in a settlement providing for refunds for the downpayments made by certain defrauded home purchasers.

9.    **In re Merck Shareholder Derivative Action,** ATL-L-3406-07 (N.J. Sup. Ct., Atlantic Co.) (Higbee, J.). **Mr. Graifman** and the Firm served as Co-Counsel in this Demand Refused Shareholder Derivative Action regarding the sale, marketing and eventual recall of Vioxx by Merck & Co. The matter was settled for substantial corporate operational and governance improvements. The Settlement was approved in April 2010 by Hon. Carl

5

E. Higbee, P.J. Cv.

10. **In re: Painewebber Limited Partnership Litigation**, 94 Civ. 8547 (SHS) (S.D.N.Y.) Court approved a settlement involving a fund of approximately $200 million dollars. This suit was first initiated by KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C. and two other firms in Texas. The case later expanded to cover a multitude of other claims and was settled in a consolidated New York action.

11. **In re NICE Systems, Ltd. Securities Litigation**, Master File No. 2:01cv737 (JAG)(U.S. District Ct., D. New Jersey). **Mr. Graifman** and the Firm served as Liaison Counsel for the class in this securities fraud class action litigation which settled for $10 million dollars and was approved by the Court on April 7, 2003.

12. **Martinez v. District 1199J NEW JERSEY BENEFIT FUND**, et al., Docket No. 97 cv 3381 (WJM) (U.S. District Court, D. New Jersey). **Mr. Graifman** and the Firm served as Lead Counsel in certified class action against Union Benefit Fund in which claims alleging violation of ERISA were upheld. The case was fully litigated to final judgment for the plaintiff class and thereafter, upon execution on the judgment was satisfied with full payment being made to reimburse class members 100% of their losses (Union Members received full reimbursement for all medical bills paid out-of-pocket during the class period).

13. **In re Pharmaprint, Inc. Securities Litigation**, Master File No. 00cv61 (JAP) (U.S. District Ct., D. New Jersey). Firm was Co-Lead Counsel for the plaintiff class in this securities fraud class action which settled for $ 2.3 million dollars in connection with claims against defendants.

14. **Birenbaum v. John Hancock Mutual Life Ins. Co.**, L-1957-96 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Co-Counsel for the class in this securities fraud class action certified and settled as a nationwide class action in New Jersey State Court.

15. **Maizes & Maizes, et al. v. Apple Computer, Inc.**, et al. L-13780-95 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Liaison Counsel in consumer fraud class action pending in New Jersey State Court alleging misrepresentation in the sale of computer monitors by various computer monitor distributors. The action was related to In re: Computer Monitor, Proceeding No. 3158, pending in California Superior, San Francisco County. Joint efforts of negotiation resulted in a settlement which was approved by the California Court. The settlement was valued in excess of $15 million dollars.

16. **Goldberg v. IDM Environmental**, L-11783-96 (N.J. Superior Court, Middlesex Co. 1966) Securities fraud class action in New Jersey state court. Settlement included

payment of $1.125 million to nationwide claims of shareholders.

17. **Amplidyne, Inc. Securities Litigation**, 99-4468 (D. New Jersey). Securities fraud class action litigation settled, alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934.

18. **In re: Anadigics Securities Litigation**, 98 Civ. 917 (MLC) (D.N.J.) Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. The action was settled for approximate $11.75 million dollars.

19. **In re: Interactive Network, Inc. Securities Litigation** (Civ. Action No. 95-0026 (DLJ) (N.D. Cal.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class certified in connection with settlement in the sum of $1.9 million dollars.

20. **In re: Delgratia Mining Corp. Securities Litigation**, MDL Dock. No. 1201 (D. Nev.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class action settled for stock of defendant and distribution of a cash payment.

21. **Feiner v. Orange & Rockland Utilities, Inc.,** 862 F. Supp. 1084, RICO Bus. Disp. Guide 8672 (S.D.N.Y., Sept. 8, 1994) (No. 93 Civ. 5796 (CLB) (filed as class action on behalf of ratepayers of utility) (settled on appeal before the Second Circuit).

22. **Dakota Industries, Inc. v. Ever Best Ltd.,** 38 F.3d 910, 31 U.S.P.Q.2d 1355 (8th Cir. (S.D.), July 8, 1994) (No. 93-2723, 93-2765). In this trademark infringement matter, **Mr. Graifman** and the Firm served as lead trial counsel for the defendant, a nationwide jeans distributor. After a three week trial in Sioux Falls, South Dakota, the jury returned a verdict for defendant.

23. **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 809 F.Supp. 171, 80 Ed. Law Rep. 568 (E.D.N.Y., Nov. 14, 1992) (No. Civ-86-0807) (ADS)). In this major RICO action based on wire fraud, mail fraud and violations of the Hobbs Act, **Mr. Graifman** and the Firm served as sole trial counsel for plaintiffs who alleged that they were subjected to extortion demands by various school construction authority supervisors and inspectors. After a six week jury trial before Judge Spatt, one plaintiff procured a partial settlement and the other received a verdict on their RICO claims against the respective school inspectorial staff members.

24. **Nu-Life Const. Corp. v. Board of Educ. of City of New York, Div. of School Bldgs. of Bd. of Educ. of City of New York**, 795 F.Supp. 602, RICO Bus. Disp. Guide 8035 (E.D.N.Y., June 16, 1992) (No. CV-86-0807 (ADS)). See above description.

25. **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 789 F.Supp. 103, 75 Ed. Law Rep. 1009, RICO Bus. Disp. Guide 7885 (E.D.N.Y., Dec. 2, 1991) (No. CV-86-0807 (ADS)).  See above description.

26. **Dakota Industries, Inc. v. Ever Best Ltd.**, 944 F.2d 438, 20 U.S.P.Q.2d 1158 (8th Cir. (S.D.), Sept. 12, 1991) (No. 91-1036).

27. **Elliot Gould v. Ladenberg Thalman**, 1990 WL 209641, Fed. Sec. L. Rep. P. 95, 667 (S.D.N.Y., Dec. 17, 1990) (No. 90 Civ. 4140 (MBM)).  Securities fraud claims litigated on behalf of Elliot Gould against former financial advisors.  Case settled before trial.

28. **Sablosky v. Edward S. Gordon Co., Inc.**, 73 N.Y.2d 133, 535 N.E.2d 643, 538 N.Y.S.2d 513, 4 IER Cases 1315 (N.Y., Feb. 21, 1989) (No. 32).  Reported case decided by New York Court of Appeals which concerned the scope of contractual obligations and enforcement thereof.

29. **SSH Co., Ltd. v. Shearson Lehman Bros. Inc.**, 678 F.Supp. 1055, Blue Sky L. Rep. P. 72, 695, Fed. Sec. L. Rep. P. 93, 647 (S.D.N.Y., Dec. 24, 1987) (No. 86 Civ 5981 (PNL)).

30. **Stephano v. News Group Publications, Inc.**, 64 N.Y.2d 174, 474 N.E.2d 580, 485 N.Y.S.2d 220, 11 Media L. Rep. 1303 (N.Y., Dec. 20, 1984).  **Mr. Graifman** litigated this case defining the parameters of right of privacy and right of publicity in the State of New York.

31. **Brooke Shields v.  Garry Gross**, 58 N.Y.2d 338, 448 N.E.2d 108, 461 N.Y.S.2d 254, 9 Media L. Rep. 1466 (N.Y., Mar. 29, 1983).  **Mr. Graifman** represented fashion photographer, Gary Gross, sued by Brooke Shields relating to scope of the right of privacy and right of publicity in New York.  This case of first impression was decided by the New York Court of Appeals, which affirmed the original trial court judgment in favor of photographer.

## Articles and Publications

*Supreme Court Decision in Conception v. AT&T: Another Blow to Consumers, U.S. Politics Today , May 12, 2011;* Link: http://uspolitics.einnews.com/247pr/212419.

Quoted in *The New York Times, Sunday Edition,* in the "The Haggler" Column entitles *"How Did This Become A Commitment"* by David Segal (regarding McNair v. Synapse News Group CO., Litigation). Link: http://www.nytimes.com/2011/10/16/your-money/automatic-magazine-renewal-and -automated-voices.html.

*Arbitration Clauses and Class Action Bans: Should Defendants Be Careful Of What They Wish For?* by Gary S. Graifman, Alan E. Kraus and Joan E. Karn; (N.J. Institute for Continuing

Legal Education 2007) Handout Materials for "Hot Topics In Class Actions" seminar for New Jersey ICLE;

*Negotiating A Commercial Lease-- From the Tenant's Vantage*, Gary S. Graifman, "The Rockland Business Digest," Vol 1, Issue 5, April 2007;

*CCA Treated Wood-- An Emerging Toxic Tort?* By Gary S. Graifman (American Conference Institute 2003) Handout Materials for "Toxic Tort Litigation, Successful Claims and Litigation Strategy" Seminars Conducted March 2003 by American Conference Institute;

*Dealing With Infants In The Modeling Industry-- A Primer for Adults*, by Gary S. Graifman, "Journal of Art And The Law Journal," Vol. 8, No. 1, 1983 (Jointly Published by Columbia University School of Law and Volunteer Lawyers for the Arts).

**Robert Lubitz, Esq.** is a senior associate in the firm of Kantrowitz, Goldhamer & Graifman, P.C.  Mr. Lubitz  has practiced since 1978, and is an experienced trial attorney, licensed in New York, New Jersey, Massachusetts, New Hampshire and Florida. He is admitted in the federal courts of the U.S. District Court of New Jersey, the Southern and Eastern District Courts of New York, the U.S. Circuit Court of Appeals for the Second Circuit and Third Circuit. Since 1987, Bob has maintained a professional relationship with KGG and has successfully practiced in the areas of complex litigation, class action litigation and commercial litigation.

**Michael L. Braunstein, Esq.** was a senior associate with the firm of Kantrowitz, Goldhamer & Graifman, P.C. and worked on the within matter while at the firm.  Mr. Braunstein is a graduate of the University of Maryland and St. John's School of Law and is admitted to practice before the New York and New Jersey State Courts and the United States District Courts for the Eastern District of New York, Southern District of New York and the District of New Jersey.  He was admitted to practice law in New York in 1997 and has been a practicing attorney for approximately 18 years.

9

Mr. Braunstein is an experienced trial lawyer with a number of verdicts to his credit. His practice is focused primarily in areas of complex litigation, including securities and consumer class actions, shareholder derivative litigation, business law and personal injury law. Mr. Braunstein has litigated cases, including class action litigation, RESPA regulations, nursing home litigation and related matters.  He was the lead attorneys in a consumer class action against Best Buy Stores, L.P. which was certified in the Southern District of New York (McMahon, J.) (See *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. March 16, 2009) and settled in 2012, approximately one month before the jury trial in the matter was scheduled to begin.

Mr. Braunstein has worked on several other significant cases including the collapse of 7 World Trade Center following 9/11, the constitutionality of a New York City's Adult Establishment zoning ordinance, as well as numerous catastrophic injury and wrongful death cases and multi-million dollar property damage cases.  He has also successfully represented the Penobscot Indian Nation in an action against the U.S. Government.

**William T. Schiffman, Esq.,** received his J.D. degree from Brooklyn Law School, 1974 and is admitted to practice in New York (1975), Texas (1976), and New Jersey (1981).

Mr. Schiffman was Law Clerk to the Honorable Woodrow Seals, United States District Judge, Southern District of Texas from 1974-1977.  In that position Mr. Schiffman was responsible for preparing decisions and orders on motions as well as observing trials and assisting Judge Seals in preparing finds of fact and conclusions of law.

From 1977-1979, Mr. Schiffman was associated with the law firm of Urban & Coolidge in Houston Texas.  Mr. Schiffman's principal practice area was commercial litigation.

10

From 1979 to 1985, Mr. Schiffman was an attorney for AT&T, first in the Long Lines Department in Atlanta, Georgia, and then in company headquarters in New Jersey. Mr. Schiffman's responsibilities principally in the area of general litigation and the AT&T antitrust litigation prior to divestiture.

From 1985 to 1993, Mr. Schiffman was with the law firm of Jacob & Meyers, first as the managing attorney of several offices, then as New Jersey resident partner in charge of the northern New Jersey offices. The practice was principally in the area of litigation.

From 1993 to date, Mr. Schiffman has been associated with Kantrowitz & Goldhamer, P.C., in New York, and its affiliate, Kantrowitz & Goldhamer in New Jersey. Mr. Schiffman's responsibilities are principally in the area of litigation including securities and employment class action, as well as complex contested matrimonial and general commercial litigation

**Cherie D. Cornfield.**   Ms. Cornfield, is a paralegal at the law firm of Kantrowitz, Goldhamer & Graifman, P.C. and has worked on a number litigated of matters including numerous class actions during her seven year tenure at the firm. Ms. Cornfield is a graduate of Quinnipiac University in Connecticut with a double major in Legal Studies (ABA Approved) and Political Science.   In addition to her litigation experience, she has several years experience in real estate law working for attorneys who represent individuals and lenders. She also served as a staff intern for Vice President Joseph R. Biden, Jr. during his tenure in the U.S. Senate on Capitol Hill.